QUINN EMANUEL URQUHART & SULLIVAN, LLP
Dawn Y. Yamane Hewett (DC Bar No. 984923) (*pro hac vice* forthcoming)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Scott Schlafer (Bar No. 335708)
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>YASUMASA YAMAMOTO,<br>and DOES 1-10, inclusive,<br><br>    Defendant. | CASE NO. 5:26-cv-00945-NC<br><br>**DEFENDANT YASUMASA YAMAMOTO'S OPPOSITION TO PLAINTIFFS' MOTION TO AUTHORIZE ALTERNATIVE SERVICE PURSUANT TO FED. R. CIV. P. 4(f)(3)**<br><br>Date: July 22, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Nathanael M. Cousins<br>Location: Courtroom 5 – 4th Floor |

## **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...........................................................................................................1

II.  RELEVANT BACKGROUND ........................................................................................2

III. ARGUMENT ..................................................................................................................3

   A.   Service On Mr. Yamamoto By Email Is Prohibited By International Agreement ............................................................................................................3

   B.   Service on Mr. Yamamoto's Former Counsel Is Not Authorized And Would Impermissibly Bypass The Convention ....................................................6

   C.   Plaintiffs Have Not Shown That Court-Ordered Alternative Service Is Necessary ............................................................................................................8

   D.   Plaintiffs' Proposed "Layered Service" Of One Or More Improper Service Methods Does Not Equate To Proper Service Nor Excuse Compliance With Rule 4 And The Hague Convention ....................................................................9

IV.  CONCLUSION ..............................................................................................................10

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Auto. Parts Antitrust Litig.*,
2017 WL 10808851 (E.D. Mich. Nov. 2, 2017) ........................................................................ 7

*Aviara Parkway Farms, Inc. v. Agropecuaria La Finca*,
2012 WL 1019618 (S.D. Cal. Mar. 23, 2012) .......................................................................... 8

*Blum v. Raizada*,
2019 WL 13159733 (S.D. Cal. Apr. 23, 2019) ........................................................................ 8

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ................................................................................................... 4

*CJ E&M America, Inc. v. iQiyi, Inc.*,
2018 WL 6380751 (C.D. Cal. Aug. 13, 2018) ........................................................................ 9

*Codigo Music, LLC v. Televisa S.A. de C.V.*,
2017 WL 4346968 (S.D. Fla. Sept. 29, 2017) ......................................................................... 7

*Convergen Energy LLC v. Brooks*,
2020 WL 4038353 (S.D.N.Y. July 17, 2020) .......................................................................... 7

*Drew Techs., Inc. v. Robert Bosch, L.L.C.*,
2013 WL 6797175 (E.D. Mich. 2013) .................................................................................... 7

*Duong v. DDG BIM Servs. LLC*,
700 F. Supp. 3d 1088 (M.D. Fla. 2023) .................................................................................. 5

*Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries (OPEC)*,
107 F. Supp. 3d 134 (D.D.C. 2015) ........................................................................................ 7

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*,
2018 WL 1757776 (S.D. Cal. Apr. 11, 2018) ......................................................................... 9

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
782 F. Supp. 2d 868 (N.D. Cal. 2011) .................................................................................... 8

*Jackson v. Hayakawa*,
682 F.2d 1344 (9th Cir. 1982) ............................................................................................... 10

*Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*,
No. 25-2205, 2026 WL 1502198 (7th Cir. May 29, 2026) ............................................. 1, 5, 6

*Rio Properties, Inc. v. Rio International Interlink*,
284 F.3d 1007 (9th Cir. 2002) ................................................................................. 2, 4, 6, 8, 10

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

*Santos v. State Farm Fire and Cas. Co.*,
    902 F.2d 1092 (2d Cir. 1990) ........................................................................... 8

*Sarieddine v. Vaptio, Inc.*,
    2020 WL 8024863 (C.D. Cal. Dec. 2, 2020) ................................................... 9

*SEC v. de Nicolas Gutierrez*,
    2020 WL 1307143 (S.D. Cal. Mar. 19, 2020).................................................. 9

*SEC v. Lahr*,
    No. 22-2497, 2024 WL 3518309 (3d Cir. July 24, 2024)............................. 2, 5

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
    164 F.4th 164 (2d Cir. 2025).......................................................................... 1, 5

*Tevra Brands LLC v. Bayer Healthcare LLC*,
    2020 WL 3432700 (N.D. Cal. June 23, 2020) ................................................. 9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) ..................................................................................... 4, 11

*Water Splash, Inc. v. Menon*,
    581 U.S. 271 (2017) ........................................................................................ 4, 5

**STATUTES**

Cal. Code Civ. Proc. § 416.90....................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(e)........................................................................................................ 7

Fed. R. Civ. P. 4(f) ........................................................................................................ 6

Fed. R. Civ. P. 4(f)(3)............................................................. 1, 2, 4, 5, 7, 8, 10, 11

Hague Conference on Private Int'l Law,
    *Conclusions and Recommendations of the Special Commission*,
    https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf ............................. 6

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

Defendant Yasumasa Yamamoto ("Mr. Yamamoto") respectfully submits this Opposition to Plaintiffs Md Anis Uzzaman and Pegasus Tech Ventures, Inc.'s Motion To Authorize Alternative Service Pursuant to Fed. R. Civ. P. 4(f)(3) (the "Motion" or "Mot."). Dkt. 11. Mr. Yamamoto appears through the undersigned counsel solely to oppose Plaintiffs' request to bypass the Hague Service Convention and to obtain an order authorizing service by email or on counsel. This appearance is not, and shall not be construed as, a general appearance or consent to personal jurisdiction, subject-matter jurisdiction, or service of process, and Mr. Yamamoto expressly reserves all defenses, including those available under Federal Rule of Civil Procedure 12(b)(1)–(7).

## I.    INTRODUCTION

Plaintiffs' Motion should be denied. Plaintiffs seek to skirt the treaty that governs how a defendant in Japan must be served. As Plaintiffs recognize, because Mr. Yamamoto is domiciled in Japan, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention" or "Convention") supplies the exclusive means of serving him, and Federal Rule of Civil Procedure 4(f)(3) authorizes alternative service only "by other means *not prohibited* by international agreement." Fed. R. Civ. P. 4(f)(3) (emphasis added). The Convention's transmittal procedures are, by the Supreme Court's repeated holdings, "mandatory" and "exclusive" whenever documents must be transmitted abroad for service. Plaintiffs ask this Court to set those mandatory procedures aside, not because they have been exhausted, but because Plaintiffs' own Hague packet contained boilerplate language referring to video proceedings for which Japan's Ministry of Foreign Affairs requires prior diplomatic consent. Plaintiffs concede the defect is curable. They simply prefer not to cure it.

Four independent grounds compel denial:

First, Japan objected to service by "postal channels" under Article 10 of the Hague Convention, and every federal court of appeals to address the question has held that the Convention bars Rule 4(f)(3) email service on a defendant in a signatory state that has objected to Article 10. *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 171 (2d Cir. 2025); *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, No. 25-2205, 2026 WL 1502198, at *6 (7th Cir. May 29, 2026); *SEC v. Lahr*, No. 22-2497, 2024 WL 3518309, at *3 & n.12 (3d Cir. July 24,

2024).

Second, service on lawyers at Davis Wright Tremaine LLP ("DWT") who represented Mr. Yamamoto in a different, concluded state-court action is independently improper: they do not represent him in this case and are not authorized to accept service on his behalf. The named attorneys are in California, and California law permits service on an attorney only where the attorney is an authorized agent for service. Cal. Code Civ. Proc. § 416.90.

Third, Plaintiffs have not made the showing of necessity that Rule 4(f)(3) requires under *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). Plaintiffs' Hague packet was returned for a single reason that Plaintiffs concede they can correct. Rule 4(f)(3) is not a workaround for plaintiffs who find Hague Convention compliance inconvenient.

Fourth, Plaintiffs cannot evade the requirements of the Hague Convention by combining two improper service methods in the hope that they will result in actual notice. In any event, even actual notice does not substitute for proper service by means "not prohibited by international agreement." *Rio*, 284 F.3d at 1014.

For these reasons, Mr. Yamamoto respectfully requests that the Court deny Plaintiffs' Motion.

## II.　RELEVANT BACKGROUND

As Plaintiffs acknowledge, Mr. Yamamoto is a citizen of and domiciled in Japan. Compl. ¶ 6. Plaintiffs filed this action against Mr. Yamamoto on January 30, 2026. The summons issued on February 2, 2026. Dkt. 11-2 ("Armstrong Decl.") ¶ 2. Plaintiffs proceeded under the Hague Convention, engaging a service agency that delivered the translated materials to Japan's Central Authority on February 24, 2026. Armstrong Decl. ¶ 3.

On March 26, 2026, the Consulate General of Japan returned the documents on behalf of Japan's Ministry of Foreign Affairs. Plaintiffs characterize this as a "refusal," resting "solely" on "mandatory case-management language" regarding video proceedings. Mot. 3. However, the letter simply explained that because the service documents stated that court proceedings may be conducted by video link, Plaintiffs would "need to obtain prior consent from Japan through diplomatic channels." Armstrong Decl., Ex. A. It further instructs Plaintiffs to "request service after obtaining

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

. . . consent from the Japanese government" and to "send the documents directly to the Ministry of Foreign Affairs in Tokyo." *Id.* Far from being a refusal, Japan's response, in fact, invited Plaintiffs to resubmit and told them how to do so.

Plaintiffs did not pursue that path. Although Plaintiffs characterize "conventional service" through the Hague Convention as "impracticable," Mot. 7, their counsel's own declaration confirms the defect in their packet was curable. Plaintiffs could have re-initiated service through Japan's Central Authority "after revising the accompanying materials," but they chose not to do so. Armstrong Decl. ¶ 5. Instead, Plaintiffs emailed Thomas R. Burke and Sarah Burns of DWT, Mr. Yamamoto's former counsel who had represented him in a state-court action that Plaintiffs themselves voluntarily dismissed on October 21, 2025. Armstrong Decl. ¶¶ 6–7 & Exs. B–C; Dkt. 9 ("CMC Stmt.") 4. Former counsel did not respond. Armstrong Decl. ¶ 8.

On April 29, 2026, Plaintiffs told the Court in their Case Management Statement that they "intend to promptly file" this motion. CMC Stmt. 3. Plaintiffs finally filed this Motion on June 4, 2026 — more than two months after the rejection, and more than a month after representing to this Court that they would do so "promptly." Throughout that period, Plaintiffs took no discernible step to cure the Ministry's stated objection and resubmit through the Central Authority. Armstrong Decl. ¶ 5 & Ex. A. Plaintiffs' counsel estimates that re-initiating Central Authority service — after revising the accompanying materials — would take approximately four to five months. Armstrong Decl. ¶ 5. Roughly half of that estimated period has already elapsed since Japan's reply on March 26, 2026. The delay Plaintiffs now invoke as a reason to bypass the Hague Convention is delay of their own making.

## III.  ARGUMENT

A plaintiff seeking alternative service under Rule 4(f)(3) bears the burden of showing that the alternative method is "not prohibited by international agreement" and "comport[s] with constitutional notions of due process." *Rio*, 284 F.3d at 1016–17; *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Plaintiffs cannot carry that burden here.

### A.  Service On Mr. Yamamoto By Email Is Prohibited By International Agreement

The Hague Convention's transmittal regime is "mandatory in all cases to which it applies,"

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988), and the Convention, in turn, applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1.[1]

Although service of process under Rule 4(f)(3) is "neither a last resort nor extraordinary relief," a court may order it only "by . . . means not prohibited by international agreement." *Rio*, 284 F.3d at 1014; Fed. R. Civ. P. 4(f)(3). Accordingly, as the Ninth Circuit held, a court "would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)." *Rio*, 284 F.3d at 1015 n.4 (permitting email service in that case only because the defendant was based in Costa Rica, which was not a signatory to the Hague Convention).

Plaintiffs argue that service by email may be ordered by this Court because the Hague Convention's silence on email service means that email service is not "prohibited." Mot. 6. Plaintiffs' premise misreads how the Hague Convention works, and the Supreme Court has already explained why. In *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017), the Court described the Hague Convention as an instrument that "specifies certain *approved* methods of service," *Id*. at 273 (emphasis added), and "pre-empts inconsistent methods of service wherever it applies." *Id*. (citation and quotation marks omitted). The Hague Convention's "primary innovation" is the requirement that each signatory designate a Central Authority to receive and execute service requests under Articles 2–7; and service through that authority is the principal method the Hague Convention affirmatively authorizes. *Id.* at 275. The Convention leaves open other potential channels — such as the "postal channels" referenced in Article 10(a) — only when "the receiving state does not object." *Id.* at 284. The structure is therefore one of approval: a service method is available only 1) if the Hague Convention approves it, and 2) the receiving state has not opted out. A service method does not become an "approved method[] of service" under the Convention, simply because it is not mentioned.

---

[1]    There is no dispute that the Hague Convention applies in this case, because Mr. Yamamoto's address is known to Plaintiffs, as specified in paragraph 8 of the Complaint.

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

Every federal court of appeals to address whether Rule 4(f)(3) permits email service on a defendant located in a Hague Convention signatory has reached the same conclusion, building on *Water Splash*: where the Hague Convention applies and the receiving country has objected to Article 10, the Convention bars Rule 4(f)(3) email service. The Second Circuit so held in *Smart Study*, affirming dismissal of the China-based defendants for improper service. 164 F.4th at 171 ("Reading into the Convention's silence implicit permission for all types of service not affirmatively barred would render meaningless its approved methods of service, encouraging end-runs around the very system it created."). The Seventh Circuit agreed in *Kangol*, holding that "the Convention's language and the Supreme Court's understanding of that language make clear that—where the Convention applies—it sets out the permitted methods of service and excludes all others." 2026 WL 1502198, at *5. The Third Circuit reached the same result in *SEC v. Lahr*, 2024 WL 3518309, at *3 & n.12 (observing the exclusive nature of the Hague Convention). *See also Duong v. DDG BIM Servs. LLC*, 700 F. Supp. 3d 1088, 109 (M.D. Fla. 2023) (denying email service on defendants in India, which has objected to Article 10(a), because the Hague Convention's opt-in and opt-out provisions "establish a limited universe of alternative service methods" and treating undiscussed methods as permitted would render the right to object "a dead letter"). While not binding on this Court, this Court should follow these reasoned decisions by the Second, Seventh, and Third Circuits.

Notably, the courts of appeals did not need to decide whether email service falls within Article 10(a)'s "postal channels." In both *Smart Study* and *Kangol*, because the receiving state in each case had objected under Article 10, email service was impermissible either way: if email is a "postal channel," the objection prohibits it directly; and if it is not, it is not a method the Hague Convention approves and therefore may not be ordered by the Court. *See Smart Study*, 164 F.4th at 174–75; *Kangol*, 2026 WL 1502198, at *6. The same logic controls here: Japan has objected under Article 10, so the Court need not decide whether email is a "postal channel" to conclude that email service on Mr. Yamamoto is "prohibited by international agreement." *Rio*, 284 F.3d at 1014–15.

Even if the Court wanted to decide the issue of whether email is a "postal channel," the Contracting States themselves resolved that question in 2024. The Hague Conference's Special Commission on the Practical Operation of the Service, Evidence, and Access to Justice Conventions

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

("Special Commission") is a periodic gathering of the Contracting States to the Hague Convention to clarify how the Convention should operate in practice. In July 2024, this Special Commission, including Japan and the United States, formally concluded that "Article 10(a) includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination." Hague Conference on Private Int'l Law, *Conclusions and Recommendations of the Special Commission* ¶ 105 (July 2024), https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf (last visited June 18, 2026). According to the Special Commission's guidance, Japan's explicit objection to Article 10 forecloses the possibility of email service on Mr. Yamamoto in Japan.

Plaintiffs lean on *Rio* and a string of district court decisions to suggest that court-ordered email service is "routine." Mot. 4–6. Neither line of authority bears that weight here. *Rio* approved email service only because the defendant was a Costa Rican entity, and Costa Rica was not a signatory to the Hague Convention, so the treaty did not apply. 284 F.3d at 1015 n.4. The district court cases Plaintiffs cite are inapposite for two compounding reasons. One, these motions were granted almost uniformly *ex parte* without any adversarial briefing. And two, every one predates the Second Circuit's December 2025 decision in *Smart Study*, which Plaintiffs do not cite or address. Read together, Plaintiffs' authorities establish only what is not in dispute: that email service was ordered by these courts when the Hague Convention does not apply, or when no defendant appears to invoke it. Neither circumstance is present here.

> **B.  Service on Mr. Yamamoto's Former Counsel Is Not Authorized And Would Impermissibly Bypass The Convention**

Plaintiffs alternatively propose to effect service on Mr. Yamamoto through his "prior United States counsel," Mot. 5, but serving counsel in the United States is incompatible with the text of Rule 4(f), which authorizes service only "at a place not within any judicial district of the United States." Fed. R. Civ. P. 4(f). Where the recipient of process is in the United States, "the language of Rule 4(f) and the structure of Rule 4 as a whole" foreclose a 4(f)(3) order. *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020); *Codigo Music, LLC v. Televisa S.A. de C.V.*, 2017 WL 4346968, at *13 (S.D. Fla. Sept. 29, 2017) ("the plain language of Rule 4(f)(3)

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

requires that the alternative service sought contain, at least, some component of service that will occur outside of the United States"); *see also Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries (OPEC)*, 107 F. Supp. 3d 134, 137-39 (D.D.C. 2015) ("[B]ased on a textual reading of subsections (h) and (f)(3) of Rule 4 . . . service *cannot* occur in the United States" pursuant to Rule 4(f)(3)); *In re Auto. Parts Antitrust Litig.*, 2017 WL 10808851, at *2 (E.D. Mich. Nov. 2, 2017) ("[T]he plain language of Rule 4(f)(3) limits the Rule to service made outside of the United States."); *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, 2013 WL 6797175, at *1–4 (E.D. Mich. Oct. 2, 2013) (vacating prior order and finding that service under Rule 4(f)(3) may be effected only outside of the United States).

Here, Plaintiffs attempt to serve Mr. Yamamoto's former counsel, Thomas R. Burke and Sarah Burns of DWT, who represented Mr. Yamamoto in a separate state-court action. *See* Mot. 2. Because both individual attorneys are located in California, *see* Thomas R. Burke, *Davis Wright Tremaine LLP*, https://www.dwt.com/people/b/burke-thomas-r (last visited June 18, 2026); Sarah Burns, *Davis Wright Tremaine LLP*, https://www.dwt.com/people/b/burns-sarah (last visited June 18, 2026), any service on them is governed by Rule 4(e), which permits service by "following state law for serving a summons . . . in the state where the district court is located," Fed. R. Civ. P. 4(e)(1), or by delivery "to an agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(e)(2)(C). Although Plaintiffs never invoked Rule 4(e), even if they had, they could not have satisfied it, because California law authorizes service on an individual through another person only where that person is "authorized by him to receive service of process." Cal. Code Civ. Proc. § 416.90.

DWT represented Mr. Yamamoto only in the separate state-court action that ended nearly eight months ago; DWT does not represent Mr. Yamamoto in this case. In any event, "the attorney-client relationship by itself is insufficient to convey authority to accept service." *Blum v. Raizada*, 2019 WL 13159733, at *3 (S.D. Cal. Apr. 23, 2019) (citation and quotation marks omitted); *see also Aviara Parkway Farms, Inc. v. Agropecuaria La Finca*, 2012 WL 1019618, at *1–2 (S.D. Cal. Mar. 23, 2012) (quashing improper service of process on defendants' attorneys); *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) (finding that "service of process on an

attorney not authorized to accept service for his client is ineffective"). Neither Mr. Burke nor Ms. Burns (or the law firm DWT) has been authorized to accept service of process on Mr. Yamamoto's behalf in this action. Under these circumstances, Plaintiffs' service on Mr. Yamamoto's former U.S. counsel cannot constitute valid service on him. *Blum*, 2019 WL 13159733, at *4 (quashing improper service of process on defendants' counsel who lacked authority to receive service of summons on behalf of defendants). Plaintiffs cannot transform a foreign defendant into a domestic one by service on U.S.-based lawyers, much less U.S. lawyers who do not represent him in this case.

### C.    Plaintiffs Have Not Shown That Court-Ordered Alternative Service Is Necessary

Even if Rule 4(f)(3) could be used to authorize email service or alternative service on counsel (which Mr. Yamamoto disputes), Plaintiffs have failed to demonstrate that the Court's intervention is warranted here. Rule 4(f)(3) is committed to the Court's discretion based on "the particularities and necessities of a given case," *Rio*, 284 F.3d at 1016, and courts in this Circuit decline to order alternative service where the foreign defendant has shown no unwillingness to accept service in conformity with the governing law. *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 880 (N.D. Cal. 2011) (distinguishing *Rio*, because there the foreign defendant had "shown itself to be an elusive international defendant, striving to evade service of process," and denying service on counsel where defendants "have not shown any unwillingness to accept service in conformity with Taiwanese law") (citation and quotation marks omitted); *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, 2018 WL 1757776, at *2 (S.D. Cal. Apr. 11, 2018) (finding that "filing oppositions to Plaintiffs' motions regarding service" does not amount to waiver of "any arguments relating to insufficient service," and denying Plaintiffs' request to authorize alternative service on Defendants' counsel under Rule 4(f)(3) because Plaintiffs failed to show that the case "is of particular urgency requiring alternative service methods"); *Tevra Brands LLC v. Bayer Healthcare LLC*, 2020 WL 3432700, at *4 (N.D. Cal. June 23, 2020) (finding "the circumstances at bar do not necessitate [the court's] intervention" and denying motion for alternative service via counsel for U.S.-based subsidiary where there were no allegations that the German Defendants were evading service and the plaintiff

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

did not show "service through the [Hague] Convention would be unsuccessful or result in unreasonable burden or delay").

Two related showings to establish necessity for Rule 4(f)(3) are absent here. *First*, there is no evidence that Mr. Yamamoto has evaded or is evading service. He is simply domiciled in Japan.

*Second*, Plaintiffs have not demonstrated the good-faith, diligent effort at Convention service that may justify court intervention. That failure distinguishes Plaintiffs' cited decisions. In *SEC v. de Nicolas Gutierrez*, 2020 WL 1307143 (S.D. Cal. Mar. 19, 2020), the plaintiff pursued the Convention for months and the Mexican Central Authority "attested that service could not be completed" — a genuine failure after sustained effort. *Id.* at *2. Here, by contrast, Plaintiffs made a single attempt that drew a curable objection. In *CJ E&M America, Inc. v. iQiyi, Inc.*, 2018 WL 6380751 (C.D. Cal. Aug. 13, 2018), and *Sarieddine v. Vaptio, Inc.*, 2020 WL 8024863 (C.D. Cal. Dec. 2, 2020), the defendants were located in China, and the plaintiffs provided evidence that service through the Chinese Central Authority "could require two years" — a showing the courts found established the necessity for alternative service. *CJ E&M*, 2018 WL 6380751, at *3 (evidence of two-year timeline "not den[ied]" by defendant); *Sarieddine*, 2020 WL 8024863, at *3. Plaintiffs offer nothing comparable.

To the contrary, although Plaintiffs learned of the defect in their service package on March 26, 2026, they never attempted to cure the request and resubmit it to Japan, and instead filed this Motion on June 4, 2026. Plaintiffs point to the four to five months they estimated a new Hague Convention request to Japan would take, yet spent two months preparing this Motion instead of using that time to revise the materials and resubmit through the Central Authority. A party cannot manufacture the very delay it then offers as the "necessity" for bypassing the treaty.

**D.    Plaintiffs' Proposed "Layered Service" Of One Or More Improper Service Methods Does Not Equate To Proper Service Nor Excuse Compliance With Rule 4 And The Hague Convention**

Having quickly abandoned their efforts to effect service on Mr. Yamamoto in compliance with the Hague Convention, Plaintiffs argue that "layered service" — the combination of email service and transmission to former counsel — is "reasonably calculated" to reach Mr. Yamamoto and therefore comports with due process. Mot. 7. That argument misorders the inquiry. Due process

DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE

is a requirement under Rule 4(f)(3), but a method prohibited by international agreement cannot be ordered no matter how likely it is to give notice. *Rio*, 284 F.3d at 1014 ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement."). A method that violates a Hague signatory's sovereign opt-out does not become lawful because it might, as a practical matter, reach the defendant. The Ninth Circuit has long held that actual notice is not a substitute for service. *See, e.g.*, *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Neither actual notice, nor simply naming the person in the caption of the complaint will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4.") (citation and quotation marks omitted). Rule 4's drafters directed courts to "devise a method of communication that is consistent with due process and minimizes offense to foreign law." Fed. R. Civ. P. 4 advisory committee's note to 1993 Amendment.

Further, two improper methods of service do not become lawful simply because the methods are "layered." Mot. 7. Plaintiffs' theory, if accepted, would nullify every Article 10 opt-out. A plaintiff could pair prohibited email service with delivery to any U.S. attorney who had ever represented the defendant so long as those two unauthorized methods actually reach the defendant. Such an understanding of Rule 4(f)(3) would render the Convention optional: a result directly contrary to the Supreme Court's repeated holdings that the Convention is "mandatory" and "exclusive," *Schlunk*, 486 U.S. at 705–06.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Yamamoto respectfully requests that the Court deny Plaintiffs' Motion To Authorize Alternative Service Pursuant to Fed. R. Civ. P. 4(f)(3).

DATED: June 18, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By    */s/ Scott Schlafer*

Dawn Y. Yamane Hewett
(DC Bar No. 984923) (*pro hac vice*
forthcoming)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Scott Schlafer (Bar No. 335708)
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*

CASE NO. 5:26-cv-00945-NC
DEFENDANT YAMAMOTO'S OPP. TO PLAINTIFFS' MOT. TO AUTHORIZE ALTERNATIVE SERVICE