Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone:     415-296-7070
Facsimile:     415-449-6301

James Wagstaffe (SBN 95535)
wagstaffe@ammcglaw.com
**ADAMSKI MOROSKI MADDEN
  CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, California 93403
Telephone:     805-543-0990
Facsimile:     805-543-0980

Attorneys for Plaintiffs
Md Anis Uzzaman and
Pegasus Tech Ventures, Inc.

LAW OFFICES OF
**CRAIG S. MILLER, P.C.**
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>YASUMASA YAMAMOTO, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 5:26-cv-00945-NC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AUTHORIZE ALTERNATIVE SERVICE ON DEFENDANT YASUMASA YAMAMOTO PURSUANT TO FED. R. CIV. P. 4(f)(3)**<br><br>Date:       July 22, 2026<br>Time:       11:00 a.m.<br>Judge:      Hon. Nathanael M. Cousins<br>Location:   Courtroom 5 – 4th Floor |

LAW OFFICES OF
**CRAIG S. MILLER, P.C.**
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

## I.    INTRODUCTION

Defendant Yasumasa Yamamoto's opposition confirms that the service methods Plaintiffs propose work. On June 4, 2026, Plaintiffs served their motion and supporting papers—by electronic mail—on Mr. Yamamoto and on the Davis Wright Tremaine LLP ("DWT") attorneys who represented him in the parties' recent prior action. Two weeks later, Mr. Yamamoto appeared through counsel to oppose. The channels Plaintiffs ask this Court to authorize have thus already delivered him actual notice of this action and an opportunity to be heard. The only real question is whether those methods are legally permissible—and under Ninth Circuit law, they are.

Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders" and "is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (internal citation omitted). Mr. Yamamoto recasts the motion as an attempt to "skirt" the Hague Convention. It is not. Plaintiffs initiated such service, but Japan's Ministry of Foreign Affairs declined the request and returned the packet, objecting to standard case-management language—required in this District—stating that proceedings may be conducted by video link, and conditioning service on prior diplomatic consent. Curing that objection requires this Court's assistance to revise the materials Japan returned, costs thousands of dollars, takes an estimated four to five additional months, and carries no assurance against a second objection. Rule 4(f)(3) does not require Plaintiffs to repeat that process indefinitely when a permissible alternative has already reached the defendant.

## II.    PLAINTIFFS' LAYERED SERVICE SATISFIES DUE PROCESS.

Due process requires only a method "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Plaintiffs' layered approach—email to Mr. Yamamoto's confirmed address, together with transmission to his United States counsel—easily meets that standard. Indeed, it already has: Plaintiffs served the motion and supporting papers through these very channels on June 4, 2026 (Dkt. 12), and Mr. Yamamoto responded by appearing to oppose. There is no clearer proof that the methods "apprise"

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AUTHORIZE ALTERNATIVE SERVICE
Case No. 5:26-cv-00945-NC

LAW OFFICES OF
**CRAIG S. MILLER, P.C.**
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

him of the action and afford him an opportunity to be heard.

Mr. Yamamoto's contrary argument attacks a position Plaintiffs do not take. Plaintiffs do not contend that "actual notice" substitutes for proper service. Their position is that *each* method is itself permissible—email under controlling Ninth Circuit law, and service on counsel because it is domestic and outside the Convention—and that, the methods being permissible, the proven receipt confirms they satisfy due process. *Jackson v. Hayakawa* is not to the contrary: it addresses service that failed to substantially comply with Rule 4, not a method the court has affirmatively *ordered* under Rule 4(f)(3). 682 F.2d 1344, 1347 (9th Cir. 1982). Plaintiffs ask the Court to order permissible methods in advance—exactly what Rule 4(f)(3) contemplates.

## III.    EMAIL SERVICE TO MR. YAMAMOTO IS PERMISSIBLE UNDER CONTROLLING NINTH CIRCUIT LAW.

Mr. Yamamoto's lead argument—that the Convention categorically bars email service because Japan objected to Article 10—rests entirely on out-of-circuit decisions that do not bind this Court. In this Circuit, *Rio* supplies the framework: the question under Rule 4(f)(3) is whether the proposed method is "prohibited by international agreement," and email service is permissible where it is not. 284 F.3d at 1014-17. The Ninth Circuit has not adopted the rule Mr. Yamamoto urges, and this Court is not free to disregard *Rio*'s permissive, discretion-centered approach.

*Smart Study*, *Kangol*, and *Lahr* do not compel a different result. None is binding here—they are decisions of the Second, Seventh, and Third Circuits—and *Lahr* is expressly non-precedential even within the Third Circuit. *SEC v. Lahr*, No. 22-2497, 2024 WL 3518309, at *1 (3d Cir. July 24, 2024) ("does not constitute binding precedent"). More fundamentally, each arose as a collateral attack on *completed* service—motions to vacate default judgments in *Kangol* and *Lahr*, and an appeal from dismissal after some defendants never appeared in *Smart Study*. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, No. 25-2205, 2026 WL 1502198, at *2–*3 (7th Cir. May 29, 2026); *Lahr*, 2024 WL 3518309, at *2; *Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 169 (2d Cir. 2025). None involved a prospective, adversarial Rule 4(f)(3) motion in which the defendant appeared and was heard *before* service. Even in *Kangol*, the court did not order dismissal but remanded for the district court to

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

decide whether the Convention "applies at all." 2026 WL 1502198, at \*6. And *Lahr* turned on Switzerland-specific law permitting email only with the recipient's consent and declined to decide whether an Article 10(a) objection reaches email service. 2024 WL 3518309, at \*5.

Mr. Yamamoto's claim of uniform appellate consensus also obscures the law. Even the decision he cites concedes that "[d]istrict courts around the country are deeply split" on whether the Convention prohibits email service on a defendant in an objecting country. *Duong v. DDG BIM Servs. LLC*, 700 F. Supp. 3d 1088, 1093 (M.D. Fla. 2023). Courts in this Circuit have repeatedly authorized email service on defendants located in countries that objected to Article 10. In *SEC v. de Nicolas Gutierrez*, the court authorized email service on a defendant in Mexico— which, like Japan, has objected to Article 10—after Convention service proved unsuccessful. No. 17-cv-2086-JAH-JLB, 2020 WL 1307143, at \*2-3 (S.D. Cal. Mar. 19, 2020); *see also WhatsApp LLC v. Rockey Tech HK Ltd.*, No. 4:22-cv-05711-KAW, 2023 WL 12141350, at \*2 (N.D. Cal. Nov. 14, 2023) (email service on China-based defendants); *Digital Mktg. Corp. v. Manufacturas Post Form, S.A. de C.V.*, No. 2:20-cv-06223-RGK-AFM, 2022 WL 2093000, at \*2 (C.D. Cal. Feb. 23, 2022) ("[T]here is no indication that service via email is prohibited by the Hague Convention" notwithstanding Mexico's objection to postal channels); *CJ E&M Am., Inc. v. iQiyi, Inc.*, No. 18-cv-5771-PA-JEMx, 2018 WL 6380751, at \*4 (C.D. Cal. Aug. 13, 2018) (collecting cases). The Ninth Circuit has not disapproved that practice, and this Court remains free to follow it.

Mr. Yamamoto's reliance on a 2024 Special Commission conclusion is similarly misplaced. The conclusions of the Hague Conference's Special Commission are non-binding advisory guidance, not ratified treaty text. An international committee's subsequent gloss on a 1965 treaty does not constitute binding federal law, nor can it strip this Court of its equitable discretion under Rule 4(f)(3). *Medellín v. Texas*, 552 U.S. 491, 504-05 (2008). Moreover, the Special Commission's own conditional phrasing—expressly keying the permissibility of email to the laws of the origin and destination states—demonstrates that the Commission itself does not view the issue as categorically resolved. Finally, Mr. Yamamoto's attempt to use *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) to bridge this gap fails. *Water Splash* mandates strict adherence to the treaty's text, and nothing in that text precludes the alternative service Plaintiffs seek here.

LAW OFFICES OF
**CRAIG S. MILLER, P.C.**
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Email service is not merely "reasonably calculated" to reach Mr. Yamamoto—it demonstrably has. He used and monitored yasumasayamamoto@gmail.com, replying from that address twice in June 2024 about this dispute. Dkt. 11-1 at ¶¶ 5-7 & Exs. A-B. When Plaintiffs emailed this motion on June 4, 2026, Mr. Yamamoto appeared through counsel within two weeks. Dkt. 12. As *Rio* recognized, where a defendant uses email it may be "the method of service most likely to reach" him, 284 F.3d at 1017—and here the record proves it did.

## IV.    SERVICE ON MR. YAMAMOTO'S UNITED STATES COUNSEL IS PROPER AND DOES NOT IMPLICATE THE HAGUE CONVENTION.

Service on Mr. Yamamoto's United States counsel does not implicate the Hague Convention at all. The Convention applies only "where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (quoting Convention art. 1). Where service is accomplished domestically— without transmitting anything abroad—the Convention "has no further implications." *Id.* at 707. The DWT attorneys are located in California. Dkt. 13 at 7. Serving them is a domestic act, complete in this country, that sends nothing to Japan. Mr. Yamamoto's extended Article 10 argument is therefore beside the point as to this channel.

Independently, Rule 4(f)(3) authorizes service on a foreign defendant's United States counsel, and courts in this Circuit applying *Rio* have squarely rejected the territorial argument Mr. Yamamoto presses. In *CJ E&M Am.*, the court confronted a China-based defendant whose San Francisco counsel had "refused to accept or waive service," and held that "Rules 4(h)(2) and 4(f)(3) may appropriately be applied to permit service that is effected within the United States"—rejecting as contrary to *Rio* the contention that Rule 4(f)(3) reaches only service occurring abroad. 2018 WL 6380751, at *3; *accord Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) (service on United States counsel is "a common form of service ordered under Rule 4(f)(3)"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1009-10 (N.D. Cal. 2014); *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1295 (10th Cir. 2020) (service on a foreign defendant's American counsel violates neither the Convention nor Rule 4(f)(3)).

LAW OFFICES OF
**CRAIG S. MILLER, P.C.**
42 MILLER AVENUE ● MILL VALLEY ● CA 94941
PHONE 415-296-7070 ● FAX 415-449-6301

Courts in this Circuit apply that rule to defendants in Japan in circumstances similar to these. In *Tart Optical Enterprises, LLC v. Light Co.*, the court authorized Rule 4(f)(3) service on a defendant "who resides in Japan" by serving the United States counsel who had specially appeared for him—holding that service through counsel is "not 'prohibited by international agreement'" and "comports with due process" because counsel had filed documents on the defendant's behalf and would remain in contact with him. No. 16-cv-08061-JAK-MRWx, 2019 WL 9048860, at *9-10 (C.D. Cal. Mar. 18, 2019). The court rejected the very argument Mr. Yamamoto makes—that the plaintiff must reattempt Hague service—and emphasized that prior Convention attempts had caused "significant delays" and substantial expense. *Id.* at *9 & n.6. The parallel is exact: Mr. Yamamoto resides in Japan, his counsel has specially appeared to litigate this very motion, and the Convention route has already produced delay and expense.

Nor does it matter that the DWT attorneys are not "authorized" agents. Due process "does not require that individuals served on behalf of a foreign defendant have represented them in the past or have been authorized to accept service." *de Nicolas Gutierrez*, 2020 WL 1307143, at *3 (authorizing service on counsel who "affirms he is not authorized to accept or waive service" and had stated he "no longer representing" the defendant); *CJ E&M*, 2018 WL 6380751, at *4 (due process satisfied where counsel is in contact with the foreign defendant "even if he is not authorized to accept service on the defendant's behalf and has not been retained for the matter"); *Sarieddine v. Vaptio, Inc.*, No. 20-cv-07785-VAP-MRWx, 2020 WL 8024863, at *4-5 (C.D. Cal. Dec. 2, 2020). The DWT attorneys represented Mr. Yamamoto in the related prior action, received the complaint and waiver request, and were emailed the motion. Likewise, Mr. Yamamoto's argument regarding California Code of Civil Procedure § 416.90 fails because it governs service on an "authorized agent" under state law, but does not constrain Rule 4(f)(3) discretion, and *de Nicolas*, *CJ E&M*, and *Tart Optical* granted service on counsel who were not authorized agents.

## V. THE EQUITIES AND THE OPPOSITION'S OWN NECESSITY CASES CONFIRM THAT ALTERNATIVE SERVICE IS WARRANTED.

Rule 4(f)(3) commits the choice of method to this Court's "sound discretion" based on "the particularities and necessities of a given case," and a plaintiff "need not have attempted every

permissible means of service" first. *Rio*, 284 F.3d at 1015-16. Mr. Yamamoto's necessity authorities, read in light of how this case has unfolded, all support the requested relief.

### A.    Japan's return of the packet establishes necessity.

Japan declined to execute Plaintiffs' request and returned the packet because of this District's standard video-link language, conditioning any service on prior diplomatic consent. Dkt. 11-2 at ¶ 4 & Ex. A. Curing that objection requires the Court's assistance to revise the returned materials, costs thousands of dollars, and takes four to five more months—with no guarantee against a renewed objection. *Id.* ¶ 5. *de Nicolas Gutierrez* confirms that unsuccessful Convention efforts, coupled with a defendant who is reachable by other means, warrant alternative service. 2020 WL 1307143, at *2. *Tart Optical* is squarely on point: the court authorized Rule 4(f)(3) service on a Japan-resident defendant precisely because prior Hague attempts had caused "significant delays" and substantial expense (there, an estimated 8–12 months and $15,000–$20,000). 2019 WL 9048860, at *9 & n.6. Plaintiffs face the same administrative treadmill here. Rule 4(f)(3) does not require Plaintiffs to keep funding and awaiting repeated submissions to an authority that has already returned the packet once—least of all where the alternative methods have already reached the defendant.

### B.    Defendant's reliance on *Fujitsu* and *Tevra* is misplaced because the circumstances are distinguishable.

Defendant's reliance on *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868 (N.D. Cal. 2011), and *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2020 WL 3432700 (N.D. Cal. June 23, 2020), is misplaced. These cases are readily distinguishable on their facts, as both involved plaintiffs who prematurely sought alternative service before demonstrating that standard methods were unavailable or that the defendants were resisting. Additionally, those cases involved corporate defendants with established, stationary headquarters where subsequent formal service efforts were highly likely to succeed. Here, the defendant is an individual. Forcing Plaintiffs to endure another four-to-five month delay to re-initiate the formal process—with no guarantee of success—creates a substantially higher risk of prejudice, as an individual defendant's

LAW OFFICES OF
**CRAIG S. MILLER, P.C.**
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

circumstances and physical location are inherently more transient than those of a multinational corporation.

In *Fujitsu*, the court declined to order alternative service on Taiwanese defendants' United States counsel because the defendants were not evading service and ordinary service under Taiwanese law remained readily available. Crucially, the court stressed that the defendants "ha[d] not shown any unwillingness to accept service in conformity with Taiwanese law." 782 F. Supp. 2d at 880. Here, by contrast, standard Hague Convention service to Japan has already proven to be a failed and unenforceable alternative because the packet was attempted and promptly returned.

*Tevra* is equally distinguishable. There, the court denied alternative service without prejudice because the delay was entirely of the plaintiff's own making. 2020 WL 3432700, at *4. The plaintiff's service packets had been repeatedly rejected due to the plaintiff's own preparation errors, and the foreign central authority had been in possession of the complete packets for only three months. Finding the request "premature" and noting there were "no allegations here that the German Defendants are evading service," the court declined to intervene. *Id.* at *4–5. None of those circumstances apply here. Plaintiffs did not delay their attempted Hague Convention service. Instead, upon Plaintiffs' timely effort, Japan returned the complete packet on March 26, 2026, rejecting it based on this Court's own required case-management language rather than any error or deficiency caused by Plaintiffs. Moreover, Mr. Yamamoto is actively resisting service, even though the proposed alternative methods have demonstrably already reached him.

Finally, *Fourte International* fails to support Defendant's position for the exact same reason: the court denied alternative service on U.S. counsel there solely because the plaintiffs "have not alleged any facts that show that the available methods of service have failed to [effect] service." *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, No. 18-cv-00297-BAS-BGS, 2018 WL 1757776, at *2 (S.D. Cal. Apr. 11, 2018). Here, the available Hague method demonstrably failed, necessitating this Court's intervention.

**C.    Mr. Yamamoto's conduct is the gamesmanship Rule 4(f)(3) exists to address.**

Mr. Yamamoto insists there is "no evidence that [he] has evaded or is evading service" and that "he is simply domiciled in Japan." Dkt. 13 at 9. The record shows otherwise. Before moving,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AUTHORIZE ALTERNATIVE SERVICE
Case No. 5:26-cv-00945-NC

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Plaintiffs' counsel twice asked his longtime counsel whether they would accept service or arrange a Rule 4(d) waiver, attaching the complaint and waiver forms; counsel never responded—not even to decline. Dkt. 11-2 at ¶¶ 6-8 & Exs. B–C. Plaintiffs then served the motion on Mr. Yamamoto's email and those same counsel (Dkt. 12)—and Mr. Yamamoto answered not by accepting service, but by retaining new counsel to oppose it while still refusing to say whether anyone will accept service on his behalf. A defendant who receives the papers, appears through counsel, and litigates the validity of service while declining to accept it is not "simply domiciled in Japan"; he is using the Convention to delay a case he has known about since before it was filed, having corresponded personally with Pegasus about this very dispute in June 2024. Dkt. 11-1 at ¶¶ 3-7. That is the "elusive" conduct that calls for the Court's intervention. *Rio*, 284 F.3d at 1016.

Dated: June 26, 2026

Respectfully submitted,

/s/ *Jeremiah A. Armstrong*

Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: 415-296-7070
Facsimile: 415-449-6301

James Wagstaffe (SBN 95535)
wagstaffe@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, California 93403
Telephone: 805-543-0990
Facsimile: 805-543-0980

*Attorneys for Plaintiffs*
*Md Anis Uzzaman and*
*Pegasus Tech Ventures, Inc.*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AUTHORIZE ALTERNATIVE SERVICE
Case No. 5:26-cv-00945-NC

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301