QUINN EMANUEL URQUHART & SULLIVAN, LLP
Dawn Y. Yamane Hewett (DC Bar No. 984923) (*pro hac vice*)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Justin C. Griffin (Bar No. 234675)
Scott Schlafer (Bar No. 335708)
justingriffin@quinnemanuel.com
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>YASUMASA YAMAMOTO, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 5:26-cv-00945-NC<br><br>**DEFENDANT YASUMASA YAMAMOTO'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Nathanael M. Cousins<br>Hearing Date: September 16, 2026 |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 16, 2026, at 11 a.m., or as soon thereafter as the matter may be heard, before the Honorable Nathanael M. Cousins in Courtroom 5 – 4th Floor of the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California 95113, Defendant Yasumasa Yamamoto ("Yamamoto") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and the doctrine of *forum non conveniens*, for an order dismissing the Complaint of Plaintiffs Md Anis Uzzaman ("Uzzaman") and Pegasus Tech Ventures, Inc. ("Pegasus") (collectively, "Plaintiffs") with prejudice. This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Yamamoto ("Yamamoto Decl."), Yuta Yamasaki ("Yamasaki Decl."), and Dawn Y. Yamane Hewett ("Hewett Decl.") and the exhibits attached thereto, and any other matters the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether this case should be dismissed under the doctrine of *forum non conveniens*.

2.      Whether this Court lacks personal jurisdiction over Yamamoto.

3.      Whether Plaintiffs' trade libel, intentional interference, and unfair competition claims should be dismissed for failure to state a claim upon which relief can be granted, including whether all three claims must be dismissed as to Plaintiff Uzzaman for failure to plead any injury of his own and for lack of standing.

DATED: August 10, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ Dawn Y. Yamane Hewett*

Dawn Y. Yamane Hewett
(DC Bar No. 984923) (*pro hac vice*)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Justin C. Griffin (Bar No. 234675)
Scott Schlafer (Bar No. 335708)
justingriffin@quinnemanuel.com
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.      INTRODUCTION.................................................................................................1

II.     SUMMARY OF ALLEGED FACTS ........................................................................2

III.    THE ACTION SHOULD BE DISMISSED ON *FORUM NON CONVENIENS*
        GROUNDS.........................................................................................................4

        A.    The Court Should Decide *Forum Non Conveniens* Before Any Other
              Defense.................................................................................................4

        B.    Japan Is an Adequate Alternative Forum ..............................................4

        C.    All Seven Private-Interest Factors Favor Japan .....................................5

              1.    The Residence of Parties, Forum's Convenience to the Litigants, and
                    Access to Physical Evidence and Other Sources of Proof All Favor
                    Japan....................................................................................6

              2.    The Availability of the Compulsory Process Also Favors Japan..................6

              3.    The Remaining Factors—the Costs of Bringing Witnesses to Trial,
                    Enforceability of a Judgment, and All Other Practice Problems That
                    Would Prevent an Efficient Resolution—Likewise Favor Japan..................8

              4.    Plaintiffs' Own Extensive Japan Ties Defeat Any Claim of
                    Inconvenience and Reduce Deference ......................................9

        D.    The Public-Interest Factors All Favor Japan..........................................10

IV.     THE COURT LACKS PERSONAL JURISDICTION OVER YAMAMOTO...................11

        A.    Plaintiffs Bear the Burden of Establishing Jurisdiction .........................11

        B.    This Court Lacks General Jurisdiction...................................................11

        C.    This Court Also Lacks Specific Jurisdiction...........................................11

              1.    Yamamoto Did Not Purposefully Direct His Activities at California .........12

              2.    Plaintiffs Do Not Allege Claims Arising from or Related to
                    Yamamoto's Contacts with California ..........................................13

              3.    Exercising Personal Jurisdiction over Yamamoto Would Be
                    Unreasonable .......................................................................13

        D.    The Court Should Not Allow Jurisdictional Discovery .........................14

V.      IN THE ALTERNATIVE, ALL THREE CLAIMS FAIL UNDER RULE 12(B)(6) .........15

DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

A.    Plaintiff Uzzaman Lacks Standing on Every Claim................................................15

B.    Plaintiffs Fail to Adequately Plead Any Element of Trade Libel ...........................15

    1.    The Complaint Identifies No Specific, Actionable Statement, and the One Statement It Points to Cannot Be Considered by the Court .................16

    2.    Plaintiffs Fail to Allege that Yamamoto's Statements Clearly Derogate Pegasus' Products or Services ......................................................17

    3.    The Alleged Statements Are Non-Actionable Opinion...............................18

    4.    Plaintiffs Fail to Allege Actual Malice .......................................................19

    5.    Neither Special Damages Nor Causation Is Adequately Pleaded ...............20

C.    The Intentional Interference and Unfair Competition Claims Fail ..........................22

    1.    Plaintiffs Fail to State an Intentional Interference Claim............................22

    2.    Plaintiffs Fail to State an Unfair Competition Claim..................................24

VI.    CONCLUSION .....................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AlterG, Inc. v. Boost Treadmills LLC,*
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................ 16, 22, 24, 25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................ 17, 21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
874 F.3d 1064 (9th Cir. 2017)................................................................................ 12

*Ballard v. Savage,*
65 F.3d 1495 (9th Cir. 1995) ................................................................................. 13

*Bauman v. DaimlerChrysler AG,*
2005 WL 3157472 (N.D. Cal. Nov. 22, 2005) ...................................................... 5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................... 17

*Blatty v. New York Times Co.,*
42 Cal. 3d 1033 (1986)........................................................................................... 22

*BMA LLC v. HDR Glob. Trading Ltd.,*
2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ........................................................ 21

*Brandt v. Verizon Commc'ns, Inc.,*
2019 WL 2124338 (N.D. Cal. May 15, 2019) ....................................................... 6

*Calder v. Jones,*
465 U.S. 783 (1984) ............................................................................................... 12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (1999)............................................................................................ 24

*Citcon USA, LLC v. Miao,*
2021 WL 4499267 (N.D. Cal. June 1, 2021) ........................................................ 14

*City of Costa Mesa v. D'Alessio Invs., LLC,*
214 Cal. App. 4th 358 (2013)................................................................................. 15

*Clorox Co. v. Reckitt Benckiser Grp. PLC,*
398 F. Supp. 3d 623 (N.D. Cal. 2019) .................................................................. 25

*ComputerXpress, Inc. v. Jackson,*
93 Cal. App. 4th 993 (2001).................................................................................. 18

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
918 F.2d 1446 (9th Cir. 1990)..................................................................................................... 9

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993)................................................................................................ 13, 14

*de Borja v. Razon*,
835 F. App'x 184 (9th Cir. 2020)............................................................................................... 4

*de Cordova v. MCG Nevada, Inc.*,
2011 WL 13221009 (C.D. Cal. Nov. 29, 2011) ....................................................................... 19

*Dickens v. NXP Semiconductors*,
703 F. Supp. 3d 1013 (N.D. Cal. 2023) ................................................................................. 6, 8

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020).................................................................................................. 24

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010)................................................................................................. 24

*Erlich v. Etner*,
224 Cal. App. 2d 69 (1964)....................................................................................................... 15

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
569 F. Supp. 2d 929 (N.D. Cal. 2008) ................................................................. 16, 17, 20, 21

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .................................................................................................................. 11

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004).................................................................................................... 18

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
905 F.3d 597 (9th Cir. 2018)..................................................................................................... 14

*Gen. Signal Corp. v. MCI Telecomm. Corp.*,
66 F.3d 1500 (9th Cir. 1995)..................................................................................................... 14

*Glenn K. Jackson Inc. v. Roe*,
273 F.3d 1192 (9th Cir. 2001).................................................................................................... 15

*Global Telemedia Int'l, Inc. v. Doe 1*,
132 F. Supp. 2d 1261 (C.D. Cal. 2001)................................................................................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .................................................................................................................. 11

*Gopher Media LLC v. Melone*,
2023 WL 8790266 (S.D. Cal. Dec. 19, 2023)..................................................................... 15, 18

DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

*Heary Bros. Lightning Protection Co. v. Lightning Protection Institute,*
287 F.Supp.2d 1038 (D. Ariz. 2003) ....................................................................... 17

*Hellenic Petroleum, LLC v. Sacramento Energy Res., LLC,*
2019 WL 4747794 (E.D. Cal. 2019) ................................................................. 18, 20

*Hofmann Co. v. E.I. Du Pont de Nemours & Co.,*
202 Cal. App. 3d 390 (1988) ..................................................................................... 18

*Homeland Housewares, LLC v. Euro-Pro Operating LLC,*
2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ........................................................... 20

*Imamura v. Gen. Elec. Co.,*
371 F. Supp. 3d 1 (D. Mass. 2019) ........................................................................... 10

*Israel Disc. Bank, Ltd. v. Schnapp,*
321 F. App'x 700 (9th Cir. 2009) ..................................................................... 4, 6, 10

*Ixchel Pharma, LLC v. Biogen, Inc.,*
9 Cal. 5th 1130 (2020) ............................................................................................... 23

*J-M Mfg. Co. v. Phillips & Cohen LLP,*
247 Cal. App. 4th 87 (2016) ............................................................................... 15, 19

*J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.,*
515 F. Supp. 2d 1258 (M.D. Fla. 2007) ............................................................ 5, 7, 8

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ................................................................................... 25

*Kenney v. Wells Fargo Bank, N.A.,*
791 F. Supp. 3d 1163 (C.D. Cal. 2025) .................................................................... 15

*Kilopass Tech. Inc. v. Sidense Corp.,*
2010 WL 5141843 (N.D. Cal. Dec. 13, 2010) .......................................................... 16

*Kleiner v. Spinal Kinetics, Inc.,*
2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) ........................................................ 4, 6

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) ................................................................................. 22, 24, 25

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310 (2011) ............................................................................................... 15

*Leetsch v. Freedman,*
260 F.3d 1100 (9th Cir. 2001) ................................................................................... 10

*Lockman Found. v. Evangelical All. Mission,*
930 F.2d 764 (9th Cir. 1991) .................................................................................. 4, 5

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001).................................................................................. 4, 5, 7, 10

*Mann v. Quality Old Time Serv., Inc.*,
   139 Cal. App. 4th 328 (2006)................................................................................................ 17

*Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*,
   445 F. Supp. 3d 337 (N.D. Cal. 2020) ............................................................................ 11, 13

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006)............................................................................................. 24

*Menzel v. Scholastic, Inc.*,
   2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ..................................................................... 21

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ................................................................................................................. 18

*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*,
   556 F.2d 975 (9th Cir. 1977)................................................................................................... 9

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017)............................................................................................... 12

*Muddy Waters, LLC v. Superior Court*,
   62 Cal. App. 5th 905 (2021).............................................................................................20, 21

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) .................................................................................. 18

*Overhill Farms, Inc. v. Lopez*,
   190 Cal. App. 4th 1248 (2010).............................................................................................. 18

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995)................................................................................................. 19

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006)............................................................................................... 12

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015)............................................................................................... 11

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013) .................................................................................. 21

*Reader's Dig. Ass'n v. Superior Court*,
   37 Cal. 3d 244 (1984)........................................................................................................... 19

*Reid-Walen v. Hansen*,
   933 F.2d 1390 (8th Cir. 1991)................................................................................................. 9

DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) .................................................................................. 19

*Sandoval v. Carnival Corp.*,
  2014 WL 12585803 (C.D. Cal. Sept. 15, 2014).......................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004)............................................................................................... 11, 12

*Shell Petroleum, N.V. v. Graves*,
  709 F.2d 593 (9th Cir. 1983)..................................................................................................... 15

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
  983 F. Supp. 1303 (N.D. Cal. 1997) ......................................................................................... 23

*Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007) .................................................................................................................... 4

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ...................................................................................... 23

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)..................................................................................................... 25

*Standing Comm. on Discipline v. Yagman*,
  55 F.3d 1430 (9th Cir. 1995)..................................................................................................... 19

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
  2011 WL 2940992 (C.D. Cal. July 18, 2011) ............................................................................. 9

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011).............................................................................................................. 25

*Sussman v. Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992).............................................................................................. 9

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)..................................................................................................... 11

*T.U. v. CooperSurgical, Inc.*,
  2025 WL 3171594 (N.D. Cal. Nov. 13, 2025).......................................................................... 14

*Trevari Media, LLC v. Colasse*,
  758 F. Supp. 3d 1175 (C.D. Cal. 2024)..................................................................................... 19

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006)..................................................................................................... 4

*United States v. Rivera-Rosario*,
  300 F.3d 1 (1st Cir. 2002) ......................................................................................................... 17

CASE NO. 5:26-cv-00945-NC
DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................................... 12

*Ward v. Jump Trading, LLC*,
   2026 WL 145846 (N.D. Cal. Jan. 20, 2026) ............................................................. 14

*Weintraub Fin. Servs., Inc. v. Boeing Co.*,
   2020 WL 6162801 (C.D. Cal. 2020) ..................................................................... 23, 24

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ....................................................................................... 23

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................................. 19, 20

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
   724 F. Supp. 3d 921 (N.D. Cal. 2024) ................................................................. 11, 12

*Zhang v. Superior Court*,
   57 Cal. 4th 364 (2013) ................................................................................................ 25

**STATUTES**

28 U.S.C. § 1782 ............................................................................................................... 7

California Business & Professions Code § 17200 ...................................................... 22, 24

Cal. Civ. Proc. Code §§ 1713–1724 .................................................................................. 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ..................................................................................................... 16, 20, 25

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 15

Fed. R. Civ. P. 45(c) ......................................................................................................... 7

DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs, unhappy with certain business development efforts in Japan, are attempting to turn their failures into a windfall by bringing trade libel, interference, and unfair competition claims based on conjecture rather than concrete statements, in an improper forum, against a person over whom this Court does not have jurisdiction. This case should be dismissed on three independent grounds: (1) *forum non conveniens*; (2) lack of personal jurisdiction; and (3) failure to state a claim.

*Forum non conveniens* is a threshold ground a federal court may decide first. This dispute belongs in Japan, not this Court, because Japan is an adequate alternative forum, and all of the private- and public-interest factors point to Japan. By Plaintiffs' own telling, the purported statements at issue were made by a Japanese national, in Japan, in Japanese, to Japanese recipients at Japanese institutions, about a Japan-based event and business negotiations. Plaintiff Pegasus is itself Japanese-owned: its parent is the Japanese company Pegasus Tech Holdings, K.K. Dkt. 3; Hewett Decl. Ex. 1. The dispute is Japanese in every respect that matters and it should be dismissed in favor of Japan.

The Court also lacks personal jurisdiction over Yamamoto. Plaintiffs admit that he is at home in Japan, not in California, so there is no general jurisdiction. Plaintiffs' residence is the only connection the Complaint draws to this forum, which the Supreme Court has long held to be insufficient to establish specific jurisdiction.

Even if the Court considers the merits, the Complaint fails to state a claim upon which relief may be granted. Plaintiff Uzzaman has no standing to bring any of the claims and could not state a claim even if he did. The trade libel claim (Count I) fails, because it identifies no specific, actionable disparaging statement, conflates defamation with trade libel, and pleads no special damages and no plausible causation. The intentional interference claim (Count II) fails for these same reasons, because it requires an independently wrongful act and the Complaint pleads none beyond its defective trade libel theory. Likewise, because the unfair competition claim (Count III) is derivative of its trade libel claim, it fails too. Plaintiffs' claims should be dismissed without leave to amend.

## II.    SUMMARY OF ALLEGED FACTS

**The Parties and jurisdiction.** Plaintiffs acknowledges that Yamamoto is "an individual domiciled in Japan," who "maintains his permanent residence and center of domestic life" in Minato-ku, Tokyo. Compl. ¶¶ 6, 12. Plaintiffs do not allege that any of Yamamoto's purported conduct (*i.e.*, his alleged statements) occurred outside Japan. *Id.* ¶¶ 20–26 & Ex. A.  Yamamoto's alleged contacts with California are that he is manager or member of Green Capital Management LLC, which lists a San Mateo address and designates him as agent for service of process, and that he "utilizes California addresses for corporate filings." *Id.* ¶¶ 7, 12. Plaintiffs allege no connection between Yamamoto's alleged California connections and their claims here. The only tether between Plaintiffs' claims and California are that (1) Uzzaman is alleged to be domiciled in Santa Clara County, California, (2) Pegasus, which is a global venture capital firm that manages "over $2 billion in assets," is allegedly headquartered in San Jose, California, and (3) both were purportedly injured in this district. *Id.* ¶¶ 4, 5, 11, 15.

**The alleged statements.** The Complaint alleges that Yamamoto "engaged in a systematic and malicious campaign to destroy Plaintiffs' business reputation" spanning from 2022 to 2025. *Id.* ¶ 19. That sweeping characterization is pleaded "[u]pon information and belief." *Id.* When the Complaint turns from the label to the particulars, allegations of concrete conduct and specific statements are nowhere to be found. It first alleges unspecified "disparaging statements about Pegasus" outside the limitations period to four Japanese companies that "[u]pon information and belief" somehow "influenced" each company's independent decision not to form a CVC fund with Pegasus. *Id.* ¶¶ 20–21. The Complaint does not allege the content of any alleged statement.

As to the Complaint's allegations of actionable interference within the limitations period, Plaintiffs first allege that unspecified "personnel informed Plaintiffs that [Idemitsu] had received negative information about Plaintiffs from an outside party," which Plaintiffs surmise to be Yamamoto. *Id.* ¶ 23(a). No allegation about what was actually said, who said it, who received it, or when.  Plaintiffs further allege, "[u]pon information and belief," that Yamamoto "contacted DIC executives . . . to republish false claims regarding Uzzaman's professional legitimacy," without supplying the content, time, place, or recipient of any statement.  *Id.* ¶ 23 (b).

The only statement the Complaint attempts to set out with any specificity is drawn from the Declaration of Prof. Yamada of Kyoto University, which the Complaint calls its "direct evidence" and "evidentiary exemplar." *Id.* ¶ 24; Compl. Ex. A. The purported evidence is a screen shot of a text message written in Japanese through LINE, a Japanese messaging app.[1]  Compl. Ex. A ¶ 5(d). No translation is provided.  Instead, Plaintiffs offer their own summary of the message, claiming that on June 9, 2024, Yamamoto sent Prof. Yamada LINE messages "falsely claiming Uzzaman was not a legitimate venture capitalist" and "relying in part on" Pegasus's investment in the streaming service Quibi. *Id.* ¶ 26. Beyond the summary of the untranslated June 9 LINE messages, the Complaint alleges—"[u]pon information and belief"—that Yamamoto "has made many other improper, meritless, and harmful disparaging statements about Plaintiffs to numerous other people"—again, no actual statement, and no identification of the recipients, time, or place—and that his "interference also caused the withdrawal" of six named and other unnamed "high-profile speakers" from the 2024 Startup World Cup events. *Id.* ¶¶ 24, 27.

**Alleged injuries.**  The Complaint alleges losses "totaling over $450 million," *id.* ¶¶ 36, 41, in three categories. It claims (1) $696,666 in "[l]ost [s]ponsorship [r]evenue" for the 2024 Startup World Cup events in Kyoto, Kyushu, and Tokyo; (2) $78.1 million in lost "[f]und and [c]onsulting" revenue from the Idemitsu and DIC CVC funds that were "rejected *solely* due to Yamamoto's interference"; and (3) $143 million in "[l]ost [e]quity [c]apital" from "63 specific corporate investors." *Id.* ¶ 28 (emphasis added). These three categories total roughly $221.8 million—less than half of the claimed $450 million—leaving some $228 million wholly unexplained. Further, the Complaint identifies no sponsor, contract, or per-event amount behind the sponsorship figure, no terms for the Idemitsu or DIC funds, and not one of the "63 specific corporate investors." Plaintiffs do nothing to tie any statement to any alleged injury.  In fact, the only statement they attempt to allege with any detail—the June 9, 2024 LINE message—occurred weeks after the event Plaintiffs

---

[1]  Plaintiffs' own Complaint describes it as "an instant messaging and social networking application that's popular in Japan." Compl. ¶ 26 n.1.

allege the statement was intended to interfere—the Startup World Cup Kyoto Regional Event, which was on May 21, 2024. Compl. Ex. A ¶ 4(d).

## III.    THE ACTION SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS

### A.    The Court Should Decide *Forum Non Conveniens* Before Any Other Defense

The Court should "dispose of [this] action by a *forum non conveniens* dismissal, bypassing questions of . . . personal jurisdiction," because "considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); *de Borja v. Razon*, 835 F. App'x 184, 186–87 (9th Cir. 2020) (affirming FNC dismissal without allowing jurisdictional discovery or adjudicating personal jurisdiction); *see also Israel Disc. Bank, Ltd. v. Schnapp*, 321 F. App'x 700, 701 (9th Cir. 2009).[2] "In dismissing an action on forum non conveniens grounds, the Court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001).

### B.    Japan Is an Adequate Alternative Forum

Japan is an adequate alternative forum. A forum is available when (1) the defendant is amenable to process there and (2) it offers "some remedy" for the wrong at issue—a "test [that] is easy to pass," failing "only where the remedy provided is so clearly inadequate or unsatisfactory[] that it is no remedy at all." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (citation and internal quotation marks omitted). Here, neither element is in doubt.

Yamamoto is a Japanese citizen already subject to suit in Japan. Yamasaki Decl. ¶ 13. Yamamoto also consents to submitting to the jurisdiction of the Japanese courts, accepting service, and waiving any limitations defense not available when this action was filed. Yamamoto Decl. ¶ 5. A defendant's consent alone ordinarily satisfies the requirement. *Lockman Found. v. Evangelical*

---

[2]  By joint letter brief under the Court's Civil Standing Order, Defendants will request a stay of discovery pending resolution of this Motion. Because this Motion presents threshold questions of *forum non conveniens* and personal jurisdiction that may be resolved on the face of the Complaint, *see infra* § IV, a stay is warranted.

*All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991); *Kleiner v. Spinal Kinetics*, *Inc.*, 2016 WL 1565544, at *2 (N.D. Cal. Apr. 19, 2016).

Japan also supplies a real remedy for the wrong Plaintiffs allege. Under Japanese law, Article 709 of the Japanese Civil Code makes any person who intentionally or negligently infringes another's rights or legally protected interests liable for the resulting damage, and under said Article, Japanese courts adjudicate claims for defamation and injury to professional and business reputation. Yamasaki Decl. ¶¶ 19–20. Japanese law further authorizes a court to order measures to restore the injured party's reputation, together with or in lieu of damages. *Id.* ¶¶ 21,23.

A claim under Article 709 shall be brought within three years after the injured party learns both of the harm and of the person who caused it. *Id.* ¶ 26. Plaintiffs could therefore bring these very claims in Japan, whose courts would have jurisdiction over torts alleged to have occurred there and whose independent, professional judiciary guarantees notice, representation by counsel, the submission of documentary and witness evidence, cross-examination, and appeal. *Id.* ¶ 27.

Federal courts have also consistently held Japan to be an adequate alternative forum. *See, e.g.*, *Lockman,* 930 F.2d at 769 n.3 ("Federal courts have consistently found that Japan provides an adequate alternative forum," and finding "no reported cases holding Japan to be an inadequate forum"); *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1269–70 (M.D. Fla. 2007); *see also Bauman v. DaimlerChrysler AG*, 2005 WL 3157472, at *17 (N.D. Cal. Nov. 22, 2005) ("[c]onsidering the number of cases that have concluded that the foreign forum is adequate may be helpful"). Because Japanese courts routinely adjudicate disputes involving foreign parties and apply foreign law when their choice-of-law rules so require, Plaintiffs' domicile in the United States is no barrier either. Yamasaki Decl. ¶ 17.

**C.    All Seven Private-Interest Factors Favor Japan**

The private-interest factors are (1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of any judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Lueck*, 236 F.3d at 1145. Every factor favors Japan.

1.     The Residence of Parties, Forum's Convenience to the Litigants, and Access to Physical Evidence and Other Sources of Proof All Favor Japan

The alleged statements were made in Japan, by a Japanese citizen, in Japanese, to Japanese recipients, about a Japan-based event, and in connection with Japanese business ventures. The Complaint's own roster of related individuals and companies confirms where this case belongs. It identifies six Japanese corporations and names over a dozen Japanese executives, government officials, and academics tied to those negotiations and to the 2024 Kyoto event. Compl. ¶¶ 23, 27. The *forum non conveniens* analysis "gives great weight to the place where the transactions occurred." *Israel Disc. Bank*, 505 F. Supp. 2d 651, 660 (C.D. Cal. 2007). By contrast, the Complaint does not identify a single third-party witness or counterparty located in California. The only United States presence it asserts is Plaintiffs' own.

Because the lone defendant[3] and every identified third-party witness are outside this forum, California would be inconvenient for nearly every participant. *See Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013, 1020 (N.D. Cal. 2023) (the first and second private-interest factors favor dismissal where "majority of litigants" are based abroad). "The most convenient forum for the purpose of litigation is one that contains most of the evidence and gives rise to a plaintiff's cause of action." *Kleiner*, 2016 WL 1565544, at *5. Here, every identified negotiation occurred in Japan, and resolving Plaintiffs' claims "would likely require extensive testimony from [Japan]-based witnesses and extensive translation of [Japanese] documents." *Israel Disc. Bank*, 505 F. Supp. 2d at 661; *Kleiner*, 2016 WL 1565544, at *5 ("[T]he critical inquiry is . . . the volume of the evidence present outside the forum that will have to be transported to and reproduced in the forum."); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015) (domestic forum comparatively inconvenient where "the relevant documents and witnesses are mostly located abroad").

2.     The Availability of the Compulsory Process Also Favors Japan

The fourth factor also favors Japan, where the operative witnesses and documents lie beyond this Court's reach but within the compulsory process of the Japanese courts. *Lueck*, 236 F.3d at 1147

---

[3] The Complaint names Doe defendants, which is "disfavored" in a federal action. *Brandt v. Verizon Commc'ns, Inc.*, 2019 WL 2124338, at *1 n.1 (N.D. Cal. May 15, 2019).

("[B]ecause the district court cannot compel production of much of the New Zealand evidence . . . the private interest factors weigh in favor of dismissal."); *Sandoval v. Carnival Corp.*, 2014 WL 12585803, at *6 (C.D. Cal. Sept. 15, 2014) (observing that "the inability to compel live testimony from [foreign] non-parties strongly favors dismissal").

Japan is not a party to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"); therefore, requests for evidence and testimony must be processed through Japan's Ministry of Foreign Affairs ("MOFA"). Yamasaki Decl. ¶¶ 33–34. Documents held by unwilling custodians could be obtained, if at all, only through the letters-rogatory channel via MOFA to the Japanese courts, and testimony from an unwilling witness only by the same route. *Id.* ¶¶ 34, 37.  The asymmetry is stark. This Court's subpoena power cannot reach non-party witnesses or documents in Japan, *see* Fed. R. Civ. P. 45(c), whereas the Japanese courts do possess compulsory process over the witnesses and evidence located there. *Id.* ¶ 28. *See* Federal courts facing Japan-centered disputes have recognized these very obstacles. *See J.C. Renfroe*, 515 F. Supp. 2d at 1272 (Japan "is not a party to the Hague Convention on the Taking of Evidence," and letters rogatory for unwilling witnesses "generally take six months to a year"). To the contrary, were this dispute litigated in Japan, Plaintiffs could still reach any U.S.-based evidence through 28 U.S.C. § 1782, whereas no comparable mechanism lets this Court reach the Japanese witnesses and documents. *See J.C. Renfroe*, 515 F. Supp. 2d at 1273.

Depositions of even willing witnesses face stringent conditions in Japan. Yamasaki Decl. ¶ 35. Japan considers unauthorized evidence-taking by foreign courts on its soil to be a violation of its sovereignty. *Id.* ¶ 36; *see also* Armstrong Decl., Dkt. 11-2, Ex. A (MOFA returned Plaintiffs' service documents on the ground that a video-link appearance for a person in Japan "may . . . constitute an exercise of public authority"). This is why any party desiring a U.S. deposition of a willing witness in Japan, whether in person or remote, must arrange for the deposition in advance with both MOFA and the U.S. Embassy or Consulate staff; the deposition must physically take place at a U.S. Embassy or Consulate in Japan, even if the deposition is by video; the deposition must be presided over by a U.S. consular officer; and all non-Japanese participants (including counsel, court reporters, and interpreters) attending the deposition in person must obtain a special visa secured in

advance through MOFA. *Id.* ¶ 35 & Ex. E. Such a process would necessarily, in Plaintiffs' words, "materially delay the case," and be potentially even "impracticable." Dkt. 11 at 7–8.

                3.     <u>The Remaining Factors—the Costs of Bringing Witnesses to Trial, Enforceability of a Judgment, and All Other Practice Problems That Would Prevent an Efficient Resolution—Likewise Favor Japan</u>

Trying this case in California would impose a substantial translation and logistics burden on both sides, and an even greater burden on Yamamoto and the Japan-based third-party witnesses. The time and expense of transporting witnesses from Japan to a California trial would be high, assuming they are willing to travel at all. *See Dickens*, 703 F. Supp. 3d at 1021 (litigating in California "is likely to be impractical and inefficient" where "most of the key witnesses in this case live in Germany").

Enforcement favors Japan as well, as a Japanese money judgment would be enforceable against Yamamoto directly in Japan. Should Plaintiffs ever need to enforce a Japanese judgment here, California would recognize and enforce that judgment under the Uniform Foreign-Country Money Judgments Recognition Act. Cal. Civ. Proc. Code §§ 1713–1724. A California judgment, however, will not necessarily be enforced in Japan. Before recognizing a foreign judgment, a Japanese court independently examines—under its own standards, not the forum's—whether the rendering court had jurisdiction over the defendant and whether service was proper. Yamasaki Decl. ¶ 39. Because the tortious conduct is alleged to have occurred in Japan, a Japanese court could conclude the rendering court lacked jurisdiction. *Id*. ¶ 40. *See J.C. Renfroe*, 515 F. Supp. 2d at 1277 (contested jurisdiction "throw[s] into question the enforceability in Japan of a judgment"). Whatever the sufficiency of a service method under the Federal Rules, Plaintiffs served Yamamoto and his counsel solely by email, Dkt. 21 at 2, which is not recognized by Japan as an authorized method of service on an individual in Japan. Yamasaki Decl. ¶ 42. A judgment obtained on that basis could be held "invalid and unenforceable in Japan" for want of proper service. *Id.* Either defect—jurisdiction or service—could render a judgment from this Court an empty exercise, whereas a Japanese judgment would not face these difficulties.

4. <u>Plaintiffs' Own Extensive Japan Ties Defeat Any Claim of Inconvenience and Reduce Deference</u>

A domestic plaintiff's choice of a home forum is entitled to deference, but that deference is not dispositive. Indeed, "a United States citizen has no absolute right to sue in a United States court," and the mere presence of a domestic plaintiff does not bar a *forum non conveniens* dismissal. *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992, at *5 (C.D. Cal. July 18, 2011) (citing *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir. 1977)). Where, as here, a plaintiff does extensive business in the foreign country, its "ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished." *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993); *see also Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990) ("[P]arties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere." (citation omitted)); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) (courts "partially discount[]" the United States citizenship of a plaintiff "doing extensive foreign business").

Plaintiffs are at least as much at home in Japan as in California, and litigating in Japan imposes none of the language, travel, or unfamiliarity burdens that ordinarily protect a plaintiff's home-forum choice. Uzzaman holds a Bachelor of Engineering from the Tokyo Institute of Technology and a Ph.D. in Computer Engineering from Tokyo Metropolitan University. Hewett Decl. Ex. 4. He speaks Japanese, and routinely addresses his professional audience in Japanese, including through many LinkedIn posts that he has written in Japanese. *Id.* He has held an adjunct professorship at Kyoto University's Graduate School of Management since April 2023, and he serves as a board director of Japanese companies, including Asteria and Techno Horizon. *Id.*

Pegasus is not merely enmeshed in Japan, it is Japanese-owned. It maintains a Tokyo office, Hewett Decl. Ex. 6, and its flagship Venture-Capital-as-a-Service business is built around Japanese corporate partners: the partner testimonials and case studies Pegasus features on its own website are predominantly Japanese. Hewett Decl. Ex. 7. Most tellingly, Plaintiff Pegasus is a subsidiary of the

-9-    CASE NO. 5:26-cv-00945-NC
DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

Japanese parent company, Pegasus Tech Holdings, K.K., which owns 75% or more of Plaintiff Pegasus. Hewett Decl. Exs. 1, 2. Uzzaman in turn is the Representative Director of that Japanese parent company. Hewett Decl. Ex. 3. The plaintiff suing a Japanese defendant in this action is thus a venture capital firm that is Japanese-owned and extensively operating in Japan, led by a Japan-educated, Japanese-speaking founder who teaches in Japan and sits on Japanese boards. Plaintiffs' selection of a United States forum cannot rest on any genuine convenience to them.

**D.    The Public-Interest Factors All Favor Japan**

None of the public-interest factors favors this forum. The public-interest factors are (1) the local interest in the controversy; (2) the forum's familiarity with the governing law; (3) the burden on local courts and juries; (4) court congestion; and (5) the costs of resolving a dispute unrelated to the forum. *Lueck*, 236 F.3d at 1147. Japan has a legitimate interest in the adjudication of conduct alleged to have occurred on its soil among its nationals and businesses, and affecting Japanese institutions such as Kyoto University and major Japanese corporations. That interest is reinforced by Japanese public policy, which, whatever substantive law governs, limits any tort recovery to the scope Japanese law permits, giving Japan a strong interest in having its own courts apply those limits. Yamasaki Decl. ¶ 30.

California's interest in a dispute centered in Japan is comparatively limited, and imposing jury duty on a California community with little relation to this Japanese controversy is disfavored. As in *Israel Discount Bank*, the "center of gravity" of this case is the foreign forum: Japan "has the greatest interest in the outcome" of a controversy over conduct occurring within its boundaries, among its nationals, and affecting its institutions. *Israel Disc. Bank*, 505 F. Supp. 2d at 661.

In addition, because all of the operative conduct occurred in Japan among Japanese parties, the Court may be required to undertake a difficult choice-of-law inquiry—potentially applying Japanese law—which is itself a public-interest factor favoring dismissal. A district court's unfamiliarity with foreign law "weighs especially heavily in favor of the [foreign] courts," both because the court is unfamiliar with that law and because hearing the case "would . . . require[] [it] to translate a great deal of that law." *Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001); *see Imamura v. Gen. Elec. Co.*, 371 F. Supp. 3d 1, 10–11 (D. Mass. 2019) (because the conduct

-10-
CASE NO. 5:26-cv-00945-NC
DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

"occurred in Japan, the Court would likely apply Japanese law"), *aff'd*, 957 F.3d 98 (1st Cir. 2020). The public-interest factors therefore also favor dismissal.

## IV.    THE COURT LACKS PERSONAL JURISDICTION OVER YAMAMOTO

### A.    Plaintiffs Bear the Burden of Establishing Jurisdiction

Because Yamamoto has moved to dismiss for lack of personal jurisdiction, Plaintiffs bear the burden of demonstrating that jurisdiction is proper. *Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337, 342 (N.D. Cal. 2020); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Bare assertions of minimum contacts do not carry that burden. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

### B.    This Court Lacks General Jurisdiction

General jurisdiction exists "only if the defendant is 'essentially at home' in the forum State." *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 934 (N.D. Cal. 2024) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). An "individual" like Yamamoto, "is subject to general jurisdiction in [his] place of domicile." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). The Court need look no further than the Complaint to reject jurisdiction. Plaintiffs allege that Yamamoto "is an individual domiciled in Japan" whose "permanent residence and center of domestic life" is in Japan. Compl. ¶¶ 6, 12. Plaintiffs therefore concede that Yamamoto is not subject to general jurisdiction in California.

### C.    This Court Also Lacks Specific Jurisdiction

The Ninth Circuit applies a three-part test for specific jurisdiction: (1) the defendant must have purposefully directed his activities at, or purposefully availed himself of the privilege of conducting activities in, the forum; (2) the plaintiff's claim must have arisen out of or related to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). All three must be satisfied for a court to exercise specific jurisdiction over Yamamoto.

Because Plaintiffs' claims—trade libel, intentional interference, and unfair competition—all sound in tort, the first prong is governed by the "purposeful direction" analysis and the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,

1069 (9th Cir. 2017). Purposeful direction requires that the defendant have "(i) committed an intentional act, (ii) expressly aimed at the forum state, (iii) causing harm that the defendant knows is likely to be suffered in the forum state." *X Corp.*, 724 F. Supp. 3d at 935 (citing *Schwarzenegger*, 374 F.3d at 803). Plaintiffs cannot satisfy this test.

### 1. Yamamoto Did Not Purposefully Direct His Activities at California

Because Plaintiffs' claims are governed by the effects test, they must show that Yamamoto expressly aimed an intentional act at California—often "the determinative question." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). The Complaint neither does nor can. Every act the Complaint pleads as actionable was directed at Japan: the June 9 LINE messages to a Kyoto University professor about a Kyoto event; and alleged statements to Japanese corporations and Japanese speakers. Compl. ¶¶ 23, 26.

Unable to plead forum-directed conduct by Yamamoto, Plaintiffs fall back on where they allegedly felt harm. Compl. ¶ 13 (alleging "the injury to Plaintiffs' professional reputation and business operations . . . headquartered in San Jose, California); ¶ 14 (alleging San Jose is "where the economic injuries resulting from Defendant's conduct were primarily sustained"). Plaintiffs' jurisdictional theory is exactly what the Supreme Court's decision in *Walden v. Fiore* forecloses: "mere injury to a forum resident is not a sufficient connection to the forum," and "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. 277, 285, 290 (2014); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017) ("[T]o establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there."); *X Corp.*, 724 F. Supp. 3d at 936 (a defendant "does not purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows that the person resides there"). Here, whether the "effects" were felt in California is questionable, because Plaintiff Pegasus is at least 75% owned by its Japanese parent, Pegasus Tech Holdings, K.K. Hewett Decl. ¶¶ 2, 3 & Exs. 1, 2.

2.     Plaintiffs Do Not Allege Claims Arising from or Related to Yamamoto's Contacts with California

Even if Yamamoto's incidental California connections counted as forum contacts, Plaintiffs' claims neither arise out of nor relate to them. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 265 (2017). The Ninth Circuit tests the requisite nexus through but-for causation. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

The only two contacts by Yamamoto with California Plaintiffs allege are (i) Yamamoto's role with Green Capital Management LLC and its San Mateo filing address, Compl. ¶ 7, and (ii) that he "transacts business in the United States" and travels here, *Id.* ¶ 12. Plaintiffs do not—and cannot—allege that either has anything to do with their claims, which is fatal to personal jurisdiction. *See Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337, 343-44 (N.D. Cal. 2020) (dismissing for lack of personal jurisdiction, because "[a]ll of the relevant underlying relationships and transactions . . . occurred [abroad]" and "Plaintiff's alleged financial harm does not arise out of any activities in California"). Plaintiffs' claims all arise from statements allegedly made in Japan to Japanese recipients, concerning Japanese business relationships or events—not from anything Yamamoto did for Green Capital or on any visit to California. Because Plaintiffs' claims would be identical whether or not Yamamoto ever set foot in California or held any position with a California-registered entity, the arise-out-of prong is not satisfied.

3.     Exercising Personal Jurisdiction over Yamamoto Would Be Unreasonable

Because Plaintiffs cannot establish minimum contacts, the Court need not reach reasonableness; were it to, the seven-factor test confirms dismissal. The seven factors are (1) the extent of the defendant's purposeful interjection into the forum; (2) the burden on the defendant of defending in the forum; (3) conflict with the sovereignty of the defendant's state; (4) the forum state's interest; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). Plaintiffs cannot satisfy this test.

*First*, purposeful interjection is absent for the reasons above. *Second*, the burden on Yamamoto is severe: requiring a Japanese domiciliary to defend nine-figure litigation an ocean from home "can impose a substantial burden on a non-resident alien." *Core-Vent*, 11 F.3d at 1488. *Third,* Japan's sovereign interest in adjudicating conduct occurring on its soil is substantial. *See* Yamasaki Decl. ¶¶ 30–31. *Fourth*, California's interest in providing redress to residents is diminished where the operative conduct occurred entirely in Japan. *Fifth*, the efficient-resolution factor favors Japan, where the witnesses and proof are located. *Sixth*, any convenience to Plaintiffs cannot overcome the structural absence of contacts, and, in any case, the Ninth Circuit gives little weight to a plaintiff's interest in the forum. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 609 (9th Cir. 2018). *Seventh*, Japan is an available alternative forum, and Plaintiffs cannot show otherwise. *See Core-Vent*, 11 F.3d at 1490. On balance, the factors weigh decisively against jurisdiction.

### D.    The Court Should Not Allow Jurisdictional Discovery

The Court should deny any request for jurisdictional discovery because no amount of discovery could establish personal jurisdiction over Yamamoto in this District. *Citcon USA, LLC v. Miao*, 2021 WL 4499267, at *3 (N.D. Cal. June 1, 2021) (finding "jurisdictional discovery is not warranted because it will not ameliorate the existing deficiencies in the" complaint). Plaintiffs cannot meet their burden to establish a "colorable basis" for jurisdictional discovery. *T.U. v. CooperSurgical, Inc.*, 2025 WL 3171594, at *6 (N.D. Cal. Nov. 13, 2025) (granting motion to dismiss and denying request for jurisdictional discovery). Because every act the Complaint pleads as actionable occurred in Japan, among Japanese speakers, and concerned Japanese business relationships, no discovery into Yamamoto's incidental California contacts could possibly supply the missing nexus between those contacts and these claims. *See Ward v. Jump Trading, LLC*, 2026 WL 145846, at *12 (N.D. Cal. Jan. 20, 2026) (citation omitted) ("None of the requested discovery is in any way related to the asserted causes of action and thus none of it is legally relevant to any inquiry as to specific jurisdiction."). Any request for discovery here would rest on "nothing more than a hunch," *id.* at *12, and should be denied.

## V.    IN THE ALTERNATIVE, ALL THREE CLAIMS FAIL UNDER RULE 12(b)(6)

Plaintiffs assume California law governs their three state-law claims. Yamamoto does not concede that it does, *see Gen. Signal Corp. v. MCI Telecomm. Corp.,* 66 F.3d 1500, 1505 (9th Cir. 1995) (party permitted to raise a choice of law issue before summary judgment despite having referred to contrary law in its previous briefing), but, even assuming *arguendo* that California law applies, each claim fails under Federal Rule of Civil Procedure 12(b)(6).

### A.    Plaintiff Uzzaman Lacks Standing on Every Claim

Uzzaman pleads no injury or economic relationship of his own and therefore lacks standing to assert any of the three claims. Every alleged loss—sponsorship revenue, fund and consulting fees, and capital commitments—belongs to Pegasus. Compl. ¶¶ 17, 28. Uzzaman's sole alleged stake is that his "personal compensation is . . . dependent on the revenue generated by Pegasus's funds," *Id.* ¶ 4, which is a paradigmatic derivative injury. *See Kenney v. Wells Fargo Bank, N.A.*, 791 F. Supp. 3d 1163, 1168–69 (C.D. Cal. 2025) (finding that the sole authorized account holder for an LLC lacked standing to sue on "reputational harm [and] lost income from collapsed ventures," which were "the downstream impact" of harm to the entity and "not distinct from the [entity's] own injuries"). To sue in his own name, a shareholder or officer "must be injured directly and independently of the corporation." *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 & n.4 (9th Cir. 2001) (applying the rule to a libel claim). Uzzaman therefore lacks standing to bring the trade libel, intentional interference, and UCL claims alike. *See also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (a UCL plaintiff must have "lost money or property" of his own).

### B.    Plaintiffs Fail to Adequately Plead Any Element of Trade Libel

California law defines trade libel as "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff." *Erlich v. Etner,* 224 Cal. App. 2d 69, 73 (1964). To state a claim for trade libel, Plaintiffs must demonstrate a statement (1) disparaging the plaintiff's product or services, (2) couched as fact rather than opinion, (3) that is false, (4) made with malice, and (5) causes special, pecuniary damages. *See City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 376 (2013); *J-M Mfg. Co. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (2016);

*Gopher Media LLC v. Melone*, 2023 WL 8790266, at *8 (S.D. Cal. Dec. 19, 2023). The Complaint fails at every element.

1.   The Complaint Identifies No Specific, Actionable Statement, and the One Statement It Points to Cannot Be Considered by the Court

A trade libel claim "must be based on specific statements," and the plaintiff must plead "who made the statements, to whom [they] were made, the time and place of publication, and the substance of the statements." *Kilopass Tech. Inc. v. Sidense Corp.*, 2010 WL 5141843, at *5 (N.D. Cal. Dec. 13, 2010) (citation modified); *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (dismissing where the complaint fails to indicate "to whom they made those statements, when they made the statements, or what exactly they said"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019) (dismissing trade libel claim alleging statements to "several . . . customers" without identifying when, where, and to whom); *see also* Fed. R. Civ. P. 9(f) ("An allegation of time or place is material when testing the sufficiency of pleading.").

The Complaint identifies purportedly actionable interference falling within the limitations period at Paragraphs 22–27.  In Paragraph 23(a), however, Plaintiffs even fail to affirmatively allege that Yamamoto actually made the statements, relying instead on inference an innuendo and liberal use of the passive voice:  "Idemitsu personnel informed Plaintiffs they had received negative information about Plaintiffs from an outside party." Compl. ¶ 23(a). This provides none of the required specifics and is insufficient as a matter of law. *First Advantage*, 569 F. Supp. 2d at 937; *Kilopass Tech.*, 2010 WL 5141843, at *5. Paragraph 23(b) then alleges that "[u]pon information and belief, Yamamoto contacted DIC executives during this window to republish false claims regarding Uzzaman's professional legitimacy." Compl. ¶ 23(b).  At most, this names a speaker, but it identifies no recipient beyond the generic "DIC executives," no date, no place, and no words.  It instead only confirms the claim is misdirected, because an allegation about "Uzzaman's professional legitimacy" concerns a person, not the quality of Pegasus's product or services, and so is not trade libel, as further explained *infra* § V.B.2.

Paragraph 26 provides the remaining allegations, and none plausibly states trade libel. It first alleges "repeated attempts to dissuade Prof. Yamada from co-organizing the 2024 Startup World Cup Kyoto Regional Event, actively working to tarnish Plaintiffs' reputation." Compl. ¶ 26. That still fails to identify any actual statement. That leaves the June 9 LINE messages, and Plaintiffs cannot even show Yamamoto said what they claim. The messages are in Japanese, appended untranslated to the Yamada Declaration, *id.* Ex. A ¶ 5(d), which the Court cannot read. *See United States v. Rivera-Rosario*, 300 F.3d 1, 6 n. 4 (1st Cir. 2002) (noting "well-settled rule that parties are required to translate all foreign language documents into English"); *Heary Bros. Lightning Protection Co. v. Lightning Protection Institute*, 287 F. Supp. 2d 1038, 1074 (D. Ariz. 2003) (striking untranslated exhibits), *rev'd in part on other grounds*, 262 Fed. App'x 815 (9th Cir. 2008).

Plaintiffs offer only their own (and Prof. Yamada's) English gloss that Yamamoto "falsely claim[ed] Uzzaman was not a legitimate venture capitalist," Compl. ¶ 26; *see also id.* Ex. A ¶ 5(d). But a trade libel claim "must be based on specific statements," whose "defamatory character . . . must be apparent from the words themselves," not Plaintiffs' unverifiable characterization. *First Advantage*, 569 F. Supp. 2d at 937 (citation and internal quotation marks omitted). Because fact and protected opinion cannot be separated in the abstract, the Court "would need to consider the exact comments in their full context," and a plaintiff who fails to supply them "deprive[s] the Court of the details and context necessary to rule." *Id.* at 938. Stripped of the untranslated June 9 messages, the Complaint alleges no single specific statement, leaving only Plaintiffs' naked assertions that "Yamamoto has made many other improper, meritless, and harmful disparaging statements about Plaintiffs to numerous other people," Compl. ¶ 24, and that his "interference also caused the withdrawal of numerous high-profile speakers," *id.* ¶ 27. That is mere "labels and conclusions" that fail to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> 2.    Plaintiffs Fail to Allege that Yamamoto's Statements Clearly Derogate Pegasus's Products or Services

Even accepting Plaintiffs' characterization of the untranslated Japanese text, calling Uzzaman "not a legitimate venture capitalist" is a statement about a person, not about the quality of

any product or service, and so is not trade libel as a matter of law. Trade libel "involves false disparagement of the quality of goods or services," whereas a statement impugning *a person's* reputation or professional competence sounds in defamation. *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340 (2006), *overruled on other grounds by Baral v. Schnitt*, 1 Cal. 5th 376 (2016); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001) ("Trade libel is the publication of matter disparaging the quality of another's property."); *Gopher Media*, 2023 WL 8790266, at *8–9 (holding that a business owner "may not proceed on a theory of trade libel for *any* allegedly false statement concerning his reputation" (emphasis added)).

That defect also forecloses any attempt by Pegasus to build a trade libel claim on the same statement. By Plaintiffs' own evidence, the statement is about Uzzaman, not Pegasus: the Yamada Declaration says Yamamoto "claimed that Uzzaman was not a legitimate venture capitalist, and attempted to undermine his credibility." Compl. Ex. A ¶ 5(d). Because it concerns Uzzaman's reputation rather than the quality of Pegasus's products or services, it cannot support Pegasus's trade libel claim either. *See Hellenic Petroleum, LLC v. Sacramento Energy Res., LLC*, 2019 WL 4747794, at *4 (E.D. Cal. 2019) (statement that plaintiff was "untrustworthy" for refusing to honor a propane contract supported no trade libel claim, because it reflected neither "the goods it sells" nor any "service provided by" it).

### 3.     The Alleged Statements Are Non-Actionable Opinion

Independently, a trade libel claim requires a false statement of fact, *ComputerXpress*, 93 Cal. App. 4th at 1010, and an opinion, by definition, cannot be false. *Hofmann Co. v. E.I. Du Pont de Nemours & Co.*, 202 Cal. App. 3d 390, 397 (1988); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–20 (1990) (a statement is actionable only if it can "reasonably be interpreted as stating actual facts"). Calling someone "not a legitimate venture capitalist" is a subjective, evaluative judgment, not a verifiable fact—"mere name calling" carrying no "provably false assertion of fact." *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010). This accords with a long line of cases treating subjective, qualitative judgments about a person or business—its competence, honesty, or quality—as classic opinion. *See, e.g., Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 389 (2004) (statements that a company was not an "honorable company" and displayed a "profound lack

of respect for intellectual properties" were "classic assertions of subjective judgment"); *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (statement that a company is a "sinking ship" is opinion); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (online statements that a person was a "fraud" and a "criminal" were non-actionable hyperbole); *Trevari Media, LLC v. Colasse*, 758 F. Supp. 3d 1175, 1184 (C.D. Cal. 2024) (calling a rival's product "counterfeit" was opinion); *de Cordova v. MCG Nevada, Inc.*, 2011 WL 13221009, at *3–4 (C.D. Cal. Nov. 29, 2011) (statements that a product was "inferior," a "rip-off," and "mediocre and overpriced" were opinions).

The alleged statement at issue is non-actionable opinion because it rests on disclosed facts that Plaintiffs admit are true. "A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning." *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995). Plaintiffs allege that Yamamoto made his "not a legitimate venture capitalist" statement by "referencing Pegasus's investment in defunct streaming service Quibi," Compl. ¶ 18—an investment Plaintiffs admit was a "failed investment," *id.* ¶ 34. Plaintiffs dispute only Yamamoto's evaluation of that fact—whether the failure reflects "poor investment judgment" or "a confluence" of other factors, *id.* ¶ 18. When the basis for an opinion is disclosed, readers "are free to accept or reject the author's opinion based on their own independent evaluation of the facts," so the statement conveys the speaker's interpretation, not a false assertion of fact. *Standing Comm.*, 55 F.3d at 1439; *see Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir. 1995). Such is the case here. An unfavorable opinion drawn from admittedly true, disclosed facts cannot support Plaintiffs' trade libel claim. Because the alleged statement is protected opinion however it is repleaded, it cannot be cured by amendment.

### 4.    Plaintiffs Fail to Allege Actual Malice

Plaintiffs' trade libel claim independently requires actual malice. *See J-M Mfg.*, 247 Cal. App. 4th at 97. A disparaging statement is made with actual malice only where it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Dig. Ass'n v. Superior Court*, 37 Cal. 3d 244, 256 (1984) (internal quotation marks omitted). The Court "must disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory

manner that the defendants had a particular state of mind," because "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient." *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (a plaintiff must sufficiently carry the "'demanding burden' for pleading actual malice").

The Complaint's allegations are exactly the threadbare recitals the Court should disregard. *See* Compl. ¶ 34 (alleging that "[t]he statements were made with actual malice" and that "Yamamoto knew his claims . . . were false, or at a minimum, . . . acted with a reckless disregard for the truth"). It also pleads, "[o]n information and belief," that Yamamoto "entertained serious doubts as to the truth of his portrayal," *id.* ¶ 18. Pleading a defendant's culpable state of mind "on information and belief," unsupported by facts, is precisely what the demanding standard forbids. *See Wynn*, 75 F. Supp. 3d at 1239. Plaintiffs "evidence" belies their claims. Despite designating the Yamada Declaration as their "[d]irect [e]vidence" of "[m]alice," Compl. ¶ 24 & § II.C, Prof. Yamada undermines that assertion, stating, "I do not know Yamamoto's motivations," *id.* Ex. A ¶ 5(d). This reflects an absence of any knowledge of Yamamoto's state of mind. In any event, far from having a "reckless disregard" of the truth, Plaintiffs concede that the one specific comment that Yamamoto allegedly made was based on Plaintiffs' "failed investment," *id.* ¶ 34. Yamamoto's reliance on a true fact that Plaintiffs admit is neither knowledge of falsity nor reckless disregard of the truth.

5.    Neither Special Damages Nor Causation Is Adequately Pleaded

Plaintiffs' trade libel claim independently fails for want of special damages, which must be pleaded with particularity. *Hellenic Petroleum*, 2019 WL 4747794, at *3; Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). Special damages mean "direct financial harm because someone else acted in reliance on the defendant's statement," so a plaintiff must identify the particular customers or transactions lost and the amounts attributable to the statement. *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 925 (2021); *First Advantage*, 569 F. Supp. 2d at 938; *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014).

The Complaint offers only vague, untethered aggregates. Under the heading "Specific Special Damages," it lists three figures (Compl. ¶ 28): (i) $696,666 in "Lost Sponsorship Revenue," lumped across three separate 2024 Startup World Cup events (Kyoto, Kyushu, and Tokyo) without identifying a single sponsor, contract, or amount for any one of them; (ii) $78.1 million in "management fees, carried interest and consulting fees" from two potential CVC funds (Idemitsu and DIC); and (iii) $143 million in "Lost Equity Capital" purportedly withdrawn by "63 specific corporate investors," information in Plaintiffs' control, yet not one of whom is identified. Moreover, those figures do not even add up. The three itemized categories total roughly $221.8 million, yet the Complaint repeatedly pleads losses "over $450 million." Compl. ¶¶ 28, 36; *see id.* ¶ 39. A damages theory whose own line items fall nearly $230 million short of its headline number is not a particularized, transaction-specific pleading trade libel demands. *See First Advantage*, 569 F. Supp. 2d at 938 (dismissing where a lump-sum figure made it "impossible to determine what, if any, damage" the alleged statements caused).

Plaintiffs' trade libel claim also fails on causation. The plaintiff alleging a trade libel "must prove . . . that the publication has played a material and substantial part in inducing others not to deal with him." *Muddy Waters*, 62 Cal. App. 5th at 925; *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013). Plaintiffs' causal allegations related to the purported Idemitsu and DIC discussions are made entirely "upon information and belief," Compl. ¶¶ 23, 27, and assert only, in conclusory terms, that Yamamoto "influenced" a counterparty's decision, without explaining how these sophisticated counterparties, which would surely have done their own due diligence for a multimillion dollar deal, would have closed a deal with Plaintiffs but for a single individual's unspecified remarks. Bald assertions of influence, pleaded on information and belief, do not sufficiently establish causation. *See Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *4 (N.D. Cal. Mar. 19, 2018) (dismissing complaint pled on information and belief); *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 949371, at *6 (N.D. Cal. Mar. 12, 2021) (refusing to credit claims pled entirely on information and belief). The Complaint fails for the further reason that its own facts supply obvious innocent explanations for each alleged lost opportunity: that a counterparty chose "a different partner," Compl. ¶ 21(a)—on its face ordinary market competition,

not disparagement—and that the Quibi loss was "widely reported," *id.* ¶ 18, which would have independently surfaced during any counterparty's independent due diligence. Where a complaint's own facts supply an "obvious alternative explanation," the inference of causation is not plausible. *Iqbal*, 556 U.S. at 682.

Likewise, the sole identified statement in the Complaint, *i.e.*, the June 9, 2024 messages, cannot have possibly caused the loss Plaintiffs allege. By Prof. Yamada's own account, the Kyoto event was "held on May 21, 2024," Compl. Ex. A ¶ 4(d)—nearly three weeks *before* the messages— so the June 9, 2024 messages could not have cost Plaintiffs the sponsorships, attendance, or revenue of an event that had already occurred. Nor do Plaintiffs tie any statement to the alleged withdrawals of the speakers from the Startup World Cup events. Even Prof. Yamada states only that Yamamoto "may have influenced" Mr. Higuchi's withdrawal, *id.* ¶ 5(d), and "likely played a role" in it, *id.* ¶ 6, without identifying any statement. Speculation that Yamamoto "may have" or "likely" caused a withdrawal is not an adequately pleaded causal link.

### C.    The Intentional Interference and Unfair Competition Claims Fail

Plaintiffs' intentional interference with prospective economic advantage claim (Count II)— and for that matter, their claim under California Business & Professions Code § 17200 (Count III), otherwise known as the Unfair Competition Law ("UCL"))—are their trade-libel theory relabeled, sharing a single gravamen: Yamamoto's alleged statements about Plaintiffs. *See* Compl. ¶¶ 40, 46, 48. Where the gravamen of a claim is speech, the same constitutional and substantive protections apply to every claim regardless of label. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042–45 (1986). Therefore, the same defect that defeats Plaintiffs' trade libel claim—that is, that the alleged statement by Yamamoto that Uzzaman is "not a legitimate venture capitalist" is a non-actionable opinion—requires the dismissal of both claims.

#### 1.    Plaintiffs Fail to State an Intentional Interference Claim

Plaintiffs' intentional interference claim fails independently on its own elements. Proving that claim requires (1) an economic relationship carrying the probability of future economic benefit; (2) the defendant's knowledge of it; (3) intentional and independently wrongful acts designed to disrupt it; (4) actual disruption; and (5) proximately caused economic harm. *AlterG, Inc. v. Boost*

*Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

**First,** Plaintiffs failed to allege an independently wrongful act. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020). The only wrong pleaded in the Complaint are the same allegedly false statements. Compl. ¶ 40. That predicate fails for the reasons explained above.

**Second,** the tort reaches only "reasonably probable" relationships, not "overly speculative expectancies," requiring "proof [that] the business relationship contained 'the probability of future economic benefit.'" *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997) (citations omitted); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522, 524, 527 (1996). A relationship's mere existence is not enough, and the plaintiff must identify "a particular relationship or opportunity" and plead facts showing it was "reasonably probable [that] the prospective economic advantage would have been realized but for defendant's interference." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021) (citations omitted). Courts have held that even a named counterparty and a letter of intent are insufficient absent facts showing probability of the future economic benefit, where the plaintiff fail to allege the "terms" of the letter of intent, *Weintraub Fin. Servs., Inc. v. Boeing Co.*, 2020 WL 6162801, at *8 (C.D. Cal. 2020), or where the complaint "never allege[s] which entities . . . [the plaintiff] was negotiating with, what the terms were, when the contracts were being negotiated . . . , [or] how much money . . . [the plaintiff] lost," *Soil Retention*, 521 F. Supp. 3d at 962. The Complaint does not meet this standard. Plaintiffs' largest claimed loss is $143 million in lost capital commitments from "63 specific corporate investors," but the Complaint fails to identify a single one of them, Compl. ¶ 28(c). Similarly, although the Complaint lists six individuals who allegedly "withdrew their participation" from the Startup World Cup event, *id.* ¶ 27, it alleges no economic relationship with them, no terms of that participation, and not a single dollar Plaintiffs stood to earn from it. The alleged loss of $696,666 in "sponsorship" revenue, *id.* ¶ 28(a), is not tied to any specific speaker. The two deals the Complaint names (as actionable within the limitations period) fare no better. As to Idemitsu, the Complaint alleges only that "[n]egotiations began" and "discussions" continued before the company "rejected the deal," *id.* ¶ 23(a)—nothing about terms, amounts, or

any fact making a future benefit probable rather than merely hoped for. As to DIC, it alleges only that "discussions proceeded positively" until DIC "suddenly declined the deal," *id.* ¶ 23(b).

*Third*, the claim also fails on causation. *See Weintraub Fin. Servs.*, 2020 WL 6162801, at *8 (C.D. Cal. 2020) (dismissing where plaintiff has not sufficiently alleged that the loss of prospective relationship was caused by defendant's conduct). The Complaint cannot satisfy that element for the same reason its trade libel claim fails, *supra* § V.B.5. *Fourth,* the claim fails as to Uzzaman, as he pleads no economic relationship of his own. The tort protects the plaintiff's own "economic relationship . . . with some third party," *Korea Supply*, 29 Cal. 4th at 1153, and every relationship the Complaint identifies belongs to Pegasus: the Idemitsu and DIC negotiations, Compl. ¶ 23(a)–(b), the unnamed "63 specific corporate investors," *id*. ¶ 28(c), and the Startup World Cup sponsorships, *id.* ¶¶ 27, 28(a). Uzzaman is not alleged to be a party to any of them. *See supra* § V.A.

### 2.    Plaintiffs Fail to State an Unfair Competition Claim

Plaintiffs' UCL claim fails for several independent reasons. *First*, the count is "unlawful" only because it rests on "trade libel and intentional interference." Compl. ¶ 45. If the predicates fail, so does it. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020). *Second*, the Complaint pleads no "business act or practice," which the UCL requires. The statute reaches only an "unlawful, unfair or fraudulent *business act or practice.*" Cal. Bus. & Prof. Code § 17200 (emphasis added); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010) (an unlawful practice is an act "committed pursuant to business activity"). The Complaint fails to allege that Yamamoto made the statements as part of any business activity, commercial transaction, or advertising.

*Third*, Plaintiffs plead no "unfair" competition under either branch of the UCL test. Where the injury is to consumers, an "unfair" practice is one that "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Where the injury is to a competitor, "unfair" means conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . , or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999). The Complaint satisfies neither. It alleges no injury to any consumer. And it never alleges that

Yamamoto is Plaintiffs' direct competitor—let alone that his statements threatened an incipient antitrust violation or otherwise harmed competition. *See AlterG*, 388 F. Supp. 3d at 1155–56.

**Fourth**, the UCL does not reach Yamamoto's conduct, which occurred entirely in Japan. The presumption against extraterritoriality "applies to the UCL," which does not reach conduct outside California. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207–08 (2011). **Fifth**, even if Plaintiffs had stated a violation, the UCL affords them no remedy on these facts. The statute allows only restitution and injunction, not damages. *Korea Supply*, 29 Cal. 4th at 1144, 1148–52. Restitution "requires both that money or property have been lost by a plaintiff . . . and that it have been acquired by a defendant." *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013) (cleaned up). Plaintiffs do not allege that Yamamoto has acquired anything in which Plaintiffs had an ownership interest. *Korea Supply*, 29 Cal. 4th at 1149. And because the UCL is equitable, Plaintiffs must show they lack an adequate legal remedy, which they cannot while seeking hundreds of millions in damages on the same facts. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Injunctive relief is likewise unavailable absent a viable claim.

**Sixth**, any claim under the "fraudulent" prong fails independently for lack of particularity and reliance. That prong sounds in fraud and must satisfy Rule 9(b), which a claim resting on unspecified "information and belief" allegations cannot meet. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009). It also requires Plaintiffs' actual reliance, "not the reliance of third parties." *AlterG*, 388 F. Supp. 3d at 1156. Plaintiffs allege only that Japanese third parties acted on the statements, never that they themselves relied, so they lack standing to pursue this claim. *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646 (N.D. Cal. 2019).

## VI.    CONCLUSION

For the foregoing reasons, Yamamoto respectfully requests that the Court dismiss the Complaint in its entirety without leave to amend.

DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS

DATED: August 10, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ Dawn Y. Yamane Hewett*
      Dawn Y. Yamane Hewett
      (DC Bar No. 984923) (*pro hac vice*)
      dawnhewett@quinnemanuel.com
      555 13th Street NW, Suite 600
      Washington, D.C. 20004
      Telephone: (202) 538-8000
      Facsimile: (202) 538-8100

      Justin C. Griffin (Bar No. 234675)
      Scott Schlafer (Bar No. 335708)
      justingriffin@quinnemanuel.com
      scottschlafer@quinnemanuel.com
      865 South Figueroa Street, 10th Floor
      Los Angeles, California 90017
      Telephone: (213) 443-3000
      Facsimile: (213) 443-3100

      *Attorneys for Yasumasa Yamamoto*