QUINN EMANUEL URQUHART & SULLIVAN, LLP
Dawn Y. Yamane Hewett (DC Bar No. 984923) (*pro hac vice*)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Justin C. Griffin (Bar No. 234675)
Scott Schlafer (Bar No. 335708)
justingriffin@quinnemanuel.com
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> YASUMASA YAMAMOTO, and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. 5:26-cv-00945-NC <br><br> **DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Judge: Hon. Nathanael M. Cousins <br> Action Filed: January 30, 2026 |

CASE NO. 5:26-cv-00945-NC

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**<u>DECLARATION OF YUTA YAMASAKI</u>**

I, Yuta Yamasaki, declare as follows:

1.      I am a former Japanese judge and an attorney admitted to practice in Japan.  I have personal knowledge of the facts stated in this declaration except where stated to be based on information provided to me or materials I reviewed, and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently to the matters set forth herein.

2.      I submit this declaration in support of the *forum non conveniens* ground of Defendant Yasumasa Yamamoto's Motion to Dismiss Plaintiffs' Complaint.  My opinions are directed solely to matters of Japanese law and the Japanese legal system relevant to whether Japan is an available and adequate alternative forum.

3.      My opinions are offered to a reasonable degree of certainty.  The opinions in this declaration are based on my education, training, experience, and review of the materials identified below.

**I.      Background and Qualifications**

4.      I am currently working as an attorney at Tokyo International Law Office.  My professional address is ARK Mori Building 24F 1-12-32 Akasaka, Minato-ku, Tokyo, Japan.

5.      I earned the following degrees:

     a.      LL.B., The University of Tokyo

     b.      LL.M., Columbia Law School

6.      My relevant professional experience includes:

     a.      Assistant Judge (Tokushima District Court, Saitama District Court, and Osaka District Court)

     b.      Judge (Osaka District Court, Tsu District Court, and Tokyo District Court)

     c.      Public Prosecutor (seconded to the Ministry of Foreign Affairs of Japan, Consular Affairs Bureau, Hague Convention Division)

7.      Current copy of my curriculum vitae, including my education, employment history, and professional qualifications, is attached as **Exhibit A**.

**II.      Independence**

-1-      CASE NO. 5:26-cv-00945-NC

8.      I was retained by counsel for Yasumasa Yamamoto in connection with the above-captioned action solely to provide independent expert analysis and opinions on Japanese law and Japanese legal system concerning *forum non conveniens* grounds.  I am compensated at the rate of $540 per hour.  My fees are not contingent on the outcome of this litigation or the content of my opinions.  The opinions set forth below are solely my own, based on my professional knowledge, experience, and independent review of the materials identified herein.  They were not directed, dictated, or substantively altered by the retaining party or its counsel.

**III.    Materials Considered**

9.      In forming my opinions, I considered the following materials and other materials reasonably relied upon by experts in my field:

a.      Plaintiffs' Motion to Authorize Alternative Service on Defendant Yasumasa Yamamoto Pursuant to Fed. R. Civ. P. 4(f)(3);

b.      Plaintiffs' Complaint (Dkt. 1) ("Compl.") and exhibits thereto;

c.      Plaintiffs' Rule 7.1 Disclosure Statement and Certification Pursuant to Civil L.R. 3-15;

d.      Plaintiffs' Separate Case Management Statement;

e.      Declaration of Harumi Akimoto, dated June 3, 2026, and exhibits thereto;

f.      Declaration of Jeremiah A. Armstrong, dated June 4, 2026, and exhibits thereto;

g.      Defendant Yasumasa Yamamoto's Opposition to Plaintiffs' Motion to Authorize Alternative Service Pursuant to Fed. R. Civ. P. 4(f)(3);

h.      Plaintiffs' Reply in Support of Motion to Authorize Alternative Service on Defendant Yasumasa Yamamoto Pursuant to Fed. R. Civ. P. 4(f)(3); and

i.      Order Granting Motion for Alternative Service.

10.     I may consider additional materials made available to me and, if appropriate, supplement or revise my opinions consistent with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Court's orders, and applicable law.

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**IV.     Jurisdiction of Japanese Courts over Mr. Yamamoto and the Claims in this Litigation**

11.     My first opinion is that Japanese courts would have jurisdiction over the plaintiffs, Mr. Yamamoto, and the claims against him in this litigation.

12.     First of all, if the plaintiffs file this litigation with a Japanese court, that action will establish by itself the jurisdiction of the court over the plaintiffs.

13.     In addition, the Japanese court would have jurisdiction over Mr. Yamamoto and the claims against him in this litigation for the following reasons.  First, Article 3-2(1) of the Code of Civil Procedure (CCP) stipulates that Japanese courts have jurisdiction over an action that is brought against a person domiciled in Japan.  Since Mr. Yamamoto is a citizen of Japan domiciled in Japan (Compl. Paras. 6, 12), Japanese courts would have jurisdiction over this litigation pursuant to this provision.  Attached hereto as **Exhibit B** is a true and correct copy of excerpts of the Code of Civil Procedure, together with an English translation thereof. The translation was prepared by the Japanese Law Translation Project of the Ministry of Justice of Japan and is available at https://www.japaneselawtranslation.go.jp/en/laws/view/4797 (last accessed Aug. 7, 2026).

14.     Second, Article 3-3 (viii) of the CCP stipulates that Japanese courts have jurisdiction over an action for a tort if the place where the tort occurred is within Japan.  If the court finds, as alleged by the plaintiffs (Compl. Paras. 20-27), that Mr. Yamamoto disparaged the plaintiffs by making false statements to individuals or entities in Japan in connection with the plaintiffs' business transactions or professional relationship with them, then this also would establish the jurisdiction of the court over the claims in this litigation based on this article.

15.     Third, Article 3-8 of the CCP stipulates that if the defendant presents an oral argument on the merits of the case or enters a statement in preparatory proceedings without entering the affirmative defense that the Japanese courts lack jurisdiction, the courts have jurisdiction.  Thus, if this litigation is filed with a Japanese court and Mr. Yamamoto submits his arguments without raising an objection as to the jurisdiction of the Japanese courts, Japanese courts would have jurisdiction over this litigation following this provision.

CASE NO. 5:26-cv-00945-NC

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

16.     In conclusion, I am confident that Japanese courts would have jurisdiction over this litigation pursuant to these provisions.

### V.      Japan's Choice-of-Law Principles

17.     If this litigation is filed with a Japanese court, the court will choose the laws applicable to this case following the Act on General Rules for Application of Laws (AGRAL).  The analysis as to what law ultimately applies to a case is fact dependent.  Given the circumstances of this case which involve individuals and entities in Japan, and, as I understand from Plaintiffs' Rule 7.1 Disclosure Statement and Certification Pursuant to Civil L.R. 3-15, the plaintiff Pegasus Tech Ventures, Inc. is owned by a Japanese parent company, Pegasus Tech Holdings, K.K.,[1] it is likely that a Japanese court would apply Japanese law.  But even if a Japanese court were to apply foreign law based on AGRAL, Japanese courts routinely adjudicate disputes involving foreign parties, and they confidently apply foreign law where their choice-of-law rules so require.  Where foreign laws are applied following AGRAL, the Japanese court would be able to interpret the foreign laws by examining documentary evidence produced from both parties with Japanese translation and obtaining opinions of an expert in writing, orally, or by cross-examination.

### VI.     Substantive Causes of Action and Available Remedies under Japanese Law

18.     If the plaintiffs file this litigation with a Japanese court and the court finds that Mr. Yamamoto disparaged them as alleged by the plaintiffs, the court would be able to provide the plaintiffs with the following remedies under Japanese law.

19.     In general, Article 709 of the Civil Code stipulates that a person that has intentionally or negligently infringed the rights or legally protected interests of another person is liable to compensate for damage resulting in consequence.  Attached hereto as **Exhibit C** is a true and correct copy of excerpts of the Civil Code, together with an English translation thereof. The translation was

---

[1]  "K.K." is the standard abbreviation for *kabushiki kaisha*, which translates as "stock company." It is a common corporate form in Japan and is available only to entities organized under Japanese law. The presence of the "K.K." designation in the parent company's name thus itself indicates that Pegasus Tech Holdings, K.K. is a Japanese company.

-4-                               CASE NO. 5:26-cv-00945-NC

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

prepared by the Japanese Law Translation Project of the Ministry of Justice of Japan and is available at https://www.japaneselawtranslation.go.jp/en/laws/view/4848 (last accessed Aug. 7, 2026).

20.    Article 416(1) of the Civil Code further provides that the purpose of the claim for damages for failure to perform an obligation is to have the obligor to pay the compensation for damage which would ordinarily arise from the failure.  Paragraph (2) of the same article stipulates that the obligee may also claim the compensation for damage which has arisen from any special circumstances if the party did foresee, or should have foreseen, the circumstances.  These provisions apply to any type of tortious acts and damage caused thereby.  If the plaintiffs were to prove that Mr. Yamamoto intentionally or negligently disparaged the plaintiffs by making genuinely false statements to individuals or entities in Japan and the plaintiffs successfully proved that these statements harmed the plaintiffs' business transactions or professional relationships, then Mr. Yamamoto's conduct could constitute a tortious act which intentionally or negligently harmed the plaintiffs' fame, trust, or other business rights or interests protected under these provisions, entitling the plaintiffs to damages against Mr. Yamamoto pursuant to these provisions.

21.    Article 723 of the Civil Code stipulates that the court may order a person that has defamed another person to take appropriate measures to restore the reputation of the victim in lieu of or in addition to compensation for damages, at the request of the victim.  Such appropriate measures include ordering the defendant to publicize an apologetic statement in a newspaper, magazine, or website, or to cancel or correct the defamatory statement or article.  In this litigation, if the plaintiffs were to prove that Mr. Yamamoto intentionally or negligently made false and defamatory statements against the plaintiffs, the court could order Mr. Yamamoto to take such measures as canceling or correcting his statements pursuant to this article.

22.    Article 2 (1) (xxi) of the Unfair Competition Prevention Act (UCPA) defines "the act of making or circulating false allegations that harm the business reputation of a business competitor" as "unfair competition," and Articles 3 and 4 of the UCPA provide injunctive and damage remedies against the infringement of business interests through such unfair competition. Attached hereto as **Exhibit D** is a true and correct copy of excerpts of the Unfair Competition Prevention Act, together with an English translation thereof.  The translation was prepared by the

-5-

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Japanese Law Translation Project of the Ministry of Justice of Japan and is available at https://www.japaneselawtranslation.go.jp/en/laws/view/4920 (last accessed Aug. 7, 2026).

23. In addition, Article 14 of the UCPA stipulates that the court may order the defendant to take the necessary measures for restoring the business reputation of the victim, in lieu of or in addition to compensation for loss or damage. Thus, if the plaintiffs were to prove that Mr. Yamamoto intentionally or negligently harmed the plaintiffs' business reputation by making or circulating false allegations, and if the plaintiffs established that the plaintiffs are business competitors of Mr. Yamamoto, the plaintiffs would be entitled to these injunctive and damage remedies, and other necessary measures as is ordered by the court.

24. In conclusion, Japanese courts would be able to provide the plaintiffs with proper injunctive and damage remedies for their claims in this litigation. On the other hand, it should be also noted that Japan has no civil juries and its courts grant or approve no punitive damages (Supreme Court Judgment, July 11, 1997, Minshu Vol. 51, No. 6, p. 2573).

**VII.   Statute of Limitations, Procedural Fairness, and Adequacy in Japanese Courts**

25. For these matters, I believe that Japanese courts would have sufficient procedural fairness and capacity to preside over this litigation without being hindered by the statute of limitations under the laws of Japan.

26. While Article 724 of the Civil Code stipulates that the claim for damages caused by tort is extinguished by prescription if the right is not exercised within three years from the time when the victim or its legal representative comes to know the damage and the identity of the perpetrator, as the plaintiffs allege that they have suffered injuries from Mr. Yamamoto's conduct from 2024 (Compl. Paras. 19, 22-27), it would be unlikely for the claims in this litigation to be time-barred as long as the plaintiffs file this litigation with a Japanese court within the timeframe stipulated by the article.

27. The following provisions underpin the procedural fairness of the Japanese courts.

   a. The independence of the Japanese judiciary and judges are guaranteed by Article 76 of the Constitution of Japan, which stipulates that all judges shall be independent in the exercise of their conscience and shall be bound only by

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

the Constitution and the laws. The judges shall not be removed except by public impeachment unless judicially declared mentally or physically incompetent to perform official duties and no disciplinary action against them shall be administered by any executive organ or agency (Article 78). The judges of the lower courts shall be appointed by the Cabinet from a list of persons nominated by the Supreme Court (Article 80) and the judges of the Supreme Court, except the Chief Judge, shall be appointed by the Cabinet (Article 79). Trials shall be conducted and judgment declared publicly (Article 82).

b.    In civil procedure, a judge is disqualified from performing the duties of a judge for reasons listed in the paragraph showing conflict of interests such as being a party to the case (Article 23 of the CCP). If there are circumstances involving a judge which could prejudice the impartiality of a judicial decision, a party may challenge that judge (Article 24). When an action has been filed, the complaint shall be served on the defendant, and the presiding judge shall designate a date for oral arguments and summon the parties to appear (Articles 138, 139). Each party may be represented by counsel who is an attorney at law (Article 54(1)). The parties' arguments are prepared by briefs (Article 161(1)) and submitted to the court with documentary evidence. After the court clarifies the issues and evidence through the examination of these documents and discussions with the parties at hearings, the examination and cross-examination of witnesses is conducted if necessary. When litigation has been sufficiently developed to allow the court to reach a judicial decision, the court enters a final judgment (Article 243), unless the parties reach a settlement. Each party may file an appeal against a judgment of a lower court.

CASE NO. 5:26-cv-00945-NC

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

c.      When a court judgment has become final and binding, compulsory execution against real property, movables, claims, or other property rights in Japan is available pursuant to the Civil Execution Act.

28.     As to examination of witnesses and documentary evidence, Japanese courts may take the following compulsory measures.

a.      If a witness, without a legitimate reason for doing so, fails to appear, the court issues a ruling ordering the witness to bear any court costs incurred due to the witness's failure to appear, and sentences that witness to a civil fine of not more than 100,000 yen (Article 192 of the CCP).  Such a witness is also subject to a criminal fine of not more than 100,000 yen or misdemeanor imprisonment without work (Article 193).  In addition, the court may subpoena a witness who fails to appear without a legitimate reason for failing to do so and bring them to court (Article 194).

b.      When it is necessary to examine a certain document and the person in possession of the document owes an obligation to submit the document pursuant to Article 220 of the CCP, the court may upon petition order the person to submit the document (Article 223).  If the person fails to comply with the order, the court may find the adverse party's allegations concerning the details of said document to be true (Article 224).

## VIII.   Japan's Interest in Adjudicating This Dispute

29.     On this point, my opinion is that Japan has significant interest in adjudicating this litigation at its courts from a perspective of its public policy and national sovereignty.

30.     Article 22 of the AGRAL restricts the application of foreign tort law on grounds of Japanese public policy in two respects: (i) if facts to which the foreign law should be applied do not constitute a tort under Japanese law, no claim under the foreign law may be made for compensation or any other dispositions; and (ii) even if facts to which the foreign law should be applied constitute a tort both under the foreign law and Japanese law, the victim may make a claim only for compensation or any other dispositions that may be permitted under Japanese law.  As such, even

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

where a foreign law governs a tort under Japan's choice-of-law rules, Japan makes it its public policy to grant tort claims only within the frame of Japanese law. Such a policy should naturally apply to this litigation. If, as the plaintiffs allege in the complaint, Mr. Yamamoto, who is a Japanese citizen domiciled in Japan, had disparaged the plaintiffs by making false statements to individuals or entities in Japan (Compl. Paras. 1-3, 19), then even if a Japanese court were to apply foreign law to the alleged tort, Article 22 of the AGRAL would confine any claim to what Japanese law itself recognizes and permits.

31.     As I state in the next section, Japan deems unauthorized evidence-taking by foreign courts, including an in person or video examination of a person on Japanese soil, as an infringement of its judicial sovereignty. In this litigation, the plaintiffs allege that Mr. Yamamoto, who is domiciled in Japan, disparaged the plaintiffs by making false statements to Japanese individuals or entities in connection with the plaintiffs' business transactions or professional relationship with them. In such a situation, where the relevant individuals or entities except the plaintiffs are Japanese nationals or entities domiciled or based in Japan, and the claims arise from Mr. Yamamoto's allegedly disparaging statements harming the plaintiffs' reputation or relationship with these Japanese third-parties, adjudicating the dispute in a Japanese court under the CCP would more closely align with the public view of the Japanese government, rather than having the dispute adjudicated in the U.S. with the fear of infringement of Japanese sovereignty.

### IX.     Measures for Obtaining Evidence and Testimony in Japan for U.S. Litigation

32.     If this litigation is adjudicated in U.S. courts, the following measures will be available to obtain evidence and testimony in Japan.

33.     First of all, Japan is not a signatory to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, which facilitates international evidence-taking by authorizing a judicial authority of a Contracting State to request the competent authority of another Contracting State to obtain evidence in its territory (Article 1). Instead, Japan only recognizes the following measures for evidence-taking on its soil by foreign courts.

34.     One possible measure for obtaining evidence and testimony in Japan is the process pursuant to the Law Relating to the Reciprocal Judicial Aid to Be Given at the Request of Foreign

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Courts. In this process, the Japanese courts conduct the examination of evidence at a request of a U.S. court through its letter rogatory routed via the U.S. Embassy in Japan, Japan's Ministry of Foreign Affairs, and General Secretariat of the Supreme Court. The requirements for such a request include: (i) the letter rogatory states the names of the parties to the litigation, the manner in which the evidence is to be taken, the name, nationality, and domicile or residence of the person to be examined, and the matters to be investigated, (ii) Japanese translation is appended to the letter rogatory, and (iii) the State to which the Court making the request belongs shall guarantee the payment of the expenses incurred in the execution of the letter rogatory (Article 1-2). If the request fails to meet any of these requirements (*e.g.*, the person or matters to be examined are unspecified), it shall not be accepted. The Japanese courts conduct the examination of evidence following the laws of Japan (Article 3), which lacks the discovery process as in the U.S. It can take 6 to 12 months in many of these cases for a Japanese court to complete the examination of evidence after accepting such a request.

35. The other measure for obtaining evidence and testimony in Japan is a deposition at the U.S. Embassy or Consulate in Japan pursuant to Article 17(1)(e)(ii) of the Consular Convention between Japan and the United States of America, which stipulates that a consular officer may within his consular district take voluntarily given depositions on behalf of the U.S. courts. As is recognized by the U.S. government (**Exhibit E**), a deposition for a U.S. case may be taken only at the U.S. Embassy or the Consulate in Japan, by appointment, before a U.S. consular officer, and counsel attending the deposition, together with any court reporters and interpreters, must obtain a special "deposition visa" secured in advance through the Japanese Embassy or Consulate in the U.S. for a fee and may not travel to the deposition on a regular business or tourist visa. In addition, a United States court order or commission authorizing the deposition must be provided before the deposition visa may be applied for. For examination of other evidence, the Convention only allows a consular officer to obtain copies of or extracts from documents of public registry (Article 17(1)(f)). No other means for evidence-taking in Japan are available under the Convention.

36. Japan treats unauthorized evidence-taking by foreign courts in its soil as an infringement of its judicial sovereignty since it is "judicial acts" carried out by foreign national

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

agencies and accompanied by legal effects of exercising jurisdiction (**Exhibit F**).  As is also clarified from Japanese Consul Yoshihiko Kitajima's letter dated March 26, 2026, appended to Declaration of Jeremiah A. Armstrong (Dkt. 11-2, Ex. A), the Japanese government deems compelling testimony, taking video testimony, or conducting a video-link examination of a person on Japanese soil as an exercise of public authority in Japan and never accepts such procedures without prior governmental consent through diplomatic channels.  Japan does not consider depositions at the U.S. Embassy or Consulate to violate Japan's judicial sovereignty because U.S. Embassy and Consulate grounds are inviolable.

37.    In conclusion, it is technically possible for U.S. courts to obtain evidence and testimony in Japan through these measures.  However, evidence-taking by U.S. courts in Japan through these channels would require more time and processes, and its scope and means would be more restricted in comparison with Japanese courts, which can obtain evidence and conduct the examination of witnesses in Japan directly, with compulsory measures for ordering the appearance of witnesses and the production of relevant documentary evidence.

**X.    Procedures and Conditions for Enforcing a U.S. Judgment in Japan**

38.    My final opinion is that even if a judgment is rendered in this litigation, there would be doubts as to the enforceability of the judgment in Japan.

39.    Article 118 of the CCP stipulates the requirements for a final and binding judgment rendered by a foreign court to be valid in Japan, which include: (i) the jurisdiction of the foreign court is recognized pursuant to Japan's laws and regulations, conventions, or treaties; and (ii) the defeated defendant has been served (excluding service by publication or any other service similar thereto) with the requisite summons or order for the commencement of litigation, or has appeared without being so served.

40.    As to the first requirement, it is appropriate to construe that whether or not a foreign country has such jurisdiction over the action should be determined in light of the rule of reason, while basically complying with the provisions on international jurisdiction under the CCP and considering whether or not it is appropriate for Japan to recognize a judgment rendered by the foreign court, in the context of the specific circumstances of the case (Supreme Court Judgment,

April 24, 2014, Minshu Vol. 68, No. 4, p. 329). Here, in this litigation, since the plaintiffs allege in the complaint  (Compl. Paras. 6, 12, 20-27) that Mr. Yamamoto, who is domiciled in Japan, disparaged the plaintiffs by making false statements to individuals or entities in Japan in connection with the plaintiffs' business transactions or professional relationship with them, it may be held by a Japanese court that the place where the tort occurred (Article 3-3 (viii) of the CCP) is within Japan and U.S. courts lacked jurisdiction over this litigation, making the judgment unenforceable.

41.    As to the second requirement, both Japan and U.S. are signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad (Article 1).  As to such transmission of documents, the Convention authorizes the Central Authority of the State addressed to require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.  Japan's Central Authority, Ministry of Foreign Affairs, generally requires a complete, accurate Japanese translation of all documents to be served.

42.    In addition, Article 10(a) of the Convention allows "the freedom to send judicial documents, by postal channels, directly to persons abroad," but only if the State of destination does not object to this provision, and Japan did just that in 2018.  Therefore, the service methods described in Article 10(a), including service by email, are unrecognized in the country.  As to such service methods, from the viewpoint of ensuring clarity and stability of the procedure of litigation, if there is a treaty of judicial cooperation between the country of judgment and Japan and if this treaty provides that the service of the document required for the commencement of litigation must be effected in a manner set out in this treaty, service of documents not in accordance with the manner set out in the treaty should not be regarded as service which fulfils the requirement of Article 118 of the CCP (Supreme Court Judgment, April 28, 1998, Minshu Vol. 52, No. 3, p. 853).  Here, in this litigation, according to Declaration of Jeremiah A. Armstrong (Dkt. 11-2, Paras. 4, 6-8), the plaintiffs attempted to initiate service under the Convention, but the Ministry of Foreign Affairs of Japan refused to accept it, and although the plaintiffs contacted Thomas R. Burke and Sarah Burns, who had represented Mr. Yamamoto in a different action prior to this litigation, the plaintiffs

received no response accepting service.  Then I understand that the plaintiffs thereafter obtained the Court's order granting their motion for alternative service, and then served the documents electronically via email upon Mr. Yamamoto and his counsel in this litigation.  In such a situation, however, because Japan does not recognize sending court documents by email as an authorized method of service under the Convention, if challenged by the defendant, the judgment of a U.S. court arising from email service would likely be held invalid and unenforceable in Japan due to the lack of the above requirement.

**XI.    Conclusion**

43.    The opinions stated in this declaration are subject to the qualifications, assumptions, and limitations described above and in any attached exhibits. I reserve the right to respond to opinions offered by other experts and to correct, clarify, or supplement my opinions as permitted by the Court and applicable rules.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 11th day of August, 2026, at at Tokyo, Japan.

/s/ _____ Yuta Yamasaki
Yuta Yamasaki

DECLARATION OF YUTA YAMASAKI ON JAPANESE LAW IN SUPPORT OF THE *FORUM NON CONVENIENS* GROUND OF DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT