Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: 415-296-7070
Facsimile: 415-449-6301

James Wagstaffe (SBN 95535)
wagstaffe@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, California 93403
Telephone: 805-543-0990
Facsimile: 805-543-0980

Attorneys for Plaintiffs
Md Anis Uzzaman and
Pegasus Tech Ventures, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>YASUMASA YAMAMOTO, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:26-cv-00945-NC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT YASUMASA YAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: September 16, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Nathanael M. Cousins<br>Action Filed: January 30, 2026 |

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. FACTS MATERIAL TO THE THRESHOLD ISSUES .......... 2

III. THE FORUM NON CONVENIENS GROUND FAILS ON THIS RECORD .......... 4

A. Plaintiffs' Choice of Their Home Forum Commands Substantial Deference .......... 4

B. The Private-Interest Factors Do Not Favor Japan .......... 6

C. The Public-Interest Factors Favor California .......... 8

D. Defendant Has Not Shown Japan to Be Clearly Superior .......... 10

IV. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT .......... 11

V. DEFENDANT'S RULE 12(b)(6) CHALLENGE FAILS AS TO EVERY CLAIM .......... 13

A. Defendant's Authorities Apply an Evidentiary Standard That Does Not Govern This Motion .......... 13

B. The Statements Are Not Protected Opinion .......... 14

C. The Trade Libel and Special-Damages Allegations Are Sufficient at the Pleading Stage .......... 14

D. The Interference Claim Is Adequately Pleaded .......... 17

E. Uzzaman's Individual Claim and the UCL Claim Are Adequately Pleaded .......... 17

VI. CONCLUSION .......... 18

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

## TABLE OF AUTHORITIES

**CASES**

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 12, 13
*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) .......... 4, 5, 6, 7, 9, 11
*Ceramic Corp. of Am. v. Inka Maritime Corp.*,
1 F.3d 947 (9th Cir. 1993) .......... 4, 11
*Cooper v. Tokyo Elec. Power Co.*,
860 F.3d 1193 (9th Cir. 2017) .......... 4, 5
*Creager v. Yoshimoto*,
No. C 05-01985 JSW, 2006 WL 680555 (N.D. Cal. Mar. 14, 2006) .......... 10
*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......... 11
*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) .......... 12
*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) .......... 6
*Gordy v. Daily News, L.P.*,
95 F.3d 829 (9th Cir. 1996) .......... 17
*Kilopass Tech. Inc. v. Sidense Corp.*,
No. 10-cv-02066-SI, 2010 WL 5141843 (N.D. Cal. Dec. 13, 2010) .......... 15
*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) .......... 4, 8, 10
*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) .......... 14
*Pepper, N.A. v. Expandi Inc.*,
No. 15-cv-04066-NC, 2015 WL 7720922 (N.D. Cal. Nov. 30, 2015) .......... 7, 11, 13
*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015) .......... 14
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.), amended by 897 F.3d 1224 (9th Cir. 2018) .......... 13
*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 13
*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 4

*Standing Comm. on Discipline v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) .......... 14
*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 12

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200 .......... 17
Cal. Bus. & Prof. Code § 17203 .......... 18
Cal. Code Civ. Proc. § 425.16 .......... 13
Fed. R. Civ. P. 9(b) .......... 17
Fed. R. Civ. P. 9(g) .......... 15, 16
Fed. R. Civ. P. 12(b)(2) .......... 11
Fed. R. Civ. P. 12(b)(6) .......... 13

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

## I. INTRODUCTION

Plaintiffs are a San Jose venture capital firm and its founder, a United States citizen who lives and works in Santa Clara County. They allege that Defendant, a competing venture investor, told the companies and institutions on which their business depends that Uzzaman is not a legitimate venture capitalist. Defendant asks the Court to dismiss in favor of Japan on the theory that the alleged conduct, the witnesses, and the proof are all Japanese. The existing record tells a different story.[1]

On June 10, 2024, the day after the challenged communications, Defendant accepted an in-person meeting with Pegasus in San Jose for the following afternoon. He did not propose to meet remotely. He did not ask for time to travel. He did not say he was abroad. He asked only that the meeting be moved to one of two Bay Area coffee shops he selected himself by map link. ECF No. 11-1 ¶¶ 3, 5 & Ex. B; Armstrong Decl. ¶¶ 14-16 & Ex. G. This Court relied on the same correspondence in authorizing alternative service. ECF No. 20 at 4. Defendant's declaration does not say where he was when the challenged communications were sent. ECF No. 28-16. The present record supports a reasonable and unrebutted inference that Defendant was in, or imminently present in, California during the operative period, and it is difficult to square with his categorical assertion that this dispute belongs exclusively to Japan.

Nor is Defendant a stranger to this District. Stanford University's Freeman Spogli Institute lists him as a visiting scholar with an office at Encina Hall, and Stanford's event pages list him as moderator of panels held on its campus. The Complaint alleges he is the chief executive officer, manager, and agent for service of process of Green Capital Management LLC at a San Mateo address, and that is the address DNX Ventures gives for its Silicon Valley office. In May 2026, after this action was filed, the agency that represents him for speaking engagements published a profile describing him as a venture investor who works going back and forth to Silicon Valley. Compl. ¶¶ 7, 12; Armstrong Decl. ¶¶ 3-11, 17-18 & Exs. A-E, H.

---

[1] Plaintiffs submit that the present record warrants denial of the motion in full. If Defendant's August 26, 2026 discovery responses disclose material facts bearing on the threshold issues, Plaintiffs will seek leave to file a narrowly tailored supplemental submission.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Plaintiffs, for their part, are at home here. Uzzaman is a United States citizen domiciled in Santa Clara County who has paid personal income tax exclusively in the United States for more than twenty years and has never owned a residence in Japan. Pegasus is a Delaware corporation headquartered in San Jose that generates one hundred percent of the group's revenue. The deal files, investor communications, and financial records concerning the negotiations at issue are maintained in San Jose on systems administered from the United States, the negotiations were conducted by named San Jose personnel, and the revenue the statements are alleged to have destroyed was revenue of the San Jose company. Compl. ¶¶ 4, 11, 14; Uzzaman Decl. ¶¶ 3-7, 13-15, 20-21, 25, 28.

Japan would not be the simpler forum. Under Article 19 of Japan's own choice-of-law statute, a Japanese court would look to the law of the victim's habitual residence and, for a corporation, its principal place of business. Both are in California. Article 22 would then require Plaintiffs to establish a Japanese tort as well and would cap recovery at what Japanese law allows. Every submission would be in Japanese, the English records would have to be translated, California law would be proved through competing expert opinions, and the court fee on the sum pleaded would be roughly USD 487,625, payable at filing. Tsunashima Decl. ¶¶ 10-12, 18-24.

Defendant has not carried the heavy burden required to send a California resident and a San Jose-headquartered operating company to Japan to litigate California-law business-disparagement claims, and he has submitted no declaration disputing Plaintiffs' asserted California contacts or identifying where he was when the challenged communications were sent. The motion should be denied in full.

## II. FACTS MATERIAL TO THE THRESHOLD ISSUES

*The parties.* Uzzaman is a United States citizen domiciled in Santa Clara County. He has filed and paid United States income taxes for more than twenty years, has never filed a tax return in Japan, has owned his California home for more than fifteen years, and has never owned a residence in Japan. Every member of his immediate family is a United States citizen living in California. Pegasus Tech Ventures, Inc. is a Delaware corporation headquartered in San Jose. Approximately eighty percent of its employees are in the United States and approximately eighty

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

percent of its investments are in United States and European companies. The Japanese entity on which the motion dwells, Pegasus Tech Holdings K.K., conducts no operations, and its principal shareholder is a Delaware limited liability company. Compl. ¶¶ 4, 11, 14; Uzzaman Decl. ¶¶ 3-7, 13-19.

*The statements.* The Complaint alleges that on June 9, 2024 Defendant sent messages to Professor Jin-ichiro Yamada of Kyoto University stating in substance that Uzzaman is not a legitimate venture capitalist, and that Defendant made comparable statements to other companies and institutions. Compl. ¶¶ 20-28. Professor Yamada's declaration is Exhibit A to the Complaint.

*Defendant's California connections.* The Complaint alleges that Defendant is the chief executive officer, manager or member, and agent for service of process of Green Capital Management LLC at 55 E. 3rd Avenue, San Mateo, California, and that he transacts business in the United States. Compl. ¶¶ 7, 12. Stanford lists him as a visiting scholar with a campus address. DNX Ventures gives 55 E. 3rd Avenue, San Mateo as the address of its Silicon Valley office. A May 2026 profile published by the agency that represents him describes him as working back and forth to Silicon Valley. Armstrong Decl. ¶¶ 3-11, 17-18 & Exs. A-E, H. On June 10, 2024 he accepted an in-person meeting in this District for the following afternoon and selected the venue himself. ECF No. 11-1 ¶¶ 3, 5 & Ex. B.

*Pegasus's California operations, records, and witnesses.* Pegasus's fundraising and investor-relations functions are run from the San Jose office, and its investment committee sits there. The deal files, investor communications, financial records, and personnel records concerning the negotiations at issue are maintained there. Its electronic mail, document storage, startup data, and accounting records are hosted on United States systems administered from the United States and accessible from San Jose. The corporate venture capital fund negotiations with Idemitsu and with DIC were conducted by San Jose personnel, including Ryosuke Kojima, Jong Wook Lim, and Justin Jackson, most discussions took place in California or by videoconference from San Jose, and both had reached an advanced stage when they ended. Uzzaman Decl. ¶¶ 20-21, 25-26. Uzzaman identifies seven individuals located in California, by name, role, and city, whose expected testimony bears on the statements Defendant made, the persons to whom he made them,

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

and his presence and activities in California. *Id.* ¶¶ 22-23. Professor Yamada, the one identified witness outside California, travels to the United States frequently and is willing to appear here for a deposition. *Id.* ¶ 24.

## III. THE FORUM NON CONVENIENS GROUND FAILS ON THIS RECORD

Forum non conveniens is "an exceptional tool to be employed sparingly," not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). "The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal." *Id.* Defendant bears the burden of showing both an adequate alternative forum and that the private and public interest factors *strongly* favor trial in Japan. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). He has not made that showing.

Defendant urges the Court to reach forum non conveniens first, citing *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007). *Sinochem* permits that sequence "where subject-matter or personal jurisdiction is difficult to determine, and forum non conveniens considerations weigh heavily in favor of dismissal." *Id.* at 436. Neither condition is present. Jurisdiction is not difficult to determine on a record in which Defendant has submitted nothing, and the forum factors do not favor dismissal at all, let alone heavily. The Court may deny the motion on every ground.

Defendant fails at the second step by a wide margin and Plaintiffs note only that the adequacy inquiry is not satisfied merely by the existence of a competent judiciary. The alternative forum must offer some genuine avenue for redress. *Ceramic Corp. of Am. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993). Article 22 of Japan's choice-of-law statute would require Plaintiffs, proceeding on California-law claims, also to establish a tort under Japanese law, and would cap any recovery at the remedies Japanese law permits. Tsunashima Decl. ¶¶ 18-19. That constraint bears on the weight the Court gives the forum Defendant proposes.

### A. Plaintiffs' Choice of Their Home Forum Commands Substantial Deference

"[T]he forum non conveniens analysis introduces a presumption that litigation is convenient in the plaintiff's chosen forum when a domestic plaintiff sues at home." *Cooper v.*

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

*Tokyo Elec. Power Co.*, 860 F.3d 1193, 1210-11 (9th Cir. 2017) (affirming denial of dismissal sought in favor of Japan). A defendant therefore carries the "heavy burden of showing that the [plaintiff's choice of] forum results in 'oppressiveness and vexation ... out of all proportion' to the plaintiff's convenience." *Id.* at 1211 (quoting *Carijano*, 643 F.3d at 1227).

*Cooper* is instructive on its facts. The plaintiffs were United States service members who alleged radiation exposure from the accident at the Fukushima Daiichi nuclear plant, and they sued the Japanese utility that operated it. The conduct at issue occurred entirely in Japan, the defendant was Japanese, and the evidence and witnesses were overwhelmingly Japanese. The Ninth Circuit nonetheless affirmed the denial of dismissal, holding that "Plaintiffs are U.S. citizens, and their decision to sue in the United States must be respected," and that the district court "did not abuse its discretion in finding that other private and public considerations did not outweigh Plaintiffs' interest in suing at home." 860 F.3d at 1211. It reached that result *after* holding that Japan was an adequate alternative forum. *Id.* at 1210. Adequacy therefore does not decide the motion, which answers Defendant's principal submission. And if the presumption survived a case arising out of an accident at a Japanese power plant, it survives a case about statements aimed at the California venture capital market that caused losses to a San Jose company.

Uzzaman is a United States citizen suing at home in the district where he lives, and Pegasus is a Delaware corporation suing where it is headquartered and where its injury was sustained. Uzzaman Decl. ¶¶ 3-7, 13-15, 28. This is the paradigm case for the presumption, not an exception to it. Defendant's answer is that Pegasus has a Japanese parent, but the presumption attaches to a domestic plaintiff's choice of its home forum, and the entity he points to conducts no operations and is itself principally owned by a Delaware limited liability company. *Id.* ¶ 19.

Defendant's remaining answer on deference is that Plaintiffs have their own ties to Japan. The presumption, however, turns on whether a domestic plaintiff has chosen its home forum, not on whether it also does business abroad. Uzzaman lives in Santa Clara County, pays United States taxes, and owns no residence in Japan. Uzzaman Decl. ¶¶ 3-7. Pegasus is incorporated in Delaware, headquartered in San Jose, and generates all of the group's revenue there, with roughly eighty percent of its employees in the United States. *Id.* ¶¶ 13-17. That a venture capital firm invests

internationally does not convert its home forum into a foreign one. Were it otherwise, the presumption would be unavailable to any American business with overseas dealings, which is not the law. *See Carijano*, 643 F.3d at 1224.

**B. The Private-Interest Factors Do Not Favor Japan**

*Witnesses*. The Ninth Circuit has held that a district court "improperly focused on the number of witnesses in each location" and should instead have "examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984). Uzzaman identifies seven California witnesses by name, role, city, and expected subject matter, each of whom either moves in the venture capital community in which Defendant operates or is affiliated with an institution where he has held an appointment. Uzzaman Decl. ¶¶ 22-23. The negotiations at the center of the damages case were conducted by three named individuals based in San Jose. *Id.* ¶ 25. Professor Yamada, the recipient of the June 9 messages and the only identified witness abroad, is willing to appear in California. *Id.* ¶ 24.

Those witnesses are identified individually. They are Gen Isayama, Founder and General Partner of World Innovation Labs in Palo Alto, Tak Miyata, Founder and General Partner of Scrum Ventures in San Francisco, Hitoshi Hokamura, an Advisor to Scrum Ventures in San Francisco, Mio Sakata, Chief Executive Officer of EpiCurious Innovations in Fairfield, Mitch Kitamura, Managing Partner and Chief Operating Officer of DNX Ventures in San Mateo, Dr. Richard B. Dasher, Director of the US-Asia Technology Management Center at Stanford, and Kenji Kushida, a Senior Fellow at the Carnegie Endowment for International Peace in Menlo Park. Uzzaman Decl. ¶ 22. The first four are expected to testify to statements Defendant made about Plaintiffs within the venture capital community and to the identity of the persons to whom he made them. The last three are expected to testify to Defendant's association with DNX Ventures and to his appointment, presence, and activities on the Stanford campus. *Id.* That is the specificity *Gates Learjet* calls for, and Defendant offers nothing to match it.

Defendant offers no comparable showing. He does not name a single witness he would call in Japan, state what that testimony would be, or represent that any witness is unwilling to appear

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

here. His generic references to Japan-based witnesses do not outweigh Plaintiffs' concrete identification of California witnesses, California deal personnel, and California records. That failure of proof is what defeated the motion in the case this Court decided. In *Pepper, N.A. v. Expandi Inc.*, No. 15-cv-04066-NC, 2015 WL 7720922 (N.D. Cal. Nov. 30, 2015), the Court denied a forum non conveniens motion because the movants "have not stated with specificity who they would seek to depose, the relevance of those witnesses to the litigation, the inefficiency of litigating the case in the United States, or the actual cost to the defendants. The Court will not dismiss the case based on speculation that the litigation could be burdensome, or because defendants prefer to litigate the case" abroad. *Id.* at *5. The same is true here. *Accord Carijano*, 643 F.3d at 1231 (movant "has not shown, nor does it even represent, that any witness is unwilling to testify").

*Documents and proof.* The documentary case is here. Pegasus's deal files, investor communications, financial records, and personnel records concerning the negotiations at issue are maintained in San Jose, and its electronic mail, document storage, startup data, and accounting systems are United States based and administered from the United States. Uzzaman Decl. ¶¶ 20-21. The damages proof is the revenue of a San Jose corporation. *Id.* ¶ 28. Defendant has not identified a material category of Japan-based proof that is unavailable through ordinary discovery, voluntary production, translated documents, or available testimony.

*Compulsion and enforceability.* Two further private factors point the same way. Defendant does not contend that any witness would refuse to appear here, and the one identified witness abroad has agreed to appear. Uzzaman Decl. ¶ 24. As to enforceability, Defendant is alleged to serve as chief executive officer, manager or member, and agent for service of process of a California limited liability company at a San Mateo address and to transact business in the United States. Compl. ¶¶ 7, 12. Defendant has not established that a judgment of this Court would be unenforceable or practically futile, and at most this factor is neutral.

*Practical burdens.* A plaintiff commencing suit in Japan must state the amount claimed and pay the corresponding court fee at filing, calculated on a graduated statutory schedule. Tsunashima Decl. ¶¶ 22-23 & Ex. C. On the sum pleaded that fee would be approximately USD

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

487,625, payable before the case begins. *Id.* ¶ 24. Nothing comparable attends filing here. That is a real cost of the forum Defendant proposes, and it falls within the seventh private-interest factor, "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145.

**C. The Public-Interest Factors Favor California**

*Local interest.* California has a substantial interest in a suit by one of its residents and a corporation headquartered within its borders over injury to their business reputations sustained here. The lost fund commitments, sponsorships, and investor relationships were managed from San Jose, and the revenue lost was the revenue of the San Jose corporation. Uzzaman Decl. ¶¶ 26-28.

This District's interest is not diminished by Defendant's nationality. California has a substantial interest in a dispute alleging injury to a Santa Clara County resident and a San Jose-headquartered operating company, where the relationships and the revenue at issue were managed from San Jose. Defendant is alleged to run a California company from a California address. Defendant does not address the burden on local courts and juries or court congestion at all, and a jury drawn from this District would be deciding whether a Santa Clara County resident and a San Jose company were disparaged in the market where they operate. That is not a dispute unrelated to this forum.

Plaintiffs' showing on Japanese law comes from Kosuke Tsunashima, a partner at Anderson Mōri & Tomotsune in Tokyo. He is admitted in Japan and in New York, holds an LL.B. from Keio University and an LL.M. from UCLA, and completed the course of the Legal Training and Research Institute of the Supreme Court of Japan. He co-authors the Japan chapter of the Chambers Global Practice Guide on Enforcement of Judgments and chairs the Asia Pacific Working Group of the International Bar Association's Litigation Committee. His compensation does not depend on the content of his declaration or on the outcome of this action. Tsunashima Decl. ¶¶ 1-6. He addresses two subjects and no others, the law a Japanese court would select and the fee required to commence suit there, and he expresses no opinion on United States law or on

how this motion should be resolved. *Id.* ¶ 7. He attaches the governing statute in the original Japanese and in the translation published by the Ministry of Justice. *Id.* ¶ 9 & Ex. B.

That sourcing matters, because the English translation is misleading on precisely the question presented. A court reading only the Ministry's translation would see Article 19 described as a rule for "defamation" and might conclude that it has nothing to say about a claim for disparagement of a business. That would be a mistake. The heading of Article 19 in the original Japanese is 「名誉又は信用の毀損の特例」, and the operative language reaches injury to 他人の名誉又は信用, that is, another person's reputation (名誉) or credit (信用). 信用毀損, injury to commercial credit, is the concept in Japanese law that corresponds most closely to a claim for damages based on disparagement of a business, and it reaches credit relating to the ability or willingness to pay and to the quality of goods or services. The Ministry's translation renders the provision with the single word "defamation" and does not carry the reference to credit across. *Id.* ¶ 11. Only the original Japanese text has legal effect. *Id.* ¶ 9. Article 19 therefore governs these claims, and it displaces the general place-of-injury rule of Article 17. *Id.* ¶¶ 9-10.

*California law would govern even in Japan.* Defendant's expert devotes a single paragraph to choice of law. He states that a Japanese court would select the governing law under the Act on General Rules for Application of Laws, that the analysis is "fact dependent," and that "it is likely that a Japanese court would apply Japanese law," resting that conclusion on his understanding that Pegasus is owned by a Japanese parent. ECF No. 28-1 ¶ 17. He never cites the provision that governs. Article 19 of that Act directs a Japanese court, for claims arising from injury to reputation or business credit, to the law of the victim's habitual residence and, where the victim is a juridical person, to the law of its principal place of business. Tsunashima Decl. ¶¶ 10-12. That is Santa Clara County and San Jose. The ownership of a plaintiff's shares is not a connecting factor under that provision. *Id.* ¶ 13. And the conclusion does not depend on where Defendant was when he sent the messages, because Article 19 looks to the victim rather than to where the conduct occurred. *Id.* ¶ 17. Defendant is "[t]he proponent of using foreign law" and bears "the initial burden of showing material differences." *Carijano*, 643 F.3d at 1233. He has not carried it.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

*The burdens of proving California law in Japan.* Defendant's expert describes what would follow. A Japanese court applying foreign law would "interpret the foreign laws by examining documentary evidence produced from both parties with Japanese translation and obtaining opinions of an expert in writing, orally, or by cross-examination." ECF No. 28-1 ¶ 17. He offers that as reassurance. As a description of process it is the point. Every submission would be in Japanese, English records would require translation, interpreters would be needed for testimony on United States law, and the proceedings would lengthen accordingly. Tsunashima Decl. ¶¶ 20-21. Article 22 would then confine the result, requiring a plaintiff proceeding under California law also to establish a tort under Japanese law and permitting recovery only of remedies Japanese law allows. *Id.* ¶¶ 18-19; *see* ECF No. 28-1 ¶ 30. This Court applies California law without any of that.

A court in this District weighed the same considerations in a suit against Japanese defendants and retained the case. *Creager v. Yoshimoto*, No. 05-cv-01985-JSW, 2006 WL 680555 (N.D. Cal. Mar. 14, 2006). Even assuming Japan was an adequate forum, the court observed that "presentation to a judge in Tokyo would still require translation of the documents, while presentation to a United States jury would not," and held that defendants "have not carried their heavy burden to demonstrate that the balancing of factors strongly favors dismissal for trial in Japan." *Id.* at *7.

**D. Defendant Has Not Shown Japan to Be Clearly Superior**

The question is not whether a Japanese court could hear a case. It is whether Defendant has shown that the private and public factors *strongly* favor sending this one there. *Lueck*, 236 F.3d at 11445. On this record they do not. The plaintiffs are domestic and at home. The witnesses, the records, the damages proof, and the decision-making functions are in California. California law would govern in either forum, and proving it in Japan would require translation, expert testimony on American law, and acceptance of Japanese remedial limits, in a proceeding that would cost roughly USD 487,625 to commence. Defendant offers assertion where the doctrine requires a showing.

What Defendant actually submits is three declarations, each confined on its face to the forum non conveniens ground. ECF No. 28-1 ¶ 2. ECF No. 28-8 ¶ 1. ECF No. 28-16 ¶ 1. Counsel's

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

is made on the matters of public record and attaches seven exhibits concerning Plaintiffs rather than Defendant. The expert's opinions are "directed solely to matters of Japanese law." ECF No. 28-1 ¶ 2. Defendant's own declaration runs five paragraphs, establishes his citizenship and his consent to Japanese jurisdiction, and identifies no witness, no document, no cost, and no location. A movant who offers no specifics on whom he would call, what they would say, or what litigating here would cost has not met the burden the doctrine imposes. *Pepper*, 2015 WL 7720922, at *5.

If the Court were nonetheless inclined to dismiss, any dismissal should be conditioned on Defendant's submission to jurisdiction in Japan, his waiver of any limitations defense, and his agreement to make discoverable in Japan the evidence that would be discoverable here, with the case subject to reinstatement if the Japanese forum proves unavailable. Conditions of that kind are the ordinary means of protecting a plaintiff relegated to a foreign court, *see Ceramic Corp. of Am. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993), and their absence here is itself a reason for caution, *see Carijano*, 643 F.3d at 1224 (harshness of dismissal "especially pronounced" where the court "declines to place any conditions upon its dismissal").

## IV. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Plaintiffs rely on specific jurisdiction. On a Rule 12(b)(2) motion decided without an evidentiary hearing, a plaintiff need make only a prima facie showing, and conflicts in the affidavits are resolved in the plaintiff's favor. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Defendant submitted no declaration disputing Plaintiffs' asserted California contacts, identifying his location when the challenged communications were sent, or supplying facts that overcome Plaintiffs' prima facie showing. Each of his three declarations is limited on its face to the forum non conveniens ground. ECF No. 28-1 ¶ 2; ECF No. 28-8 ¶ 1; ECF No. 28-16 ¶ 1. The allegations that he serves as chief executive officer, manager or member, and agent for service of process of a limited liability company at a San Mateo address, and that he transacts business in the United States, stand unrebutted. Compl. ¶¶ 7, 12.

There is a further and independent route to the same result. A defendant who commits an intentional tort while physically present in the forum has purposefully availed himself of it, and

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

the *Calder* effects test is then not the governing frame. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603-04 (9th Cir. 2018). Defendant's acceptance of a local in-person meeting the next day supports a reasonable inference that he was in, or imminently present in, California during the short period in which the messages were sent. He has not said otherwise. Plaintiffs do not rest on that inference, and the Court need not draw it, because the *Calder* analysis that follows is satisfied on the alleged contacts regardless of where Defendant was sitting.

The result is the same under *Calder v. Jones*, 465 U.S. 783 (1984). Defendant is alleged to have aimed statements about a Santa Clara County resident and a San Jose company at the California venture capital community on which their business depends, knowing the injury would be felt here. This is not *Walden v. Fiore*, 571 U.S. 277 (2014), where the defendant's only connection to Nevada was the plaintiffs' residence and "no part of [his] course of conduct occurred in" the forum. *Id.* at 288. Here Defendant is alleged to run a California company from a California address, holds a Stanford appointment, is publicly described as working back and forth to Silicon Valley, and accepted an in-person meeting in this District the day after the statements. Compl. ¶¶ 7, 12; Armstrong Decl. ¶¶ 3-11, 17-18; ECF No. 11-1 ¶ 5 & Ex. B. The claims arise out of and relate to that conduct, because the tort is the sending of the messages and the injury is the loss of California business relationships.

Defendant's public account of himself and his litigating position cannot both be right. To the audiences he wishes to reach he is a Silicon Valley venture investor. He holds an appointment at Stanford and moderated panels on its campus. He is alleged to serve as chief executive officer of a California company at a San Mateo address that is also the address of a Silicon Valley venture fund. And in May 2026, months after this action was filed, the agency that books his speaking engagements told the public that he works going back and forth to Silicon Valley. Compl. ¶¶ 7, 12; Armstrong Decl. ¶¶ 3-11, 17-18 & Exs. A-E, H. To this Court he represents that he is a Japanese resident whose dispute has nothing to do with California. A party cannot trade on his association with a forum when it is profitable and disclaim it when it is inconvenient. The Court may weigh Defendant's own public representations about where he works against the position he takes on this motion, particularly where he has submitted no declaration denying any of them.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Where a defendant is not physically present in the forum, purposeful direction is assessed under a three-part test drawn from *Calder*. The defendant must have committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered there. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). Each element is alleged. Sending the messages was an intentional act. They concerned a Santa Clara County resident and a San Jose company and were directed at the community of investors and institutions on which those Plaintiffs depend. And the harm, the loss of California fund commitments, sponsorships, and investor relationships managed from San Jose, was the foreseeable and intended consequence. Compl. ¶¶ 20-28, 36, 41; Uzzaman Decl. ¶¶ 25-28.

Defendant argues that jurisdiction would be unreasonable. Once purposeful direction and relatedness are shown, the burden shifts to the defendant to "present a compelling case" that jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. A defendant who maintains a California business address, an appointment at a California university, and a practice of traveling here cannot show that answering in California is unreasonable. *See Pepper*, 2015 WL 7720922, at *4 ("Because the subject of the lawsuit is a business interaction based in California, the Court finds that defendants have not demonstrated that the exercise of jurisdiction is unreasonable.").

## V. DEFENDANT'S RULE 12(b)(6) CHALLENGE FAILS AS TO EVERY CLAIM

### A. Defendant's Authorities Apply an Evidentiary Standard That Does Not Govern This Motion

The decisions on which Defendant principally relies for both the opinion and special-damages arguments were decided under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, where the plaintiff must come forward with admissible evidence sufficient to sustain a favorable judgment. This is a motion under Rule 12(b)(6), where Plaintiffs bear no evidentiary burden and the Complaint's well-pleaded allegations are accepted as true. The Ninth Circuit has foreclosed importing the one standard into the other even where an anti-SLAPP motion is filed, holding that a challenge to "only the legal sufficiency of a claim" is decided under Rule 12(b)(6) and that a factual challenge requires that "discovery must be allowed" first. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir. 2018), *amended by*

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

897 F.3d 1224 (9th Cir. 2018). To do otherwise "would effectively allow the state anti-SLAPP rules to usurp the federal rules." *Id.* at 834.

**B. The Statements Are Not Protected Opinion**

A statement is actionable if it "is sufficiently factual to be susceptible of being proved true or false," and calling it an opinion does not immunize it. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). "Simply couching such statements in terms of opinion does not dispel these implications." *Id.* at 19. Statements of opinion are protected unless they "imply a false assertion of fact," and a statement is factual where the words "have specific, well-defined meanings and describe objectively verifiable matters." *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995). An opinion "loses its constitutional protection and becomes actionable when it is 'based on implied, undisclosed facts' and 'the speaker has no factual basis for the opinion.'" *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 972 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015).

Whether a venture capital firm is legitimate is a matter of verifiable fact. It has funds, investors, portfolio companies, and a record of deployed capital, or it does not. A statement to the companies and institutions on which Plaintiffs' business depends that Uzzaman is not a legitimate venture capitalist conveys to that audience that there is something the speaker knows about Plaintiffs' operations that they do not. Defendant disclosed no facts supporting the charge. At the pleading stage that is enough, and the Court need not resolve the question on this record. *Yagman*, 55 F.3d at 1438.

**C. The Trade Libel and Special-Damages Allegations Are Sufficient at the Pleading Stage**

Trade libel requires a knowingly false statement disparaging the quality of the plaintiff's business, published to a third person, that plays a substantial part in inducing others not to deal with the plaintiff and causes pecuniary loss. The Complaint pleads each element. It alleges the statement, its falsity, its publication to Professor Yamada and to other companies and institutions, and the resulting loss of identified relationships. Compl. ¶¶ 20-28, 36, 41.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

The Complaint identifies the speaker, the recipient, the date, the medium, and the substance of the June 9, 2024 communications, and attaches the recipient's declaration as Exhibit A. Compl. ¶¶ 20-28 & Ex. A. It alleges that comparable statements were made to other companies and institutions. It identifies the lost corporate venture capital fund negotiations with Idemitsu and with DIC, both of which had reached an advanced stage, and it pleads the resulting revenue loss. Compl. ¶¶ 28, 36, 41. Defendant's demand that Plaintiffs identify every lost customer and transaction by name is drawn from decisions resolving evidentiary records, not from the pleading standard. Plaintiffs have pleaded the loss of identified relationships and the amount of the resulting harm, which is what Rule 9(g) requires.

Defendant's further point is arithmetic. He observes that the three categories itemized in the Complaint total roughly $221.8 million while the Complaint pleads losses exceeding $450 million, and he argues that the gap defeats the claim. It does not. Rule 9(g) governs special damages, and it requires that those damages be specifically stated, not that a plaintiff's itemized special damages equal the total relief sought. The three categories are pleaded as identified components of a larger injury, and the balance reflects general damages and further pecuniary loss to be established by proof. Compl. ¶¶ 28, 36, 41. A complaint is not defective because the losses it can itemize at the pleading stage do not sum to the damages it expects to prove.

Defendant's premise is that the Complaint identifies no specific statement. It does. The Complaint alleges that on June 9, 2024 Defendant sent messages to Professor Jin-ichiro Yamada of Kyoto University conveying that Uzzaman is not a legitimate venture capitalist, and it attaches the recipient's own declaration as Exhibit A. Compl. ¶¶ 24-26 & Ex. A. That supplies the speaker, the recipient, the date, the medium, and the substance, which is precisely what Defendant's authorities require. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. 10-cv-02066-SI, 2010 WL 5141843, at *5 (N.D. Cal. Dec. 13, 2010). His argument addresses the further allegations concerning Idemitsu and DIC while passing over the identified communication on which the claim rests.

Professor Yamada's declaration supplies each particular Defendant says is missing. He states that on June 9, 2024 Defendant sent him LINE messages alleging improprieties in the

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

presentation of the scheduled keynote speaker on the Startup World Cup website, claimed this could damage Kyoto University's reputation, and urged the university to withdraw its support. Compl. Ex. A ¶ 5(c). He states that in further LINE messages the same day Defendant "claimed Uzzaman was not a legitimate venture capitalist and attempted to undermine his credibility." *Id.* ¶ 5(d). He reproduces screenshots of the messages themselves. *Id.* ¶¶ 5(c)-(d). The Complaint and Professor Yamada's sworn declaration therefore identify the speaker, the recipient, the date, the medium, and the substance of the messages, and the attached screenshots corroborate that sworn account. Professor Yamada further describes an earlier meeting Defendant requested in Osaka in March 2023, at which Defendant spoke negatively about Plaintiffs and sought to dissuade him from working with them, and repeated efforts to discourage the university from co-organizing the 2024 Kyoto regional event. *Id.* ¶¶ 5(a)-(b). A complaint that attaches the recipient's sworn account and the messages themselves is not one that fails to identify the statement sued upon.

Defendant also contends that a statement about Uzzaman's professional legitimacy concerns a person rather than the quality of Pegasus's services. The distinction does not hold on these facts. What Pegasus sells is the deployment and stewardship of investor capital by its principals. A statement to prospective corporate investors that the firm's founder is not a legitimate venture capitalist is a statement about the reliability of that service, and it is difficult to imagine a charge more directly calculated to induce them not to deal with the firm. To the extent the statement is understood as being about Uzzaman personally, he is a plaintiff in his own right and pleads that injury as his own.

Rule 9(g) requires that special damages "be specifically stated." It does not require a plaintiff to name every lost customer before discovery. The Complaint identifies the two corporate venture capital fund negotiations that were lost, names the counterparties, and pleads the amount of the resulting harm. Compl. ¶¶ 28, 36, 41. A plaintiff who identifies the specific transactions lost and the magnitude of the loss has stated special damages with the particularity the Rule demands. Whether Plaintiffs can ultimately prove causation as to each relationship is a question for summary judgment or trial, not for the pleadings.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Defendant's actual-malice argument asks for a particularity the Rules do not impose. Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Complaint alleges that Defendant knew his statements were false or acted with reckless disregard for their truth, and it pleads the surrounding circumstances from which that state of mind may be inferred, including that Defendant is a competing venture investor who made the statements to the companies and institutions on which Plaintiffs' business depends. Compl. ¶¶ 18, 20-28, 34. That Professor Yamada does not profess to know Defendant's motivations is beside the point. A recipient's inability to explain why a speaker said something is not evidence that the speaker believed it to be true, and in any event the Court does not weigh evidence on this motion.

**D. The Interference Claim Is Adequately Pleaded**

Intentional interference with prospective economic advantage requires an economic relationship with the probability of future economic benefit, the defendant's knowledge of it, an intentional and independently wrongful act designed to disrupt it, actual disruption, and resulting damage. The independently wrongful act here is the same disparagement pleaded as trade libel, which supplies the wrongfulness element. The Complaint alleges that Defendant, a competitor in the same venture capital market, knew of Plaintiffs' relationships with the companies and institutions to which he spoke, and that the negotiations then ended. Compl. ¶¶ 20-28. Defendant's argument that the claim fails because the disparagement claim fails therefore rises and falls with the argument addressed above.

**E. Uzzaman's Individual Claim and the UCL Claim Are Adequately Pleaded**

Statements that a named individual is not a legitimate venture capitalist injure that individual in his profession, and he may sue for that injury in his own name. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir. 1996). Uzzaman is not suing derivatively for a diminution in the value of his shares. He is suing for statements made about him personally to the community in which he works. As to the unfair competition claim, it rests on the same alleged unlawful acts of trade libel and intentional interference, which supply the predicate under the unlawful prong. Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that those acts caused the loss of business

opportunities, fund commitments, sponsorships, and investor relationships, which is lost money or property. And the relief Plaintiffs seek under the statute is the relief the statute authorizes, namely an injunction against continued disparagement and interference, together with restitution, rather than damages. Compl., Prayer ¶¶ D-E. *See* Cal. Bus. & Prof. Code § 17203.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion in its entirety. In the alternative, and without conceding any pleading deficiency, Plaintiffs request leave to amend any claim the Court concludes requires greater factual detail.

Dated: August 24, 2026

Respectfully submitted,

/s/ *Jeremiah A. Armstrong*

Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: 415-296-7070
Facsimile: 415-449-6301

*Attorneys for Plaintiffs Md Anis Uzzaman and Pegasus Tech Ventures, Inc.*

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301