QUINN EMANUEL URQUHART & SULLIVAN, LLP
Dawn Y. Yamane Hewett (DC Bar No. 984923) (*pro hac vice*)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Justin C. Griffin (Bar No. 234675)
Scott Schlafer (Bar No. 335708)
justingriffin@quinnemanuel.com
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>YASUMASA YAMAMOTO, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 5:26-cv-00945-NC<br><br>**DEFENDANT YASUMASA YAMAMOTO'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT; RESPONSE TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION**<br><br>Judge: Hon. Nathanael M. Cousins<br>Hearing Date: September 16, 2026<br>Time: 11:00 a.m. |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
ARGUMENT ........ 2
I. PLAINTIFFS DO NOT REBUT YAMAMOTO'S *FORUM NON CONVENIENS* SHOWING ........ 2
A. Plaintiffs Do Not Contest That Japan Is Adequate ........ 2
B. *Cooper* and *Carijano* Do Not Support Plaintiffs Because Neither Involved a Plaintiff Whose Business Is Built in the Foreign Forum ........ 2
C. The Private-Interest Factors Strongly Favor Japan ........ 3
D. The Public-Interest Factors Strongly Favor Japan ........ 5
II. PLAINTIFFS CANNOT ESTABLISH SPECIFIC JURISDICTION ........ 6
A. Plaintiffs' Physical-Presence Theory Rests Entirely on a Date That Appears Nowhere in Their Own Document ........ 6
B. *Freestream* Does Not Apply to This Case and the Alleged Tort Was Not Committed in California Even According to Plaintiffs' Own Framing ........ 7
C. Plaintiffs Provide No Evidence that Yamamoto Spoke with Any California Contact ........ 8
D. All Remaining California Contacts Alleged by Plaintiffs Are Unrelated to Any Claim They Plead ........ 8
III. ALL THREE CLAIMS FAIL UNDER RULE 12(B)(6) ........ 9
A. Plaintiff Uzzaman Lacks Standing on Every Claim ........ 9
B. The Trade Libel Claim Fails ........ 9
1. Plaintiffs' Anti-SLAPP Objection Is a Red Herring ........ 9
2. The Alleged Statements Are Non-Actionable Opinion ........ 10
3. Plaintiffs' Remaining Arguments Do Not Rescue the Trade Libel Claim ........ 11
C. The Intentional Interference and Unfair Competition Claims Fail ........ 13
1. Plaintiffs' Intentional Interference and UCL Claims Fail Because Their Trade Libel Claim Fails ........ 13
2. Plaintiffs Have Abandoned Their Intentional Interference Claim ........ 13
3. Plaintiffs Have Also Abandoned Their UCL Claim ........ 14

IV. THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ........ 15
V. CONCLUSION ........................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019) ........ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597 (9th Cir. 2018) ........ 7

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986) ........ 13

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ........ 8

*Calder v. Jones*, 465 U.S. 783 (1984) ........ 8

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) ........ 2, 3

*Cas. Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596 (9th Cir. 1992) ........ 8

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446 (9th Cir. 1990) ........ 3

*Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193 (9th Cir. 2017) ........ 2, 3

*Davis v. Metro Prods., Inc.*, 885 F.2d 515 (9th Cir. 1989) ........ 9

*First Advantage Background Services Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929 (N.D. Cal. 2008) ........ 10, 11, 13

*Foman v. Davis*, 371 U.S. 178 (1962) ........ 15

*Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375 (2004) ........ 10

*Gopher Media LLC v. Melone*,
2023 WL 8790266 (S.D. Cal. Dec. 19, 2023) .......... 10, 11

*Gordy v. Daily News, L.P.*,
95 F.3d 829 (9th Cir. 1996) .......... 9

*Hellenic Petroleum, LLC v. Sacramento Energy Resources*, *LLC*,
2019 WL 4747794 (E.D. Cal. 2019) .......... 10, 11

*Isr. Disc. Bank Ltd. v. Schapp*,
505 F. Supp. 2d 651 (C.D. Cal. 2007) .......... 5

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998) .......... 12

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) .......... 7

*Kenney v. Wells Fargo Bank, N.A.*,
791 F. Supp. 3d 1163 (C.D. Cal. 2025) .......... 9

*Kilopass Technology Inc. v. Sidense Corp.*,
2010 WL 5141843 (N.D. Cal. Dec. 13, 2010) .......... 10, 11, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......... 14

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 9

*Lamontagne v. Craig*,
632 F. Supp. 706 (N.D. Cal. 1986), *aff'd*, 817 F.2d 556 (9th Cir. 1987) .......... 8

*Lockman Found. v. Evangelical All. Mission*,
930 F.2d 764 (9th Cir. 1991) .......... 2

*Mann v. Quality Old Time Serv., Inc.*,
139 Cal. App. 4th 328 (2006) .......... 11

*Muddy Waters, LLC v. Superior Court*,
62 Cal. App. 5th 905 (2021) .......... 12

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) .......... 15

*NPK Industries v. Hunter*,
2015 WL 5461667 (N.D. Cal. Sept. 16, 2015) .......... 12

*Overhill Farms, Inc. v. Lopez*,
190 Cal. App. 4th 1248 (2010) .......... 10

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) .......... 10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018), *amended by* 897 F.3d 1224 (9th Cir. 2018) .......... 10

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......... 3

*Reid-Walen v. Hansen*,
933 F.2d 1390 (8th Cir. 1991) .......... 3

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 8

*Shull v. Ocwen Loan Servicing, LLC*,
2014 WL 1404877 (S.D. Cal. Apr. 10, 2014) .......... 14

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
983 F. Supp. 1303 (N.D. Cal. 1997) .......... 14

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
521 F. Supp. 3d 929 (S.D. Cal. 2021) .......... 14

*Song v. Drenberg*,
2019 WL 1998944 (N.D. Cal. May 6, 2019) .......... 14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 14

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 7

*Standing Committee on Discipline v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) .......... 10

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 7

*Sussman v. Bank of Isr.*,
801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993) .......... 3

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) .......... 2

*Urban Textile, Inc. v. A&E Stores, Inc.*,
2014 WL 3955173 (C.D. Cal. Aug. 11, 2014) .......... 8

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) .......... 14

*Weintraub Fin. Servs., Inc. v. Boeing Co.*,
2020 WL 6162801 (C.D. Cal. Aug. 7, 2020) .......... 14

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
42 Cal. App. 4th 507 (1996) .......... 14

*Zhang v. Superior Court*,
57 Cal. 4th 364 (2013) .......... 14

**Rules**

Fed. R. Civ. P. 8 .......... 8

Fed. R. Civ. P. 9(b) .......... 13

Fed. R. Civ. P. 9(g) .......... 12, 13

Fed. R. Civ. P. 12(b)(6) .......... 1, 9, 10, 11

# INTRODUCTION

Yamamoto's Motion showed that this case belongs in Japan, that this Court lacks personal jurisdiction over a Japanese defendant, and that the Complaint fails to state a claim. The Opposition failed to prove otherwise.

On ***forum non conveniens***, the witnesses Plaintiffs offer to bolster their argument actually show that they lack relevant evidence and could not supply it even if given leave to amend.

On ***personal jurisdiction***, Plaintiffs wave a collection of stale and remote contacts with California, but do not even attempt to argue relatedness of these contacts, a requirement for specific jurisdiction.

On ***Rule 12(b)(6)***, Plaintiffs cite almost no caselaw in support of their Opposition. They still identify no statement other than the LINE messages to Professor Yamada, which remain untranslated to this day. Even putting aside that no loss claimed by Plaintiffs arose from the LINE messages, a long line of California and Ninth Circuit authority holds that subjective evaluation and rhetorical hyperbole are not actionable, and that opinion resting on disclosed facts is protected unless those facts are themselves false. Plaintiffs do not address these cases at all. The underlying facts are not in dispute, as the Complaint admits that the Quibi investment failed. Compl. ¶¶ 18, 26. Plaintiffs only argue that it "was not the result of poor investment judgment." *Id.* ¶ 34. That is a disagreement about evaluation, which precisely shows why the alleged statements are not actionable.

In any case, trade libel requires disparagement of the quality of the business's goods or services. Plaintiffs concede that the statement was "about Uzzaman personally." Opp. 16. Uzzaman himself confirms that every so-called pecuniary loss the Complaint pleads, the fund commitments, the sponsorships, the investor relationships, "was sustained by Pegasus Tech Ventures, Inc." Uzzaman Decl. ¶¶ 28–29. Uzzaman, who has incurred no loss of his own, cannot pursue the trade libel claim, nor can Pegasus, about whose product or service nothing was said. Because the intentional interference and UCL claims rest on that same alleged disparagement, they fail with it as well.

## ARGUMENT

## I. PLAINTIFFS DO NOT REBUT YAMAMOTO'S *FORUM NON CONVENIENS* SHOWING

### A. Plaintiffs Do Not Contest That Japan Is Adequate

Plaintiffs do not contest that Yamamoto is amenable to suit in Japan, that he has consented to jurisdiction there, or that Japanese law supplies a cause of action for claimed injury. That ends the inquiry. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006); *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 n.3 (9th Cir. 1991).

Plaintiffs nonetheless add that the forum "must offer some genuine avenue for redress" and that Article 22 of Japan's choice-of-law statute would require them to establish a Japanese tort and limit their remedies. Opp. 4. That misstates the law. *Ceramic Corp. of Am. v. Inka Maritime Corp. Inc.*—Plaintiffs' own authority—holds that a forum fails only in "rare circumstances" where the remedy "is no remedy at all," and explains that "[a] court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum." 1 F.3d 947, 949 (9th Cir. 1993). Plaintiffs' expert never says Japanese law affords no remedy. He assumes they may sue in Japan for the full $450 million pleaded in the Complaint. Tsunashima Decl. ¶ 24. And *Ceramic* approved a conditional dismissal *to Japan* where the defendant consented to Japanese jurisdiction and waived limitations defenses: the conditions Yamamoto explicitly agreed to in his first declaration. 1 F.3d at 949–50; Yamamoto Decl. ¶ 5.

### B. *Cooper* and *Carijano* Do Not Support Plaintiffs Because Neither Involved a Plaintiff Whose Business Is Built in the Foreign Forum

Plaintiffs rest their deference argument on *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193 (9th Cir. 2017), and *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011). Opp. 4–6. Their facts are not applicable here. The *Cooper* plaintiffs were Navy servicemembers exposed to radiation while deployed near the Fukushima Daiichi plant, whose connection to Japan was involuntary and whose medical conditions the district court found would make travel there especially difficult. 860 F.3d at 1197, 1211. In *Carijano* the defendant was headquartered in Los Angeles County, which is why the court called the chosen forum "the defendant's home

jurisdiction." 643 F.3d at 1222, 1229. Yamamoto, by contrast, is a Japanese national, whose "permanent residence and center of domestic life" is in Tokyo, as Plaintiffs admit. Compl. ¶ 12.

Unlike the *Cooper* plaintiffs, Plaintiffs here go to Japan by choice and for profit. Uzzaman does not deny that both his bachelor's degree and PhD are from Japanese universities, that he holds an appointment at Kyoto University where he teaches in person, or that he travels to Japan for business because Pegasus's investors are Japanese, Uzzaman Decl. ¶¶ 9–12, or that he writes to his professional audience in Japanese. *See* Hewett Decl. Ex. 5. Nor do Plaintiffs refute that Pegasus maintains a Tokyo office, that it is at least 75% owned by a Japanese parent company, or that it builds its flagship business around Japanese corporate partners. *Id.* Exs. 1–2, 6–7.

The Opposition responds that the Japanese parent is "solely a share-holding company" and is itself owned by a Delaware entity. Opp. 2; Uzzaman Decl. ¶ 19. That does not explain why Plaintiffs incorporated a holding company in Tokyo and opened an office in Tokyo, or why the Pegasus website is offered in English and Japanese and in no other language. Hewett Decl. Ex. 7. Nor does it explain their own contention that Yamamoto spoke to "the companies and institutions on which their business depends," Opp. 1, every one of which is Japanese, Compl. ¶¶ 23, 26. Where a plaintiff "does extensive business in the foreign country," its "ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished." *Sussman v. Bank of Isr.*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993); *accord Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991). Plaintiffs engage with none of these authorities.

### C. The Private-Interest Factors Strongly Favor Japan

**Witnesses**. Plaintiffs claim that Professor Yamada is "the only identified witness abroad" while arguing that Yamamoto "does not name a single witness he would call in Japan." Opp. 6. He need not. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). The Complaint already identifies twenty-two individuals—other than Professor Yamada—affiliated with Japanese corporations, Kyoto University, and the Kyoto Prefectural government, each allegedly connected to the CVC fund negotiations or the 2024 Startup World Cup regional events. Compl. ¶¶ 20, 21, 23, 27.

The Opposition brushes aside the individuals their own Complaint identified as the people who matter and substituted seven new ones appearing nowhere in the Complaint. Uzzaman Decl. ¶ 22. The sole qualification offered for these purported witnesses is that they may know Defendant—a conjecture Uzzaman advances without any stated basis. *Id.* ¶¶ 22(a)–(d), 30. Uzzaman then claims that because "Plaintiffs allege that Defendant made comparable statements to other companies and institutions," these purported witnesses "are expected to have knowledge of those communications and of the persons who received them." *Id.* ¶ 23. However, the content of the statements and the persons who received them are facts the Complaint was required to supply. Plaintiffs also fail to explain how these purported witnesses—individuals not alleged to have had any role in the events and negotiations the Complaint placed at issue—could speak to whether the allegedly "comparable" statements were made at all, to whom they were made, whether they were false, whether they caused anyone to withdraw, or what Plaintiffs lost as a result. Plaintiffs' post hoc list does not move the material evidence, which remains with the Japanese counterparties the Complaint identifies.

**Compulsory process**. Plaintiffs do not dispute that U.S. courts have no compulsory power in Japan, that Japan is not a party to the Hague Evidence Convention, that evidence from unwilling Japanese custodians is obtainable, if at all, only by letters rogatory through MOFA, that even voluntary depositions must be arranged through MOFA and taken at a U.S. consular post, or that Japan treats unauthorized foreign evidence-taking on its soil as an infringement of sovereignty. 1st Yamasaki Decl. ¶¶ 33–37. Nor do they dispute that Section 1782 would still give them access to discovery in the United States from Japan while no reciprocal mechanism exists in Japan.

**Documents**. Plaintiffs argue that *their own* files sit in San Jose. Opp. 3, 6–7. However, to show causation, what matters is third-party evidence, here, Japanese counterparties' documents reflecting their decision to withdraw from the alleged negotiations with Pegasus or from Kyoto Startup World Cup events for the reason Plaintiffs assert. Mot. 6–7. Plaintiffs do not deny that this third-party documentary evidence is outside the compulsory power of this or any U.S. court.

**Enforceability of Judgment**. Plaintiffs likewise offer no answer to the showing that a California judgment may not be recognized in Japan based on a lack of jurisdiction and/or defective service. 1st Yamasaki Decl. ¶¶ 39–42.

### D. The Public-Interest Factors Strongly Favor Japan

**Local interest**. Plaintiffs argue that the local-interest factor favors California, Opp. 8, but local interest turns on where the controversy's "center of gravity" lies, not on where the plaintiff resides. *Isr. Disc. Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 661–62 (C.D. Cal. 2007). Every relationship said to have been lost was a relationship with a Japanese counterparty; and the only communication Plaintiffs identify in their Complaint or Opposition was sent in Japanese to a professor in Japan. Compl. ¶¶ 23, 26, 27. The Motion demonstrated Japan's strong interest in resolving this dispute through its own courts, including in applying its own law to the dispute and in controlling the taking of evidence within its territory. 1st Yamasaki Decl. ¶¶ 30–31, 33–37. The Opposition does not contest any of it.

**Choice of law**. Plaintiffs argue that a Japanese court would apply California law under Article 19 of Japan's choice-of-law statute, because California is where the injury was felt. Opp. 8–9. However, Article 20 of the same statute displaces Article 19 where the tort is obviously more closely connected to another place—as here, where every party but Plaintiffs is Japanese, the statements were made in Japanese to Japanese recipients, and the claimed injury to reputation arose through Japanese institutions and counterparties. 2d Yamasaki Decl. ¶ 3. The dispute is academic in any event, as Plaintiffs' own expert explains: Article 22 requires a plaintiff proceeding under California law also to establish a tort under Japanese law, and permits recovery only of remedies Japanese law allows. Tsunashima Decl. ¶¶ 18–19; Opp. 10. A Japanese court would therefore apply Japanese law to the elements and to the remedy whichever law it selected. 2d Yamasaki Decl. ¶ 4.

**Translation costs**. Plaintiffs say that "the English records would have to be translated" in Japan, Opp. 10, without ever acknowledging that the alleged statements would have been made to Japanese recipients by a Japanese speaker and the internal documents at the six identified Japanese companies about their investment decisions—if obtainable at all—are almost certainly in Japan and in Japanese. Plaintiffs never actually establish that they conducted business in English, and the record indicates otherwise. *See, e.g.*, ECF No. 11-1 Ex. A; Hewett Decl. Ex. 5.

**The court filing fee**. Plaintiffs' invoked burden in litigating in Japan is of their own making. Their expert concedes that "a smaller claim would carry a proportionately smaller fee." Tsunashima

Decl. ¶ 24. Moreover, should Plaintiffs prevail in Japan, they would be entitled to recover the filing fee from Yamamoto. 2d Yamasaki Decl. ¶ 6.

## II. PLAINTIFFS CANNOT ESTABLISH SPECIFIC JURISDICTION[1]

### A. Plaintiffs' Physical-Presence Theory Rests Entirely on a Date That Appears Nowhere in Their Own Document

Plaintiffs' jurisdictional argument is premised on their assertion that the LINE messages were sent by Yamamoto to Professor Yamada on June 9, 2024. Opp. 3, 7, 15; Suppl. Sub. 3. They then point to an email of June 10, 2024, in which Yamamoto purportedly accepted a meeting in this District. ECF No. 11-1 ¶ 5 & Ex. B. From the proximity of those two dates, they ask the Court to infer that Yamamoto was "in, or imminently present in, California" when the messages were sent. Opp. 1, 12. At the same time, Plaintiffs state that "the Court need not draw" any inference about his presence and that the jurisdictional analysis holds "regardless of where Defendant was sitting." Opp. 12. Yamamoto agrees.[2]

Besides that the LINE messages remain untranslated despite Plaintiffs' opportunity to cure, the screenshots reproduced in Yamada's declaration themselves bear the date stamps reading April 25 and April 26,[3] nearly six weeks before the alleged June 9, 2024 date.[4] Compl. Ex. A ¶¶ 5(c), (d). Despite this, Plaintiffs doubled down on the June 9 date in the Opposition, Opp. 3, 6, 15, and Request for Admission No. 18, which asked Yamamoto to admit that he sent LINE messages to Professor

---

[1] This Section also responds to Plaintiffs' Supplemental Submission (ECF No. 33-2) ("Suppl. Sub.") to which Yamamoto's response is due concurrently with this Reply. *See* ECF No. 34.

[2] In the interest of precision, Yamamoto clarifies one aspect of his opening papers. The Motion at points described the operative conduct as having occurred "entirely" in Japan without qualification. Mot. 14, 25. Yamamoto withdraws the statements that imply that he was in Japan at all relevant times during the period the Complaint places at issue, notwithstanding the fact that he affirms that he has always been domiciled in Japan. In any event, neither ground of this Motion depends on where Yamamoto was when he made any given statement. The *forum non conveniens* analysis turns on where material witnesses and records are; the personal jurisdiction analysis turns on whether Plaintiffs' claims arise out of or relate to Yamamoto's alleged California contacts.

[3] In particular, the messages Plaintiffs characterize as "conveying that Uzzaman is not a legitimate venture capitalist," Opp. 15, appear *above* the date stamp reading "4.26," Compl. Ex. A ¶ 5(d), indicating that they were necessarily sent prior to April 26, 2024.

[4] The Motion took the June 9, 2024 date as pleaded, and showed that the LINE messages, even assumed to be sent on that date, could not have caused Plaintiffs' claimed loss, because the Kyoto regional event was held on May 21, 2024, Mot. 22; Compl. Ex. A ¶ 4(d).

Yamada "on June 9, 2024." Plaintiffs even filed a Supplemental Submission insisting that Professor Yamada "has sworn that he received those messages on that date and has reproduced screenshots of them," and invited the Court to resolve the issue against Yamamoto's denial. Suppl. Sub. 4. A document that the pleading incorporates controls over allegations it contradicts, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and allegations contradicted by such documents are not accepted as true, *Steckman v. Hart Brewing*, *Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

### B. *Freestream* Does Not Apply to This Case and the Alleged Tort Was Not Committed in California Even According to Plaintiffs' Own Framing

Yamamoto will not speculate as to the reasons for such repeated mistakes, but in any event whether the correct date is late April or June 9, and whether Yamamoto was in California or Japan have little bearing on the analysis.

***First***, *Freestream* turns on relatedness, not presence. The rule it drew from *Paccar* applies where "the nonresident committed the liability-producing acts while physically present in the forum state," and supports jurisdiction only "in lawsuits arising from those acts." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (citation omitted). Here, Plaintiffs do not allege that Professor Yamada withdrew from any Startup World Cup event—the speakers alleged to have withdrawn are six other people, Compl. ¶ 27—or that he had any role in the Idemitsu or DIC negotiations, *id.* ¶ 23(a)–(b). On Plaintiffs' own account, their claims arise from "comparable statements" Yamamoto allegedly made to others. Opp. 3, 15. The untranslated LINE exchange is offered only as an "evidentiary exemplar," Compl. ¶ 24, even though by their own account, Plaintiffs have had "complaints" and "multiple messages from several companies we regularly do business" since at least June 2024, ECF No. 11-1 Ex. B. None of those other statements has ever been identified or alleged to be connected to California.

***Second***, whether Yamamoto was in California or Japan on any given date is immaterial because the tort Plaintiffs allege was not committed in California even on their version of the facts. "The tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984). Because publication means communication to a third person, the "substance and consummation" of the tort occurs when and where the third person

receives, reads, and comprehends the matter complained of. *Lamontagne v. Craig*, 632 F. Supp. 706, 709 (N.D. Cal. 1986), *aff'd*, 817 F.2d 556 (9th Cir. 1987); *see Cas. Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 599 (9th Cir. 1992) (circulation in the forum is "an important factor" in the minimum-contacts analysis). The Complaint never alleges that Professor Yamada was in California when he received the messages. The same is true of the unidentified "comparable" statements on which Plaintiffs' claims actually rest. Every counterparty the Complaint names is a Japanese company, Compl. ¶ 23, and not one is alleged to have received any statement in California.

### C. Plaintiffs Provide No Evidence That Yamamoto Spoke with Any California Contact

Under *Calder*, Plaintiffs fare no better. Their express-aiming theory is that Yamamoto directed statements at "the California venture capital community." Opp. 12. But Plaintiffs do not identify a single recipient in California. *See Calder v. Jones*, 465 U.S. 783, 785, 788–89 (1984). The counterparties Plaintiffs say were lost are Idemitsu Kosan and DIC, both Japanese companies. Compl. ¶¶ 23, 26. The events alleged to have been disrupted were the regional events in Kyoto, Kyushu, and Tokyo. *Id.* ¶ 27. The speakers alleged to have withdrawn were Japanese, *id.,* and Professor Yamada teaches at Kyoto University. *Id.* ¶ 24. Notwithstanding the phrase "California venture capital community" appearing for the first time in the Opposition, the Complaint confirms that Yamamoto's "express aim was local." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004).

### D. All Remaining California Contacts Alleged by Plaintiffs Are Unrelated to Any Claim They Plead

Specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264–65 (2017). "It is insufficient that [a defendant] conducted other business with California, unrelated to plaintiff's claims." *Urban Textile, Inc. v. A&E Stores, Inc.*, 2014 WL 3955173, at *4 (C.D. Cal. Aug. 11, 2014). Plaintiffs never attempt to articulate the connection or relatedness of a 2022-23 Stanford appointment, 2023 panels, or two other venture capital firms. For example, with respect to Green Capital Management, Plaintiffs call it "beyond dispute" that the entity was registered in California and reported a San Mateo address, Suppl. Sub. 3, but they do not connect the entity to the messages to Professor

Yamada, the Startup World Cup events, or the Idemitsu and DIC negotiations, because they cannot. A corporation's forum contacts are not imputed to its officers in any event. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520–22 (9th Cir. 1989).

## III. ALL THREE CLAIMS FAIL UNDER RULE 12(b)(6)

### A. Plaintiff Uzzaman Lacks Standing on Every Claim

The Motion explains how Uzzaman pleads only derivative injury and therefore lacks standing to bring the claims he asserts. Mot. 15. Uzzaman's own declaration removes any doubt: "[t]he loss of the fund commitments, sponsorships, and investor relationships described in the Complaint was sustained by Pegasus Tech Ventures, Inc." Uzzaman Decl. ¶ 28. That accounts for every category of damages the Complaint pleads, Compl. ¶ 28, and Uzzaman identifies no relationship of his own, and no revenue stream of his own, and no pecuniary loss of his own.

Uzzaman further declares that Pegasus Tech Holdings, the parent company of Pegasus, is a subsidiary of *another* company, ASER Asset Management Company, LLC, that he controls. Uzzaman Decl. ¶ 19. He also explains that Startup World Cup, Inc. is a direct subsidiary of Pegasus. *Id.* ¶ 18. In other words, Uzzaman bases his claims on derivative harms that are at least two or three levels removed from him. That is not enough to confer standing. *See Kenney v. Wells Fargo Bank, N.A.*, 791 F. Supp. 3d 1163, 1168-69 (C.D. Cal. 2025); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). Uzzaman makes no effort to distinguish these cases. *See* Opp. 17.

Uzzaman instead relies on *Gordy v. Daily News, L.P.*, 95 F.3d 829 (9th Cir. 1996) to argue that "[s]tatements that a named individual is not a legitimate venture capitalist injure that individual in his profession, and he may sue for that injury in his own name." Opp. 17. The plaintiff in *Gordy* was the founder of Motown Records and sued for defamation. 95 F.3d at 831. Uzzaman does not bring a defamation claim (and is now time barred from doing so). The Court should dismiss Uzzaman's claims in their entirety for lack of standing without leave to amend.

### B. The Trade Libel Claim Fails

#### 1. Plaintiffs' Anti-SLAPP Objection Is a Red Herring

Plaintiffs open their Rule 12(b)(6) response for the trade libel claim by incorrectly contending (without citation) that the decisions Yamamoto "principally relies" on for opinion and

special damages "were decided under California's anti-SLAPP statute."[5] Opp. 13–14. In any case, as Plaintiffs themselves quote *Planned Parenthood*, even where an anti-SLAPP motion is filed, "the legal sufficiency of a claim" is decided under Rule 12(b)(6). *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018); *see* Opp. 13–14. Yamamoto's Motion challenges "the legal sufficiency" of Plaintiffs' claims and demonstrated that even taking every well-pleaded allegation as true, the Complaint fails to state a claim. Mot. 15–22.

2. The Alleged Statements Are Non-Actionable Opinion

The alleged statements are classic opinion: subjective, evaluative judgments "carrying no 'provably false assertion of fact.'" Mot. 18 (quoting *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010)); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1158 (9th Cir. 1995) ("statements about a lawyer's performance constitute 'subjective' statements and are not susceptible of being proved true or false"); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 389 (2004). The one opinion at issue—that Uzzaman "was not a legitimate venture capitalist"—was non-actionable, because Plaintiffs admit that Yamamoto provided the factual basis for his statement, "relying in part on the aforementioned Quibi investment by Plaintiffs." Mot. 18 (quoting Compl. ¶ 18). The Opposition offers no answer to any of these arguments. *See* Opp. 14.

***First***, Plaintiffs argue that "[w]hether a venture capital firm is legitimate is a matter of verifiable fact" because "[i]t has funds, investors, portfolio companies, and a record of deployed capital, or it does not." *Id.* Plaintiffs provide no support for their definition of the adjective "legitimate," nor do Plaintiffs address any of the cases cited in the Motion where courts found similar (or arguably worse) language non-actionable. Mot. 18-19 (citing cases).

***Second***, Plaintiffs argue that saying "Uzzaman is not a legitimate venture capitalist conveys to the audience that there is something the speaker knows about Plaintiffs' operations that they do

---

[5] None of the load-bearing authorities cited in the Motion arose under California's anti-SLAPP statute. *See, e.g.*, *First Advantage Background Services Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929 (N.D. Cal. 2008); *Kilopass Technology Inc. v. Sidense Corp.*, 2010 WL 5141843 (N.D. Cal. Dec. 13, 2010); *Hellenic Petroleum, LLC v. Sacramento Energy Resources, LLC*, 2019 WL 4747794 (E.D. Cal. 2019); *Gopher Media LLC v. Melone*, 2023 WL 8790266 (S.D. Cal. Dec. 19, 2023); *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir. 1995); *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995).

not." Opp. 14. Plaintiffs, however, expressly admit in the Complaint that the challenged statement was accompanied by a reference to Pegasus's failed Quibi investment, Compl. ¶ 18. If a person identifies widely-reported facts supporting a conclusion, there is no reason to assume the existence of additional, undisclosed facts. Plaintiffs do not explain in the Opposition why they think Yamamoto's disclosures and/or explanations are insufficient.

3. Plaintiffs' Remaining Arguments Do Not Rescue the Trade Libel Claim

***First***, Plaintiffs do not refute the distinction between defamation and trade libel: trade libel involves false disparagement of the quality of goods or services, while a statement impugning a person's reputation or professional competence sounds in defamation, Mot. 17–18, and that a business owner accordingly "may not proceed on a theory of trade libel for any allegedly false statement concerning his reputation," *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *8–9 (S.D. Cal. Dec. 19, 2023). The Opposition addresses none of those authorities. Plaintiffs instead tell the Court that "[s]tatements that a named individual is not a legitimate venture capitalist injure that individual in his profession," and that Uzzaman "is suing for statements made about him personally to the community in which he works." Opp. 17. That is precisely a description of defamation. *See Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340 (2006).

The defect forecloses Pegasus's claim as well: a statement about Uzzaman's reputation is not disparagement of Pegasus's products or services. Mot. 18; *see Hellenic Petroleum, LLC v. Sacramento Energy Res., LLC*, 2019 WL 4747794, at *4 (E.D. Cal. Sept. 30, 2019) (calling the plaintiff "untrustworthy" reflected neither "the goods it sells" nor any "service provided by" it). The Opposition does not answer that either.

***Second***, Plaintiffs continue to ignore that trade libel "must be based on specific statements" and that a plaintiff must plead "who made the statements, to whom [they] were made, the time and place of publication, and the substance of the statements." *Kilopass Tech. Inc. v. Sidense Corp.*, 2010 WL 5141843, at *5 (N.D. Cal. Dec. 13, 2010) (citation modified). Courts in this District have routinely granted Rule 12(b)(6) motions where a complaint fails to allege "to whom they made those statements, when they made the statements, or what exactly they said." *First Advantage Background*

*Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019).

Plaintiffs say the Complaint supplies "the speaker, the recipient, the date, the medium, and the substance" of the LINE exchange. Opp. 15. But that exchange is not the statement Plaintiffs sue on, as explained above. The rest of the Yamada declaration supplies less, not more. Plaintiffs invoke paragraphs 5(a)–(b)—a meeting Yamamoto requested in Osaka in March 2023 and "repeated efforts" to dissuade Professor Yamada from co-organizing the Kyoto event (which in fact proceeded). Opp. 16; Compl. Ex. A ¶ 4(d). Neither identifies a single word said.

For the alleged disparagement Plaintiffs' claims *actually* rest on—the purported statements to Idemitsu, DIC, the withdrawn speakers and sponsors, and the 63 investors—Plaintiffs supply no words, no recipient, no date, no place, and no substance. Generic allegations that a defendant said something "comparable" to something disparaging, to someone, at some point, *see* Opp. 3, 15, are what *Kilopass*, *First Advantage*, and *AlterG* held as insufficient.

***Third***, Plaintiffs have failed to plead special damages, and the Opposition concedes it. Plaintiffs first argue, without any supporting case, that Yamamoto's "demand that Plaintiffs identify every lost customer and transaction by name is drawn from decisions resolving evidentiary records, not from the pleading standard." Opp. 15. The case law says otherwise. *See NPK Industries v. Hunter*, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1043 (C.D. Cal. 1998).

The Motion explained that the Complaint's three itemized categories of damages total roughly $221.8 million while Plaintiffs plead losses "exceeding $450 million." Mot. 21; Compl. ¶¶ 28, 36, 41. Plaintiffs answer that Rule 9(g) does not require itemized special damages to equal the total sought, and that "the balance reflects general damages and further pecuniary loss to be established by proof." Opp. 15. Trade libel requires special damages. *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 925 (2021). Plaintiffs have therefore told the Court that more than half of what they seek—roughly $228 million—is a category of damages their claim does not permit. Nor are the figures Plaintiffs call specific actually specific. Mot. 20–21. The $696,666 sponsorship figure names no sponsor and no contract across three separate events, Compl. ¶ 28(a);

the $78.1 million merges three kinds of fees across two negotiations with no allocation between them, *id.* ¶ 28(b); and the $143 million rests on "63 specific corporate investors," not one of whom is named, *id.* ¶ 28(c). A lump-sum figure that makes it "impossible to determine what, if any, damage" the statements caused does not satisfy Rule 9(g). *First Advantage*, 569 F. Supp. 2d at 938.

***Fourth***, Plaintiffs argue with a straw man by asserting that "[w]hether Plaintiffs can ultimately prove causation as to each relationship is a question for summary judgment or trial, not for the pleadings." Opp. 16. The issue is whether Plaintiffs have pleaded "plausible causation" sufficient to state a claim. Mot. 1; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' vague and conclusory allegations asserting that Defendant influenced certain negotiations do not meet this burden.

***Fifth***, Plaintiffs argue that Rule 9(b) permits malice to be "alleged generally." Opp. 17. It does, but Rule 9(b) does not displace Rule 8's plausibility requirement, and Plaintiffs never explain how reliance on a "failed investment" they admit occurred is knowledge of falsity.

### C. The Intentional Interference and Unfair Competition Claims Fail

#### 1. Plaintiffs' Intentional Interference and UCL Claims Fail Because Their Trade Libel Claim Fails

Plaintiffs concede that both their claim for intentional interference with prospective economic advantage and their UCL claim are their trade libel theory relabeled. *See* Opp. 17. Because Plaintiffs fail to state a claim for trade libel, their derivative interference and UCL claims must also be dismissed. *See, e.g.*, *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042–46 (1986).

#### 2. Plaintiffs Have Abandoned Their Intentional Interference Claim

The Motion argued that Plaintiffs' interference claim should be dismissed because it failed to allege (1) an independently wrongful act, (2) a reasonable probability of future economic benefit, and (3) causation. Mot. 22-23. In response, the Opposition states, "Defendant, a competitor in the same venture capital market, knew of Plaintiffs' relationships with the companies and institutions to which he spoke, and that the negotiations then ended." Opp. 17 (citing Compl. ¶¶ 20-28). Even if true, Plaintiffs' interference claim would still fail.

As explained in the Motion, the tort of intentional interference with prospective economic advantage does not protect "overly speculative expectancies." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997) (citations omitted); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522, 524, 527 (1996); Mot. 23. Plaintiffs must therefore identify "a particular relationship or opportunity" and plead facts showing it was "reasonably probable [that] the prospective economic advantage would have been realized but for defendant's interference." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021); Mot. 23. Vague and conclusory allegations that Plaintiffs were in "multiple advanced negotiations" (Compl. ¶ 22) and those "negotiations then ended" (Opp. 17) do not even allege causation, much less meet this standard. *See, e.g.*, *Soil Retention*, 521 F. Supp. 3d at 962; *Weintraub Fin. Servs., Inc. v. Boeing Co.*, 2020 WL 6162801, at *8 (C.D. Cal. Aug. 7, 2020); *Song v. Drenberg*, 2019 WL 1998944, at *7-8 (N.D. Cal. May 6, 2019).

Plaintiffs do not even attempt to address this argument or case law. The Court may therefore dismiss Plaintiffs' interference claim as abandoned. *Shull v. Ocwen Loan Servicing, LLC*, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (similar).

3. <u>Plaintiffs Have Also Abandoned Their UCL Claim</u>

The Motion showed that Plaintiffs' UCL claim fails for six independent reasons: (1) no alleged business act or practice; no (2) unlawful, (3) unfair, or (4) fraudulent act; (5) lack of available remedy; and (6) the presumption against extraterritoriality. Mot. 24-25. The Opposition's rebuttal consists of three conclusory sentences, none of which save Plaintiffs' claim.

***First***, Plaintiffs do not dispute that the unfair and fraudulent prongs of the UCL are inapplicable here. *See* Opp. 17. ***Second***, the relief Plaintiffs seek is "an injunction against continued disparagement and interference, together with restitution, rather than damages." Opp. 18. But restitution "requires both that money or property have been lost by a plaintiff . . . and that it have been acquired by a defendant." Mot. 25 (quoting *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013) and citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) and

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Plaintiffs do not and cannot plead lost money or property that Defendant acquired as a result of unlawful business practices.

## IV. THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Plaintiffs' request for leave occupies a single conditional sentence, asking leave as to "any claim the Court concludes requires greater factual detail." Opp. 18. That framing concedes the wrong premise. The defects identified above are not defects of detail, and leave is properly denied where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

***First***, the principal defects are legal. Uzzaman pleads no losses separable from Pegasus, and the words attributed to Yamamoto by Professor Yamada do not involve Pegasus and, in any event, constitute an opinion based on true, disclosed facts. ***Second***, the LINE exchange remains untranslated, despite Plaintiffs' filed Opposition, three declarations and multiple exhibits where, ironically, each Japanese exhibit is accompanied with a proper translation. ***Third,*** even as to the unidentified statements Plaintiffs say were made to others, Plaintiffs claim that they are "comparable" to the LINE exchange, Opp. 15, making them similarly non-actionable as a matter of law. ***Fourth***, the facts Plaintiffs plead on information and belief would have been in their possession. Compl. ¶¶ 21, 23. Pegasus told Yamamoto in June 2024 that the company had received several "complaints" about his statements. Akimoto Decl. ¶ 3 & Ex. B. Twenty-two months later, none has shown up in any iterations of Plaintiffs' claims. ***Fifth***, Plaintiffs' Opposition demonstrates their inability to provide an evidentiary basis for their claims, as Plaintiffs can call no material third-party witnesses within the compulsory power of the Court who can speak to causation or damages.

## V. CONCLUSION

For the foregoing reasons, Yamamoto respectfully requests that the Court dismiss the Complaint in its entirety without leave to amend.

DATED: August 31, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Dawn Y. Yamane Hewett*

Dawn Y. Yamane Hewett
(DC Bar No. 984923) (*pro hac vice*)
dawnhewett@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Justin C. Griffin (Bar No. 234675)
Scott Schlafer (Bar No. 335708)
justingriffin@quinnemanuel.com
scottschlafer@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Yasumasa Yamamoto*