Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: 415-296-7070
Facsimile: 415-449-6301

James Wagstaffe (SBN 95535)
wagstaffe@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, California 93403
Telephone: 805-543-0990
Facsimile: 805-543-0980

Attorneys for Plaintiffs
Md Anis Uzzaman and
Pegasus Tech Ventures, Inc.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>YASUMASA YAMAMOTO, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:26-cv-00945-NC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Md Anis Uzzaman ("Uzzaman") and Pegasus Tech Ventures, Inc. ("Pegasus") (together, "Plaintiffs"), for their First Amended Complaint against Defendant Yasumasa Yamamoto ("Yamamoto"), allege as follows. Plaintiffs file this pleading with leave of Court under the Order of November 6, 2026 (ECF No. 41).

## I. NATURE OF THE ACTION

1. This is an action for trade libel, intentional interference with prospective economic advantage, and unfair competition arising from a campaign by Yamamoto, a venture investor who built his professional identity in Silicon Valley, to destroy the professional reputation of a Silicon Valley venture capitalist and the commercial reputation of the San Jose venture capital firm he founded and leads.

2. Uzzaman lives and works in Santa Clara County, California. Pegasus has its headquarters, its investment committee, its books and records, and most of its personnel in San Jose, California. The relationships Yamamoto set out to disrupt were developed and managed from San Jose, and the revenue Plaintiffs lost would have been earned there.

3. Yamamoto is not a stranger to California. Since at least 2020 he has presented himself to the Japanese business world as a Silicon Valley venture capitalist. ¶¶ 24, 29. He registered his Delaware limited liability company to transact business in California with a San Mateo principal office and named himself its chief executive officer and agent for service of process. ¶¶ 17–18. He served as an Industry Partner of a venture capital firm at that same San Mateo address. ¶ 21. He held a visiting appointment at Stanford University with an assigned campus office in this District, moderated panels on the Stanford campus, and gave an interview at Stanford that a Japanese magazine published in July 2024. *See* ¶ 23 (https://fsi.stanford.edu/people/yasumasa-yamamoto, https://wedge.ismedia.jp/articles/-/34554). He told an interviewer that he is normally in Silicon Valley (https://newspicks.com/news/5036656/body/). *See* ¶ 24. His business is selling Silicon Valley venture expertise to Japanese corporations. *See* ¶¶ 29–30. That is Pegasus's business too, and Yamamoto set out to take it.

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

4. On or about April 25, 2024, Yamamoto sent a series of unsolicited LINE messages to Professor Jin-ichiro Yamada of Kyoto University, a person Yamamoto knew was then working with Plaintiffs on the Startup World Cup Kyoto Regional Event, an event organized by Plaintiff Pegasus Tech Ventures, Inc. In those messages Yamamoto wrote, of Uzzaman, that his claimed investment experience at IBM was a false claim and that he had not been in IBM's venture investment unit. He asserted that Pegasus's corporate venture capital investing was undiversified and lacked discernment, and that those in the venture capital industry would regard it as inconceivable. He urged that the Kyoto University Graduate School of Management distance itself from Plaintiffs. On or about May 9, 2024, he reported to Professor Yamada that the featured speaker for Plaintiffs' event had withdrawn. Plaintiffs' original Complaint dated these messages June 9, 2024. That date was wrong, as explained in Part IV.D below, and Plaintiffs correct it here.

5. The accusation Yamamoto leveled is one he had himself faced. In June 2021 the Japanese business publication NewsPicks questioned the accuracy of the venture capitalist description repeatedly used in Yamamoto's books. *See* ¶ 57. Three years later Yamamoto directed that same charge at a competitor.

6. The statements were false, they were statements of verifiable fact rather than opinion, and they were made to the audiences whose confidence Plaintiffs' California business depended upon. Advanced negotiations collapsed. Sponsors and speakers withdrew. Yamamoto attempted to sabotage a major event organized by Plaintiffs and influenced key participants and investors to withdraw from collaborative efforts, inflicting hundreds of millions of dollars in economic damage and causing direct financial harm both to Pegasus and to Uzzaman personally as its Chief Executive Officer. Plaintiffs seek compensatory and punitive damages and injunctive relief.

## II. PARTIES

7. Plaintiff Md Anis Uzzaman is an individual, a citizen of the United States, and is domiciled in Santa Clara County, California, where he has resided and worked at all relevant times. Uzzaman is the founder and Chief Executive Officer of Pegasus and the founder of the Startup World Cup. As founder and Chief Executive Officer, Uzzaman's personal compensation is directly

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

and substantially dependent on the revenue generated by Pegasus's funds, including management fees and carried interest. He holds a Ph.D. in engineering and has served since April 2023 as an adjunct professor at the Kyoto University Graduate School of Management.

8. Plaintiff Pegasus Tech Ventures, Inc. is a corporation organized under the laws of Delaware since 2012, with its principal place of business at 2680 North 1st Street, Suite 250, San Jose, California 95134. Pegasus is a venture capital firm that manages capital on behalf of corporate limited partners, invests in early- and growth-stage technology companies, and produces the Startup World Cup, an international startup pitch competition with regional events in more than 150 countries and regions. Startup World Cup, Inc., registered in Delaware since 2016, is its direct subsidiary. Pegasus's operations are centered in the United States. Its investment committee sits in San Jose. Approximately eighty percent of its employees are located in the United States, approximately eighty percent of its portfolio investments are in companies based in the United States and Europe, and all of the Pegasus group's revenue is generated by the Delaware corporation headquartered in San Jose.

9. Defendant Yasumasa Yamamoto is an individual and a citizen of Japan. Plaintiffs are informed and believe that Yamamoto is domiciled in Japan. At times material to this action Yamamoto maintained a substantial and continuing presence in the State of California, as alleged in Part III.B below.

10. Plaintiffs are informed and believe that Yamamoto has held himself out, at various times, as an Industry Partner of DNX Ventures, a Managing Partner of Capital Technology LLC, Chief Executive Officer, Manager, and agent for service of process of Green Capital Management LLC, President and Representative Director of Kyoto Angel Fund, a visiting scholar at Stanford University, an adjunct professor at the Kyoto University Graduate School of Management, and, as recently as May 2026, a venture investor who travels back and forth to Silicon Valley in the United States. *See* ¶¶ 17–24, 29.

11. Defendants DOES 1 through 10 are persons whose true names and capacities are unknown to Plaintiffs, who are informed and believe that each participated in or assisted the

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

conduct alleged here. Plaintiffs will seek leave to substitute their true names when ascertained. No new party is added by this pleading.

12. At all relevant times, Yamamoto personally composed and personally transmitted each of the communications identified below. He did not act at the direction of any principal, and no entity directed, authorized, or ratified the statements. To the extent Yamamoto contends that he acted on behalf of any entity, he personally participated in, authorized, and directed the wrongful conduct and is personally liable for it.

## III. JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). This is a civil action between citizens of a State and a citizen or subject of a foreign state, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

14. Uzzaman is a citizen of the United States domiciled in California and is therefore a citizen of California. Pegasus is a citizen of Delaware, its State of incorporation, and of California, the State of its principal place of business. 28 U.S.C. § 1332(c)(1).

15. Yamamoto is a citizen or subject of Japan and has represented to this Court that he is domiciled in Japan.

### B. Personal Jurisdiction

16. This Court has specific personal jurisdiction over Yamamoto. Plaintiffs are informed and believe that he committed the intentional torts alleged here while physically present in California. Independently, he purposefully directed those torts at California: he made the statements in the course of, and to advance, the Silicon Valley venture business through which he has long availed himself of this forum, he drew them from California sources, they concerned Plaintiffs' California activities, they were, Plaintiffs are informed and believe, communicated to persons in California, and they were made for the purpose of disrupting business relationships that Plaintiffs develop and manage from San Jose. Plaintiffs' claims arise out of and relate to those contacts, and the exercise of jurisdiction is reasonable.

### 1. Yamamoto's Physical and Commercial Presence in This District

17. Green Capital Management LLC. Green Capital Management LLC is a limited liability company formed in Delaware on July 17, 2009. On October 30, 2020, Yamamoto personally signed and caused to be filed with the California Secretary of State an Application to Register a Foreign Limited Liability Company, by which the company applied for and obtained authority to transact business in California. The application was assigned California entity number 202030810363. Yamamoto signed it under penalty of perjury. It states the company's principal executive office as 55 E. 3rd Avenue, San Mateo, California 94401, in this District, and its type of business as consulting. California Secretary of State, bizfile Online, entity no. 202030810363 (https://bizfileonline.sos.ca.gov/search/business). In response to Plaintiffs' Requests for Admission Nos. 7 and 8, propounded in this action, Yamamoto admitted that the company was registered with the California Secretary of State and that the principal place of business reported for it was 55 E. 3rd Avenue, San Mateo. ECF No. 33-2, § I.

18. On October 25, 2022, Yamamoto personally signed and filed a California Statement of Information for the company, again under penalty of perjury. In it he identified himself as the company's Chief Executive Officer, as a Manager or Member, and as its agent for service of process, giving 55 E. 3rd Avenue, San Mateo as his own address in each capacity. The filing states that the company maintains a California office at that address and identifies Mai Yamamoto as a second Manager or Member at the same San Mateo address. A further Statement of Information was filed January 8, 2025. California Secretary of State, bizfile Online, entity no. 202030810363 (https://bizfileonline.sos.ca.gov/search/business).

19. Registering a foreign limited liability company to transact business in California is an affirmative application to the State for the privilege of doing business here. A person who designates himself as agent for service of process at a California street address represents to the State that he may be found there. Yamamoto made both representations personally, under penalty of perjury.

20. Yamamoto personally signed, under penalty of perjury, a Certificate of Cancellation of the company's California registration, and wrote beside his signature the date "Jan

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

23 2026." It was filed with the California Secretary of State on February 18, 2026, as File No. BA20260456650. California Secretary of State, bizfile Online, entity no. 202030810363 (https://bizfileonline.sos.ca.gov/search/business). In response to Plaintiffs' Request for Admission No. 11, propounded in this action, Yamamoto admitted that he signed it. The cancellation followed the June 2024 correspondence in which Pegasus notified Yamamoto that it intended to sue him, and the action Plaintiffs filed against him in the Superior Court of California in August 2025. Jurisdiction is assessed as of the filing of this action, and a defendant may not withdraw the forum registration through which he did business in order to avoid answering for conduct that preceded the withdrawal.

21. DNX Ventures. DNX Ventures is a venture capital firm whose United States office is located at 55 E. 3rd Avenue, San Mateo, California 94401, the same address Yamamoto gave the California Secretary of State for Green Capital Management LLC. DNX Ventures' United States fund, now known as DNX Technology Ventures, continues to list "Silicon Valley, 55 E 3rd Avenue, San Mateo, California 94401" as its office (https://dnxtech.vc/en/, formerly https://www.dnx.vc/usfund/team, *see* https://www.startupresearcher.com/news/dnx-ventures-rebrands-japan-and-us-teams). In a published interview with PwC Strategy& Japan released in 2020, Yamamoto described DNX Ventures as the firm at which he served as Industry Partner and as a venture capital firm that invests in early-stage B2B startups and maintains two bases, Silicon Valley and Tokyo. PwC Strategy& Japan, Strategy& Foresight vol. 23 (2020), https://www.strategyand.pwc.com/jp/ja/publications/periodical/strategyand-foresight-23/sf23-01.html. The National Diet Library of Japan's authority record for Yamamoto, created in February 2020 from the cover of his first book, likewise describes him as an Industry Partner of DNX Ventures (https://id.ndl.go.jp/auth/ndlna/001340380). Plaintiffs are informed and believe that Yamamoto served as an Industry Partner of DNX Ventures from approximately 2018 until approximately mid-2021. A May 22, 2020 interview published by the Kumon Institute of Education identified him as a U.S. venture investor and stated that he had been an Industry Partner since 2018 of DNX Ventures, which it described as an American venture capital firm (https://www.kumon.ne.jp/kumonnow/obog/069_1/).

22. Capital Technology LLC. On November 16, 2019, Yamamoto co-led a venture capital pitch workshop held at Hero City at Draper University, 55 E. 3rd Avenue, San Mateo, California, the same address. The organizer's published program billed him as "Yasumasa Yamamoto, Managing Partner, Capital Technology LLC." Yamamoto shared the session, titled "Workshop on Hero Training," with Mitch Kitamura, then Managing Director of Draper Nexus Ventures, now DNX Ventures. The program describes the session as one in which participants "learn from top-tier venture capitalists and entrepreneurs" and go "from an idea to a product ready to pitch to venture capital investors" (https://asiasociety.org/northern-california/events/2019-asia-21-young-leaders-summit).

23. Stanford University. The Stanford University Walter H. Shorenstein Asia-Pacific Research Center lists Yamamoto as a "Visiting Scholar at APARC, 2022-23," with the address "Encina Hall, E301, Stanford, CA 94305-6055," an office in Santa Clara County within this District, and states that he "joined the Walter H. Shorenstein Asia-Pacific Research Center (APARC) as visiting scholar starting the spring of 2022," conducting research on "how to stimulate innovation in Japan, learning from the experiences of Silicon Valley companies." Stanford states that, while at the center, Yamamoto "worked with Professor Kiyoteru Tsutsui" (https://fsi.stanford.edu/people/yasumasa-yamamoto). In response to Plaintiffs' Request for Admission No. 2, propounded in this action, Yamamoto admitted that his appointment as a Visiting Scholar at the center began in calendar year 2022. ECF No. 33-2, § I. On February 23, 2023, Yamamoto appeared in person at Paul Brest Hall, 555 Salvatierra Walk, Stanford, California, as the moderator of a panel at an in-person conference. *See* https://aparc.fsi.stanford.edu/events/future-social-tech-nurturing-skills-and-markets-social-impact-innovation. Stanford's recording of the conference is posted at https://www.youtube.com/watch?v=ZHDw8Ex2Sws. A screenshot of the recording showing Yamamoto at the conference is reproduced below. On May 18, 2023, he appeared in person at Encina Hall, Stanford, California, as the moderator of a panel at the APARC@40 Anniversary Conference. *See* https://fsi.stanford.edu/events/asia-2030-aparc40-anniversary-conference-and-celebration. Plaintiffs are informed and believe that Yamamoto was physically present in

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

California for extended periods during 2022 and 2023, while he held his Stanford appointment and an assigned office at Encina Hall, and that his in-person appearances on the Stanford campus on February 23 and May 18, 2023 were part of that presence rather than isolated trips. In its August 2024 issue, released July 20, 2024, and in an online version posted July 26, 2024 under a heading referring to Japan as seen from Stanford, the Japanese magazine Wedge published an interview of Yamamoto and Stanford Professor Kiyoteru Tsutsui. Wedge reported that its editors visited Stanford University and spoke with Professor Tsutsui and Yamamoto (https://wedge.ismedia.jp/articles/-/34554). Plaintiffs are informed and believe that the interview took place at Stanford in 2024.




February 23, 2023 Stanford conference recording

(https://www.youtube.com/watch?v=ZHDw8Ex2Sws)

24. Yamamoto's own representations of California residence. Between 2020 and 2026, Yamamoto and his publishers marketed him to the Japanese public as a Silicon Valley resident and investor. A 2020 Nikkei volume described him as a bestselling author residing in Silicon

Valley and as a venture capitalist active with Silicon Valley as his home base (Nikkei, Nikkei Bunko No. 1428, November 26, 2020, ISBN 9784532114282). A 2023 Nikkei BP volume described him as an author who travels back and forth to Silicon Valley (Nikkei BP, March 10, 2023, ISBN 9784296117192). A 2020 SB Creative volume described him as also advising venture capital firms in Silicon Valley (SB Creative, 2020). The author page that SB Creative's business publication Business+IT maintains for him identifies him in its title as a U.S. venture investor (https://www.sbbit.jp/author/706). His own book titles carry the same branding, including a 2020 book whose title asks what Silicon Valley venture capitalists look at (Toyo Keizai, 2020, ISBN 9784492557976, https://str.toyokeizai.net/books/9784492557976/) and a 2021 book whose title refers to world-standard technology knowledge taught by a first-class Silicon Valley investor (Gentosha, February 25, 2021, ISBN 9784344037397, https://www.gentosha.co.jp/book/detail/9784344037397/), whose title presents its author as that first-class Silicon Valley investor. On December 25, 2020, the Japanese human-resources company en-japan Inc. announced that it had retained Yamamoto as an adviser to its new overseas venture investment unit, which would invest in startups centered in Shenzhen and Silicon Valley. The announcement described him as a venture capitalist active primarily in Silicon Valley and as currently residing in Silicon Valley (https://corp.en-japan.com/newsrelease/2020/24926.html). In February 2021, Karuizawa Radio University introduced him as a venture capitalist based in Silicon Valley and active at DNX Ventures (https://karuizawaradio.university/blog-feb222021.html). In a published 2020 interview, Yamamoto stated that he goes back and forth between Japan and the United States, that he is normally in Silicon Valley, and that he comes to Japan about once every two months. NewsPicks, (2020), https://newspicks.com/news/5036656/body/. On January 20, 2025, Motohisa Furukawa, a member of the Japanese Diet, posted to his YouTube channel a video interview of Yamamoto whose title identifies him as a Silicon Valley investor (https://www.youtube.com/watch?v=DMQFSYDlnoc). At the opening of the interview, Yamamoto is described as living in Silicon Valley and going back and forth to Japan. On August 9 and August 23, 2024, the IMAGINE University channel of the Japanese nonprofit DESIGN ASSOCIATION posted two video interviews of Yamamoto whose titles each identify him as a

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Silicon Valley investor (https://www.youtube.com/watch?v=iWUj77SN1Yk and https://www.youtube.com/watch?v=l3NSUeiMjqM). The first displays an on-screen caption identifying him as a venture capitalist, and the description of each identifies him as a venture investor. Each of the three videos markets Yamamoto to Japanese business audiences as a Silicon Valley venture investor, the same expertise that Pegasus offers to the same audience. Screenshots of the three videos' YouTube pages, captured November 19, 2026 and showing each video's address, title, and upload date, are reproduced below. On May 15, 2026, after this action was filed, Sankei Co., Ltd., the speakers' agency that represents him, announced his engagement with a description, immediately beneath his name, identifying him as a venture investor who travels back and forth to Silicon Valley in the United States. *See* https://www.sankeipro.co.jp/news/510008. The announcement continues that he is well versed in United States startup trends and Big Tech strategy and that, in parallel with his investment activities, he advises Japanese companies on innovation and new business development. The agency offers him for corporate consulting, lectures, and media appearances. Its profile page gives his title as venture investor, states that he worked at the New York Americas headquarters of the Bank of Tokyo-Mitsubishi UFJ and served as a visiting researcher at Harvard University and Stanford University, and lists the two books identified above among his publications (https://www.sankeipro.co.jp/lecture/yamamoto-yasumasa).

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301




January 20, 2025 video (https://www.youtube.com/watch?v=DMQFSYDlnoc)




August 9, 2024 video (https://www.youtube.com/watch?v=iWUj77SN1Yk)




August 23, 2024 video (https://www.youtube.com/watch?v=l3NSUeiMjqM)

25. Yamamoto's California residence. Plaintiffs are informed and believe, based on public-records research obtained by their counsel in October 2025, that a residence address in Palo Alto, California was associated with Yamamoto from approximately September 2021 through approximately August 2025, with Mai Yamamoto listed as a member of the same household, and that Yamamoto has been associated with California addresses, including addresses in Foster City and San Francisco, since at least 2018.

26. United States-Japan Leadership Program. Yamamoto has represented in his standing author biography, published across at least a dozen outlets and at least six books between 2020 and 2024, that he is a Fellow of the United States-Japan Leadership Program and a member of its Advisory Council. *See, e.g.*, https://www.sbbit.jp/author/706. By the sponsoring foundation's published definition, delegates attend two conferences over two years, one in Japan and one in the United States, and become Fellows only after completing the second. *See* https://us-jf.org/en/usjlp. Yamamoto's repeated public claim to that title is a representation that he attended a week-long conference in the United States.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

27. Additional California business activity. Yamamoto has stated publicly that he personally supports an American venture company engaged in the matcha business, founded by a former employee of a major Japanese beverage manufacturer, which he described while listing examples of his recent investments. KUMON now! Vol. 069 (May 22, 2020), https://www.kumon.ne.jp/kumonnow/obog/069_1/. In the same May 2020 interview he identified an American smart-home company among his recent investments. Plaintiffs are informed and believe that the matcha company is headquartered in California. Plaintiffs are informed and believe that Yamamoto has attended technology conferences and business missions in the United States on a recurring basis. On January 20, 2023, during his Stanford appointment, Yamamoto appeared as a panelist at an international symposium titled "Digital Garden Cities and Green Transformation," hosted by the International University of Japan and the Cabinet Office of Japan. The Prime Minister's Office of Japan posted the recording (https://www.youtube.com/watch?v=ZntnxteW1Cw). The other panelists sat on a stage in Japan. Yamamoto appeared by video link, and the moderator introduced him as a startup investor in Silicon Valley. A screenshot of the video's YouTube page and a frame from the recording at 16:46 are reproduced below.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301




January 20, 2023 symposium, YouTube page (https://www.youtube.com/watch?v=ZntnxteW1Cw)




January 20, 2023 symposium, at 16:46 (https://www.youtube.com/watch?v=ZntnxteW1Cw)

28. Yamamoto's litigation position. In his motion to dismiss, Yamamoto described the conduct alleged in the Complaint as having occurred "entirely" in Japan. In his reply brief he

withdrew that description: "Yamamoto withdraws the statements that imply that he was in Japan at all relevant times during the period the Complaint places at issue." ECF No. 35 at 13 n.2. Plaintiffs propounded discovery asking Yamamoto where he was. In response to Plaintiffs' Requests for Admission Nos. 42 through 50 and 60, he asserted objections and refused to admit or deny whether he was physically present in California on April 25, April 26, April 30, May 9, or June 9, 2024, on at least five days in each of April, May, and June 2024, or on at least thirty days in 2024, and whether he was physically present in California when he sent the messages to Professor Yamada. In response to Plaintiffs' Interrogatory No. 6, which asked him to describe each occasion of his physical presence in California or any other State since January 1, 2019, he asserted objections and provided no answer. In response to Plaintiffs' Requests for Production Nos. 16 and 23, which sought his records of entry into and departure from the United States, he produced no documents. His declaration in this action, executed in Tokyo on August 10, 2026, does not say where he was on any date in 2024.

**2. Yamamoto Made the Statements in the Course of His California Venture Business**

29. Yamamoto's business is selling Silicon Valley venture expertise to Japanese corporations. That is what Green Capital Management LLC, a "consulting" company at a San Mateo address, exists to do. It is what his DNX Ventures title, his Stanford appointment, his twenty-two books on Silicon Valley and United States technology companies, and his self-description as a Silicon Valley investor are for. He advises Japanese corporations on venture investment and solicits capital from them for Kyoto Angel Fund, which he founded and leads. He has described his work as investing in and growing outstanding venture companies in Japan and abroad and introducing them to large Japanese companies (https://www.kumon.ne.jp/kumonnow/obog/069_1/). In December 2020, en-japan Inc. retained him to advise its overseas venture investing. ¶ 24.

30. Pegasus sells the same product to the same buyers from San Jose. Pegasus raises corporate venture capital commitments from Japanese corporations and manages those funds from San Jose, giving the corporations access to Silicon Valley startups and expertise. Yamamoto's own

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

motion to dismiss attached Pegasus's published description of that "Venture Capital-as-a-Service" model. ECF No. 28-15.

31. Every corporate venture mandate Pegasus won was a mandate unavailable to Yamamoto. Every platform Uzzaman occupied at Kyoto University, where Yamamoto also held an appointment, was a platform Yamamoto did not. Yamamoto made the statements alleged below as a Silicon Valley venture investor speaking to Japanese counterparties about a Silicon Valley competitor, and he made them to divert those counterparties from a San Jose firm to himself.

32. The statements derive their force from Yamamoto's California standing. The assertion that Pegasus's investing shows a lack of discernment that those in the venture capital industry would regard as inconceivable is not framed as Yamamoto's personal view. It is framed as the verdict of the industry to which Yamamoto holds himself out as belonging, the Silicon Valley venture industry, and it carried weight in Kyoto only because Yamamoto had spent years presenting himself as the authentic Silicon Valley article. Yamamoto's California contacts were not background to the tort. They were its instrument and its motive.

**3. Yamamoto Expressly Aimed the Statements at California**

33. Yamamoto knew Uzzaman resided and worked in Santa Clara County, California, and that Pegasus was headquartered in San Jose. Pegasus's California headquarters appears on its public materials, Yamamoto operated in the same venture capital community, and he had been an Industry Partner of a venture firm whose United States office sat eighteen miles from Pegasus's. Plaintiffs are informed and believe that Yamamoto is acquainted with other California venture investors in that community. ECF No. 31-1 ¶ 22. Yamamoto's 2021 Gentosha book includes chapters featuring Mitch Kitamura of DNX Ventures and Kenji Kushida, a California-based scholar of Silicon Valley. *See* https://www.gentosha.co.jp/book/detail/9784344037397/; ECF No. 31-1 ¶ 22(g).

34. The statements were drawn from California sources. The April 25, 2024 messages reported on and attached material from the Startup World Cup website, a site produced and maintained by Pegasus from San Jose. They invoked Pegasus's investment in Quibi, an investment made by Pegasus's San Jose investment committee in a California company. Plaintiffs are

informed and believe that what Yamamoto said about Uzzaman's professional history and Pegasus's portfolio he learned, to the extent he learned it anywhere, through his participation in the California venture community in which Pegasus is a known firm.

35. The statements concerned California activities. The assertion that Uzzaman's IBM investment role was a false claim concerned Uzzaman's employment history in the United States. The assertion that Pegasus invests without diversification and with a lack of discernment was a judgment on decisions made by Pegasus's investment committee in San Jose. The complaint about the featured speaker's presentation "on the Startup World Cup website" concerned a California-produced website for a California-produced competition.

36. The statements were communicated to persons in California. Plaintiffs are informed and believe that in the spring of 2024 Yamamoto made statements to the same effect as those he made to Professor Yamada to persons in the California venture capital community and to representatives of Japanese corporations stationed in California, and that those persons were in California when they received them. In response to Plaintiffs' Request for Admission No. 85, propounded in this action, Yamamoto asserted objections and refused to admit or deny whether during 2024 he communicated with at least one person physically present in California concerning Uzzaman, Pegasus, or the Startup World Cup.

37. The statements were made for the purpose of producing consequences in California. Their object was to induce Kyoto University to withdraw from an event produced by a San Jose company, to cause Japanese corporate counterparties to abandon venture funds that would be organized, managed, and administered by Pegasus from San Jose, to cause sponsors to withdraw from events whose sponsorship revenue is booked by Pegasus in San Jose, and to strip Uzzaman of standing in a market centered in Santa Clara County. The corporate venture capital funds whose formation Yamamoto disrupted were to be managed from San Jose, and the management fees and carried interest Pegasus lost would have been earned in California. The Startup World Cup is produced by Pegasus from San Jose, its regional events are funded by sponsorship contracts negotiated primarily by Pegasus personnel in San Jose, and its Grand Finale is held annually in the San Francisco Bay Area.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

38. The harm was suffered in California. Uzzaman's professional reputation, Pegasus's commercial reputation, and Plaintiffs' revenue were injured in California, where Uzzaman lives and works and where Pegasus is headquartered. Pegasus's fundraising and investor-relations functions are run from San Jose, the negotiations with Idemitsu and DIC were conducted by San Jose personnel, and the sponsorship and investor relationships Plaintiffs lost were managed from San Jose.

**4. Yamamoto Was in California When He Sent the Messages**

39. On June 10, 2024, Yamamoto replied by email to Harumi Akimoto, Pegasus's Chief Operating Officer, who had written from Pegasus's San Jose office, described complaints Pegasus had received that Yamamoto was spreading negative statements about Pegasus, and asked him to come to that office to meet on June 11 or June 13. Yamamoto accepted a meeting for 4:00 p.m. the following day, noting that the date Ms. Akimoto had proposed was the next day. Ms. Akimoto's email system in San Jose recorded that reply at 5:44 p.m. on Monday, June 10, 2024, Pacific time, when it was already 9:44 a.m. on Tuesday, June 11 in Japan. Yamamoto nonetheless treated June 11 as the next day. ECF No. 11-1 ¶ 5 & Exs. A–B. He asked only to change the venue, proposing by map link two coffee shops: one at 1003 E. El Camino Real, Sunnyvale, California, and one at 3350 Zanker Road, San Jose, California 95134, the same postal code as Pegasus's own office. He did not state that he was outside California, did not propose to meet remotely, and did not ask for time to travel. On June 11, 2024, he wrote again that he had consulted a few people around him. Pegasus rescheduled the meeting, and it did not take place. ECF No. 11-1 ¶¶ 3–6 & Exs. A–B.

40. Plaintiffs are informed and believe, and on that basis allege, that Yamamoto was physically present in California on June 10 and June 11, 2024, and that he was physically present in California on or about April 25, 2024 and on or about May 9, 2024, when he sent the messages to Professor Yamada described in Part IV.D. Plaintiffs so allege on information and belief because the facts are peculiarly within Yamamoto's possession. He has withdrawn his prior representation that the conduct at issue occurred entirely in Japan (ECF No. 35 at 13 n.2), and, in response to discovery Plaintiffs propounded in this action, has refused to admit or deny whether he was in

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

California on those dates or when he sent the messages (Plaintiffs' Requests for Admission Nos. 46 through 50 and 60), has provided no answer to an interrogatory asking him to describe each occasion of his presence in California or any other State (Interrogatory No. 6), and has produced no travel records (Requests for Production Nos. 16 and 23). ¶ 28. Yamamoto has said that he is normally in Silicon Valley, a Japanese company described him in December 2020 as currently residing in Silicon Valley, and his June 2024 correspondence indicates that he was in California on June 10 and 11, 2024, about one month after the May 9, 2024 message. ¶¶ 24, 39. A residence address in Palo Alto, California was associated with him from approximately September 2021 through approximately August 2025, a period that includes April and May 2024. ¶ 25. His June 10, 2024 email treated June 11 as the next day at a moment when June 11 had already begun in Japan. ¶ 39. Plaintiffs specifically identify this allegation as one that will likely have evidentiary support after a reasonable opportunity for discovery.

41. Yamamoto's presence in California was not incidental to any transaction elsewhere. It is where he has said he normally is, where his company was registered, where his Stanford office was, where a residence address was associated with him through 2025, and where he proposed to meet Pegasus on June 11, 2024. He was in California on his own business, which is the business in the course of which he made the statements.

**5. Plaintiffs' Claims Arise Out of and Relate to Yamamoto's California Contacts**

42. Plaintiffs' claims arise out of Yamamoto's California conduct, because Plaintiffs are informed and believe that the statements were sent from California and were communicated to persons in California (¶¶ 36, 40), and they relate to his California contacts, because the standing he built through Green Capital Management LLC, DNX Ventures, Stanford, and years of self-presentation as a Silicon Valley investor is the standing he deployed as the instrument of the disparagement, and the business he sought to divert is business that Pegasus conducts from this District. A defendant who built his professional brand in California can expect to answer in California for the use he makes of it.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

**6. The Exercise of Jurisdiction Is Reasonable**

43. The exercise of jurisdiction over Yamamoto comports with fair play and substantial justice. Yamamoto purposefully interjected himself into California over a period of years. He has worked and held research appointments in the United States, including at the New York Americas headquarters of the Bank of Tokyo-Mitsubishi UFJ and as a visiting researcher at Harvard University and Stanford University. ¶¶ 23–24. California has a manifest interest in providing redress to a resident whose professional reputation was attacked and to a corporation headquartered here whose business was disrupted. Plaintiffs' interest in convenient and effective relief is at its maximum in their home forum.

44. The evidence central to this dispute is concentrated in California. Pegasus's deal files, investor communications, financial records, and personnel are in San Jose. The negotiations with Idemitsu and DIC were conducted by Pegasus employees based in San Jose, with most of the discussions taking place in California or by videoconference from San Jose. Pegasus's electronic mail, document storage, startup data, and accounting records are hosted on United States systems. Stanford's records of Yamamoto's appointment and office and the California Secretary of State's records of his company are here. Professor Yamada travels to the United States frequently and has stated that he is willing to appear in California for deposition.

**C. Venue and Intradistrict Assignment**

45. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here, and under 28 U.S.C. § 1391(c)(3), which provides that a defendant not resident in the United States may be sued in any judicial district.

46. Under Civil Local Rule 3-2(c) and (e), this action is properly assigned to the San Jose Division because a substantial part of the events giving rise to the claims occurred in Santa Clara County.

## IV. FACTUAL ALLEGATIONS

**A. Pegasus and Uzzaman Built a California Venture Capital Business**

47. Uzzaman founded Pegasus in 2011 and has served as its Chief Executive Officer since. Pegasus operates from San Jose and maintains a global network of offices. It manages capital

on behalf of corporate limited partners, an approach in which large operating companies commit capital to a fund managed by Pegasus, often structured as a dedicated corporate venture capital ("CVC") fund.

48. Pegasus derives revenue from three principal sources: management fees and carried interest from the funds it manages, consulting and advisory fees paid by corporate partners, and sponsorship revenue from the Startup World Cup and its regional events.

49. Pegasus is a globally recognized and legitimate venture capital firm. It manages over $2 billion in assets and has invested in more than 300 companies. Its portfolio includes many of the world's most innovative companies, such as SpaceX, OpenAI, Anthropic, xAI, SoFi, Airbnb, and Coinbase. To date, more than 30 Pegasus-backed startups have achieved "unicorn" status, each exceeding $1 billion in valuation. The firm has a proven track record of 90 successful exits, including more than 30 IPOs. In August 2025, TIME, in partnership with Statista, ranked Pegasus #137 among the top venture capital firms in the United States, selected from a field of over 6,000 firms. *See* https://time.com/7309945/top-venture-capital-firms-usa-2025/. The ranking evaluated firms based on fundraising strength, investment capacity, and the volume and efficiency of exits.

50. Pegasus's flagship initiative, the Startup World Cup, is the world's largest startup competition, with regional events in over 150 countries and regions, making it one of the most credible and influential startup ecosystems in the world. Its Grand Finale is held in the San Francisco Bay Area. Regional events are produced in partnership with local hosts, including universities, prefectural governments, and corporations, and are funded by sponsorship contracts negotiated by Pegasus from San Jose.

51. Before founding Pegasus, Uzzaman was employed in the United States by IBM and then by Cadence Design Systems. From December 2001 to December 2007, Uzzaman served as Business Development Director in the Corporate Development organization of IBM Microelectronics. His responsibilities were investment-related. He identified startup companies that could help IBM develop and enhance its product lines, conducted due diligence and analysis on those companies, developed IBM's roadmap for acquisitions, measured the impact of IBM's

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

investments in and acquisitions of startup companies, and supported IBM's merger and acquisition transactions and the post-merger integration of the startup companies IBM acquired.

**B. Yamamoto Occupied the Same Market**

52. Yamamoto is a Japanese venture investor, author, and commentator. Between 2020 and 2024 he published twenty-two books, most concerning Silicon Valley, United States technology companies, or United States venture capital, and wrote well over one hundred articles for Japanese business publications.

53. Yamamoto served as an Industry Partner of DNX Ventures, a venture capital firm with offices in San Mateo, California and Tokyo. Plaintiffs are informed and believe that role ended in or about 2021.

54. Yamamoto is the President and Representative Director of Kyoto Angel Fund, a Japanese venture fund. He solicits capital from, and advises, Japanese corporations, the same constituency from which Pegasus raises corporate venture capital commitments.

55. Yamamoto served as an adjunct professor at the Kyoto University Graduate School of Management until approximately March 2025. Ex. A ¶ 4(e) (citing https://web.archive.org/web/20250216084122/https://www.gsm.kyoto-u.ac.jp/en/faculty/101864/). Uzzaman has served since April 2023 as an adjunct professor at the same school. Yamamoto and Uzzaman therefore held concurrent appointments at the same institution from approximately April 2023 through approximately March 2025, including the period of the April and May 2024 communications with Professor Yamada alleged below.

56. The Kyoto University Graduate School of Management co-hosted the Startup World Cup Kyoto Regional Event, including the 2023 event held at the Clock Tower Centennial Hall on July 6, 2023 and the 2024 event held on May 21, 2024.

**C. Yamamoto's Motive**

57. On June 19 and 20, 2021, the Japanese business publication NewsPicks published two articles about Yamamoto. The first, published June 19, was presented as a scoop about the circumstances of the departure of a Silicon Valley top investor. *See* https://newspicks.com/news/5944573/body/. The second, published June 20, presented

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Yamamoto's own account of his departure from the venture capital firm. Its introductory text questioned the accuracy of the venture capitalist description repeatedly used in Yamamoto's books. *See* https://newspicks.com/news/5947023/body/.

58. Plaintiffs are informed and believe that the articles reported that Yamamoto had not participated in the investment operations of the Silicon Valley venture capital firm with which he was affiliated, that he held the title of an investor without performing the function, and that the firm ended its relationship with him in or about April 2021. *See* https://newspicks.com/news/5947023/body/.

59. The accusation Yamamoto later directed at Uzzaman, that he was not a legitimate venture capitalist and that his claimed investment role was a fabrication, is the same accusation that had been publicly leveled at Yamamoto himself three years earlier. Yamamoto had a motive to discredit a rival whose credentials were genuine.

60. Yamamoto also had a competitive motive, as alleged in Part III.B.2.

### D. The Statements

61. Plaintiffs identify below each statement on which their claims are founded, together with, to the extent presently known, the speaker, the recipient, the date, the place and medium of publication, and the substance of what was said.

#### 1. The April 25 and May 9, 2024 LINE Messages to Professor Yamada

62. Professor Jin-ichiro Yamada is a professor at the Kyoto University Graduate School of Management. He has known Uzzaman since 2022. He and his institution partnered with Pegasus on guest lectures, on Uzzaman's appointment, and on the Startup World Cup Kyoto Regional Events in 2023 and 2024. Yamamoto first met Professor Yamada on March 23, 2023, at a meeting in Osaka that Yamamoto requested after learning of Uzzaman's August 2022 guest lecture, and at which Yamamoto spoke negatively about Uzzaman and Pegasus and attempted to dissuade Professor Yamada from collaborating with them. In response to Plaintiffs' Request for Admission No. 19, propounded in this action, Yamamoto admitted that he communicated with Professor Yamada concerning Uzzaman. ECF No. 33-2.

63. On or about April 25, 2024, Yamamoto sent Professor Yamada a series of unsolicited messages through the LINE messaging application. Yamamoto composed and transmitted the messages personally, from his own LINE account, to Professor Yamada's LINE account. Professor Yamada's Corrected Declaration, executed November 18, 2026, which reproduces screenshots of the messages, is attached as Exhibit A. The screenshots, as they appear in Exhibit A, are reproduced below.






LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301




64. In the April 25, 2024 messages Yamamoto attached an image of the Startup World Cup Kyoto Regional Event announcement featuring Mr. Yasuyuki Higuchi of Panasonic Connect Co., Ltd., the event's featured speaker, and wrote, in Japanese, as shown in the screenshots reproduced above and in Exhibit A:

(a)「この見せ方は相当危険だと思います、日本vc協会からも警告を受けていまして、経営管理大学院と関係ない形にしなければ、評判が後々に毀損してしまうと思います」. In this statement, Yamamoto characterized the way in which the event announcement presented the featured speaker as dangerous, asserted that he had received a warning from the Japan VC Association, and urged that the event be kept separate from the Kyoto University Graduate School of Management to avoid future damage to its reputation.

(b)「CVCにおいて、分散投資をせずにこの目利きのなさはvc関係者からするとあり得ない話です」. In this statement, Yamamoto asserted that Pegasus's corporate venture capital investing was undiversified and lacked discernment, and that those in the venture capital industry would regard it as inconceivable.

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

(c)「IBMのでの投資は詐称です、彼はベンチャー投資部隊にはおりませんでした」. In this statement, Yamamoto asserted that Uzzaman's claimed investment experience at IBM was a false claim (詐称).

65. The word Yamamoto used in the statement set forth in ¶ 64(c), 詐称 (sashō), does not mean error, exaggeration, or difference of opinion. In Japanese it denotes the fraudulent misrepresentation of one's identity, status, or credentials. Yamamoto accused Uzzaman of lying about his professional history.

66. Professor Yamada replied on April 25, April 26, and April 30, 2024. On or about May 9, 2024, twelve days before the Startup World Cup Kyoto Regional Event, Yamamoto wrote to Professor Yamada reporting that Mr. Higuchi of Panasonic Connect appeared to have withdrawn.

67. Correction of the dates. Plaintiffs' original Complaint, and the original declaration of Professor Yamada attached to the original Complaint as Exhibit A, stated that the messages were sent on June 9, 2024. That date was incorrect. The LINE application inserts a date marker between days of a conversation, and the markers in the screenshots attached to the Complaint read April 25, April 26, April 30, and May 9, 2024. The statements by Yamamoto set forth in ¶ 64(a) through (c) appear beneath the April 25 marker and the Higuchi message beneath the May 9 marker. As Professor Yamada explains in his Corrected Declaration, June 9, 2024 is the date on which he took the screenshots. Ex. A ¶ 6. Plaintiffs have corrected the date in this pleading and Professor Yamada has corrected it in his Corrected Declaration.

68. The statement by Yamamoto set forth in ¶ 64(c) is a statement of verifiable fact. Either Uzzaman performed the investment work at IBM that he has described, or he did not. He did. ¶ 51. The sting of that statement is that Uzzaman fabricated his IBM investment experience. That assertion is capable of being proven true or false, and it is false. Yamamoto's further assertion, that Uzzaman had not been in IBM's venture investment unit, was offered as proof of the first and conveys the same false meaning: that because Uzzaman did not sit in a particular unit, his account of investment work at IBM was invented. Uzzaman performed that work in the Corporate Development organization of IBM Microelectronics.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

69. The statement by Yamamoto set forth in ¶ 64(b) is likewise a factual assertion, presented not as Yamamoto's personal view but as the settled judgment of those in the venture capital industry. Its factual premise is that Pegasus's corporate venture capital funds are not diversified, and it offers that premise as the basis for the accusation that Pegasus's investment selection reflects a lack of discernment that those in the industry would regard as inconceivable. Whether Pegasus's funds were diversified is a matter of their actual composition, verifiable from Pegasus's investment and fund records. The premise is false. When Yamamoto made the statement on April 25, 2024, Pegasus's corporate venture capital funds were diversified, and they remain diversified today. Pegasus's diversification policy, which governed its investing then and governs it today, operates on three dimensions. It diversifies by geography, investing in North America, Japan, East Asia, Southeast Asia, South Asia, and Europe. It diversifies by technology sector, investing in artificial intelligence, information technology, the Internet of Things, software as a service, healthcare, space technology, financial technology, and other sectors. And it diversifies by stage, investing in early-, mid-, and late-stage companies. Pegasus today manages 46 funds, which together hold investments in approximately 200 startup companies.

70. The May 9, 2024 message is significant for what it establishes. Twelve days before the Startup World Cup Kyoto Regional Event, Yamamoto reported to Professor Yamada that Panasonic Connect's Mr. Higuchi, the featured speaker for Plaintiffs' event, had withdrawn. Panasonic Connect's secretary's office had formally cancelled Mr. Higuchi's appearance by email to Pegasus on the morning of April 26, 2024, Japan time, the morning after Yamamoto's April 25 messages singled out the event announcement featuring Mr. Higuchi and characterized the way it was presented as dangerous. Yamamoto knew of the withdrawal and chose to report it to the event's academic co-host.

71. Plaintiffs are informed and believe that Yamamoto communicated with Mr. Higuchi, or with persons acting for him, before Mr. Higuchi withdrew, and that Yamamoto's communications caused or contributed to Mr. Higuchi's withdrawal. Plaintiffs so allege because Yamamoto singled out the announcement featuring Mr. Higuchi in his April 25, 2024 messages, because Panasonic Connect cancelled Mr. Higuchi's appearance within a day, because Yamamoto

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

knew of the withdrawal and reported it to the event's co-host on May 9, 2024, and because the circumstances of Yamamoto's communications with Panasonic Connect are within his possession and Panasonic Connect's. Professor Yamada, the event's academic co-host, likewise believes that Yamamoto "likely played a role in convincing the keynote speaker, Mr. Higuchi, to withdraw." Ex. A ¶ 7.

72. Yamamoto's April and May 2024 messages were not isolated. Yamamoto repeatedly urged Professor Yamada not to co-organize the 2024 Startup World Cup Kyoto Regional Event, repeatedly disparaged Uzzaman and Pegasus to him, and sought to have Uzzaman removed from his appointment at the Graduate School of Management. Ex. A ¶¶ 5(a)–(b), 7.

**2. The Statements Reported to Pegasus in May and June 2024**

73. In May and June 2024, Pegasus received complaints, on multiple occasions and from several companies with which it regularly does business, that Yamamoto was spreading negative statements about Pegasus and about the Startup World Cup and that the companies wanted Pegasus to do something about it. The complaints increased in number through the first half of June 2024. On June 10, 2024, Pegasus's Chief Operating Officer wrote to Yamamoto describing those complaints and asking to meet. Yamamoto replied that he did not have detailed information about the matters Pegasus had raised and that there might be a misunderstanding. He did not deny making the statements.

74. Plaintiffs are informed and believe that in each instance Yamamoto stated, in substance, that Uzzaman was not a legitimate venture capitalist and that Pegasus was not a competent manager of corporate venture capital. Plaintiffs are further informed and believe that Yamamoto has made many other improper, meritless, and harmful disparaging statements about Plaintiffs to numerous other people, and has taken further actions, including making additional defamatory statements to other third parties, that have damaged Plaintiffs.

**3. The Statements to Idemitsu Kosan Co., Ltd. (2024)**

75. On January 8, 2024, Pegasus met with Idemitsu Kosan Co., Ltd. to begin negotiations for the formation of a corporate venture capital fund. The negotiations were substantive and advanced. Pegasus met and corresponded through 2024 with personnel of Idemitsu

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Innovation Europe, Idemitsu's corporate venture unit, including its General Manager of the CVC Unit, its General Manager of the Incubation Unit, and an Investment Manager. The negotiations were conducted by three Pegasus employees based in San Jose, with most of the discussions taking place in California or by videoconference from San Jose. Idemitsu maintained personnel stationed in San Jose, California, during the negotiations. Idemitsu established its Americas holding company, Idemitsu Americas Holdings Corporation, in San Jose in February 2020, describing it as located "in San Jose, within Silicon Valley" (https://www.businesswire.com/news/home/20210824005371/en). The proposed fund was approximately $100 million.

76. Plaintiffs had an existing economic relationship with Idemitsu with the probability of future economic benefit. The relationship was an ongoing, year-long negotiation between counterparties toward an identified transaction.

77. In or about late 2024, Idemitsu declined to proceed. Idemitsu personnel informed Pegasus that Idemitsu had received negative information about Plaintiffs from an outside party. The timing and manner of that withdrawal, shortly after negative feedback from an outside party, give rise to a natural inference that Yamamoto used the same disparagement tactics he was contemporaneously deploying against Plaintiffs' relationship with Kyoto University, and the specific factual context indicates that the outside party was Yamamoto.

78. Plaintiffs are informed and believe that Yamamoto communicated with one or more Idemitsu personnel during 2024, and that in those communications he stated that Uzzaman was not a legitimate venture capitalist, that Uzzaman had misrepresented his professional background, and that Pegasus lacked the competence to manage a corporate venture capital fund. Plaintiffs so allege on information and belief because the content and timing of Yamamoto's communications with Idemitsu are within his possession and Idemitsu's. In response to Plaintiffs' Request for Admission No. 20, propounded in this action, Yamamoto stated that, after a reasonable inquiry, he lacks sufficient knowledge to admit or deny whether he communicated with representatives of Idemitsu concerning Pegasus, and on that basis denied it. ECF No. 33-2. In response to Plaintiffs' Request for Admission No. 83, he asserted objections and refused to admit or deny whether he

communicated with anyone affiliated with Idemitsu concerning Uzzaman, Pegasus, or the Startup World Cup.

**4. The Statements to DIC Corporation (2025)**

79. In February 2025, Pegasus met with DIC Corporation, including its Corporate Venture Capital Group Manager, regarding the formation of a corporate venture capital fund. Discussions proceeded positively from February 2025 through September 2025. The proposed fund was approximately $60 million.

80. Plaintiffs had an existing economic relationship with DIC with the probability of future economic benefit.

81. In September 2025, DIC suddenly declined to proceed.

82. Plaintiffs are informed and believe that between February 2025 and September 2025 Yamamoto communicated with one or more DIC personnel and republished the statements that Uzzaman was not a legitimate venture capitalist, that Uzzaman had falsified his professional credentials, and that Pegasus was not a legitimate or competent fund manager, directly influencing DIC's decision to decline. Plaintiffs plead the content and circumstances of those communications on information and belief because the communications are within Yamamoto's possession and DIC's. In response to Plaintiffs' Request for Admission No. 21, propounded in this action, Yamamoto stated that he lacks sufficient knowledge to admit or deny whether he communicated with representatives of DIC concerning Pegasus, and on that basis denied it. ECF No. 33-2. In response to Plaintiffs' Request for Admission No. 84, he asserted objections and refused to admit or deny whether he communicated with anyone affiliated with DIC concerning Uzzaman, Pegasus, or the Startup World Cup.

**5. The Speaker and Sponsor Withdrawals**

83. The following individuals withdrew from participation in the 2024 Startup World Cup regional events after having agreed or indicated their intention to participate: Yasuyuki Higuchi (President and Chief Executive Officer, Panasonic Connect Co., Ltd.), Nagahiro Minato (President, Kyoto University), Takatoshi Nishiwaki (Governor, Kyoto Prefecture), Mizuki Iwamura (Vice President, Marketing, Asia-Pacific and Japan Region, Google Japan), Makoto

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Takano (Founder and General Partner, D4V, and Founder, Forbes JAPAN), and Ari Horie (Founder and Chief Executive Officer, Women's Startup Lab). Mr. Higuchi, President Minato, and Governor Nishiwaki were to participate in the May 21, 2024 Startup World Cup Kyoto Regional Event. Ms. Iwamura, Mr. Takano, and Ms. Horie were to participate in the July 19, 2024 Startup World Cup Tokyo Regional Event.

84. Plaintiffs are informed that several of these individuals, and others invited to the 2024 events, told Pegasus personnel, directly or through intermediaries, that Yamamoto had given them negative information about the Startup World Cup and Pegasus and Yamamoto had discouraged them from participating.

85. Plaintiffs are informed and believe that Yamamoto communicated with each of the foregoing individuals, or with persons acting for them, and that his disparaging statements caused or contributed to each withdrawal. Professor Yamada likewise believes that Yamamoto "likely played a role in convincing the keynote speaker, Mr. Higuchi, to withdraw and dissuaded other participants from attending." Ex. A ¶ 7. In response to Plaintiffs' Request for Admission No. 95, propounded in this action, Yamamoto refused to admit or deny whether he recommended or suggested to any person that the person withdraw as a speaker from a Startup World Cup event held in 2024.

86. Sponsors of the 2024 Startup World Cup regional events withdrew or did not proceed after Yamamoto's statements. For the May 21, 2024 Startup World Cup Kyoto Regional Event, the event at which Yamamoto's April and May 2024 messages were aimed, they were JOHNAN Corporation (Regional Platinum, ¥5,000,000), Kyoto Shinkin Bank (Regional Platinum, ¥3,000,000), Kyoto Bank (Regional Platinum, ¥3,000,000), Meidensha Corporation (Regional Gold, ¥2,000,000), and Murata Manufacturing Co., Ltd. (Regional Gold, ¥2,000,000), a total of ¥15,000,000. Plaintiffs are further informed and believe that Yamamoto's statements caused or contributed to the loss of twelve sponsorships of the 2024 Startup World Cup Kyushu Regional Event totaling ¥22,500,000 and twenty-two sponsorships of the 2024 Startup World Cup Tokyo Regional Event totaling ¥67,000,000.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

**6. The 2022-2023 Conduct, Alleged as Background, Motive, and Plan**

87. Plaintiffs allege the following conduct as evidence of Yamamoto's motive, intent, plan, and malice, and as context establishing that the 2024 and 2025 statements were the continuation of a deliberate course of conduct. Plaintiffs do not assert an independent claim for relief based on conduct occurring before January 30, 2024.

88. In 2022, while Pegasus was in advanced negotiations for a $30 million corporate venture capital fund with Nihonkai Gas Co., Ltd., Yamamoto contacted that company's then-Chief Executive Officer and disparaged Pegasus. Nihonkai Gas withdrew from the transaction. Nihonkai Gas personnel informed Pegasus, through an intermediary, that the source of the negative information was Yamamoto, whom they described as based in Silicon Valley.

89. Following a first meeting on October 27, 2022, held in Silicon Valley, with Kyocera Corporation executives, discussions continued through 2023. Kyocera established its corporate venture capital fund with a different partner. Plaintiffs are informed and believe, based on information conveyed by Kyocera, that Yamamoto played a major role in that decision.

90. Following an initial meeting in August 2023 with Marubeni Corporation executives, including the Senior Vice President and General Manager of Marubeni's Silicon Valley Branch, located at 3979 Freedom Circle, Santa Clara, California (https://www.marubeni.com/en/company/network/north_america/), discussions regarding a proposed corporate venture capital fund of approximately $50 million continued until the end of 2023, when Marubeni declined. Plaintiffs are informed and believe, based on indications from Marubeni, that Yamamoto acted as a negative influence on that decision.

91. Following meetings that began in October 2022 and continued through 2023 with Daiwa House Industry Co., Ltd. personnel, Daiwa House declined. Plaintiffs are informed and believe, based on indications from Daiwa House, that Yamamoto influenced that decision.

**E. The Statements Were False**

92. The statements by Yamamoto set forth in ¶ 64, and the statements alleged in ¶¶ 74, 78, and 82, are false. Uzzaman is a genuine venture capitalist who has founded and led a venture capital firm for fifteen years, holds a doctorate in engineering, and has been appointed to a

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

professorship at one of Japan's leading universities. He did not falsify his professional history. Pegasus is a legitimate venture capital firm managing more than $2 billion across a diversified portfolio of more than 300 companies. ¶ 49.

93. The false statements identified in ¶ 92 are not protected expressions of opinion. They assert or necessarily imply objectively verifiable facts. The statements set forth in ¶¶ 64(c) and 64(b) assert that Uzzaman falsely claimed investment experience at IBM and that Pegasus's corporate venture capital funds are not diversified. ¶¶ 51, 68–69. The statements alleged in ¶¶ 78 and 82 assert that Uzzaman misrepresented or falsified his professional background and credentials. ¶ 51. The statements alleged in ¶¶ 74, 78, and 82 that Uzzaman is not a legitimate venture capitalist imply that he has not in fact founded and led a venture capital firm and performed the work of a venture capitalist, which is false. ¶¶ 47–49, 92. Each of these assertions is capable of being proven true or false, and each was communicated as a factual report rather than as an evaluative view. Assertions regarding a professional's legitimacy and financial track record are capable of objective verification and are not protected opinion. Yamamoto's statements were factually false, as shown by Pegasus's verifiable $2 billion in assets under management and top-tier industry rankings. ¶ 49.

94. Yamamoto did not disclose to his listeners the facts on which he purported to rely. To the extent he disclosed any, he disclosed only selected facts, invoking Pegasus's investment in Quibi while omitting that Quibi raised approximately $1.75 billion from institutional investors including Google, Alibaba, JPMorgan Chase, The Walt Disney Company, NBCUniversal, and Sony Pictures, and that it was founded by Jeffrey Katzenberg and Meg Whitman. Quibi's widely reported failure was not the result of poor investment judgment but of a confluence of external factors, including a business model designed for on-the-go viewing that was fundamentally undermined by the timing of its launch during the global COVID-19 pandemic. *See, e.g.*, "Quibi Was Supposed to Revolutionize Hollywood. Here's Why It Failed," The Wall Street Journal, Nov. 2, 2020 (https://www.wsj.com/business/media/quibi-was-supposed-to-revolutionize-hollywood-heres-why-it-failed-11604343850). This single outcome does not reflect the strength of Pegasus's overall portfolio. ¶ 49. Plaintiffs are informed and believe that Yamamoto, as a venture capital

professional, was aware of this exculpatory context but intentionally omitted it to create a false and misleading narrative designed to harm Plaintiffs, and that this omission constituted actual malice, as Yamamoto entertained serious doubts as to the truth of his portrayal yet proceeded with reckless disregard for the complete factual record he knew to exist.

**F. Yamamoto Acted With Malice and Reckless Disregard for the Truth**

95. Yamamoto knew his statements were false when he made them, or made them with reckless disregard for their truth or falsity, and without reasonable grounds to believe them true. Malice, intent, and knowledge are alleged generally as permitted by Federal Rule of Civil Procedure 9(b).

96. Plaintiffs are informed and believe that Yamamoto had no basis for the assertion that Uzzaman's IBM role was a false claim: that Yamamoto conducted no inquiry into Uzzaman's employment history, that he had no access to IBM's personnel records, and that he spoke categorically about a matter of which he had no knowledge.

97. Plaintiffs are informed and believe that Yamamoto had no basis for the assertion that Pegasus's corporate venture capital funds are undiversified. He has never been a limited partner in a Pegasus fund, has never received Pegasus's portfolio reporting, and had no access to its holdings. In response to Plaintiffs' Request for Admission No. 55, propounded in this action, Yamamoto admitted that he sent one or more LINE messages to Professor Yamada referring to Pegasus's investment in Quibi. In response to Plaintiffs' Requests for Admission Nos. 93 and 94, he asserted objections and refused to admit or deny whether, when he sent the messages, he was aware that Pegasus had made investments other than Quibi, and whether the messages identified any other Pegasus investment.

98. Yamamoto did not contact Uzzaman or Pegasus before making the statements to ask whether they were true. When Pegasus contacted him in June 2024, Yamamoto said he did not have detailed information about what was being pointed out.

99. The circumstances of Yamamoto's communications with third parties, what he said, to whom, when, in what medium, and why, are peculiarly within his own possession and control. Plaintiffs plead those matters on information and belief.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

100. Yamamoto had himself been the subject of a published report questioning whether his own billing as a venture capitalist was accurate. He knew the difference between a professional disagreement and an accusation of credential fraud, and he knew what such an accusation does to its target.

101. Yamamoto's conduct was intended to injure Plaintiffs and constituted a willful and conscious disregard of their rights, entitling Plaintiffs to punitive damages under California Civil Code § 3294. His pattern of harmful acts dating back to at least 2022 demonstrates that his intent was to injure Plaintiffs, not to state a good-faith opinion. ¶¶ 87–91.

**G. The Statements Were Published and Were Of and Concerning Plaintiffs**

102. Each statement was published to third persons who understood it. Each identified Uzzaman by name or by unmistakable reference and identified Pegasus by name or by unmistakable reference to the firm Uzzaman founded and leads. No recipient could have understood the statements to refer to anyone else.

103. Professor Yamada understood the statements to refer to Uzzaman and Pegasus and understood them in their defamatory sense, as asserting that Uzzaman had lied about his credentials and that Pegasus was not a competent or legitimate fund manager. Plaintiffs are informed and believe that the other recipients identified in Part IV.D understood them the same way.

**H. Causation**

104. Yamamoto's statements were a substantial factor in causing each loss alleged below. The pattern is consistent and repeated: a negotiation proceeds normally for months, Yamamoto communicates with the counterparty, and the counterparty withdraws, in several instances citing negative information received from an outside party.

105. The causal connection is corroborated by Yamamoto's own May 9, 2024 message reporting Mr. Higuchi's withdrawal from Plaintiffs' event twelve days before it was held, information Yamamoto possessed and transmitted to the event's academic co-host in the same conversation in which he had disparaged Plaintiffs two weeks earlier.

106. Kyoto University co-hosted the May 21, 2024 event notwithstanding Yamamoto's efforts. Its featured speaker withdrew, other confirmed participants withdrew, and sponsorship

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

revenue was lost. In each instance described above the counterparty had advanced to substantive negotiation or had confirmed its participation before Yamamoto intervened, and withdrew afterward.

**I. Plaintiffs' Special Damages, By Transaction**

107. Plaintiffs' losses are not estimates of diminished goodwill. They are identifiable revenues and capital commitments from identified transactions and relationships that were finalized or in advanced negotiation before Yamamoto's interference. Plaintiffs itemize them below.

108. Lost sponsorship revenue, $696,666. The sponsorships identified in ¶ 86 total ¥104,500,000, or approximately $696,666 at ¥150 to the dollar: ¥15,000,000 (approximately $100,000) for the Startup World Cup Kyoto Regional Event, ¥22,500,000 (approximately $150,000) for the Startup World Cup Kyushu Regional Event, and ¥67,000,000 (approximately $446,666) for the Startup World Cup Tokyo Regional Event. Pegasus held the sponsorship contracts, directly or indirectly.

109. Lost management fees and carried interest, $83,200,000. This figure represents the management fees and carried interest Pegasus would have earned from the Idemitsu and DIC corporate venture capital funds identified above, computed on Pegasus's customary terms of an annual management fee of two percent over a ten-year fund term and carried interest of twenty percent, applied to a fund gain of 160 percent of committed capital. For the proposed $100 million Idemitsu fund, that is $20,000,000 in management fees and $32,000,000 in carried interest, or $52,000,000. For the proposed $60 million DIC fund, it is $12,000,000 and $19,200,000, or $31,200,000.

110. Lost equity capital, $143,000,000. Plaintiffs are informed and believe that, as a result of Yamamoto's statements, specific corporate investors withdrew capital commitments totaling $143,000,000.

111. Plaintiffs' identified special damages total at least $226,896,666, subject to proof at trial. Those special damages are sought on the First Claim for Relief and the Second Claim for Relief. Plaintiffs do not seek them twice.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

112. Uzzaman has suffered injury to his personal and professional reputation, separate from and independent of any injury to Pegasus. The statement by Yamamoto set forth in ¶ 64(c) accused him of fabricating his professional history, and Yamamoto made it to a member of the faculty of the school at which Uzzaman holds his academic appointment. Uzzaman has also suffered pecuniary loss. His personal compensation is directly and substantially dependent on the revenue generated by Pegasus's funds, including management fees and carried interest. ¶ 7. It includes, among other components, a capital-gain bonus computed as a percentage of the capital gains Pegasus realizes. The management fees and carried interest Pegasus lost as alleged in this Part would have increased his compensation. Uzzaman seeks recovery only for economic loss he personally sustained, and does not seek an individual award of Pegasus's lost revenue.

113. Plaintiffs also seek recovery of the costs of reputational remediation reasonably incurred in response to Yamamoto's statements, in amounts to be proven at trial.

**J. Timeliness**

114. This action was commenced on January 30, 2026. Plaintiffs previously filed an action against Yamamoto on the same conduct in the Superior Court of California, County of San Mateo, No. 25-CIV-06027, on August 11, 2025, which they dismissed without prejudice on October 21, 2025.

115. Plaintiffs' claims for trade libel and for intentional interference with prospective economic advantage are governed by a two-year limitations period and rest on conduct occurring on or after January 30, 2024, including the April 25 and May 9, 2024 messages, the statements reported to Pegasus in May and June 2024, the 2024 Idemitsu communications, and the 2025 DIC communications.

116. Each publication of a false statement to a new recipient constituted a separate and independently actionable publication. Plaintiffs' claim under California Business and Professions Code § 17200 is governed by a four-year limitations period.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

## V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Trade Libel / Injurious Falsehood**
**(Both Plaintiffs against Yamamoto)**

117. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

118. Yamamoto published to third persons false statements disparaging the quality, integrity, and legitimacy of Plaintiffs' business operations and professional endeavors, including Pegasus's fund-management and investment services. These included the statements that Uzzaman was not a legitimate venture capitalist, that his claimed investment experience at IBM was a false claim, that Pegasus's corporate venture capital investing reflects a lack of discernment that those in the venture capital industry would regard as inconceivable, and that Pegasus does not diversify its investments. Yamamoto published these statements to third parties, including Professor Yamada and, Plaintiffs are informed and believe, numerous other potential speakers, sponsors, and investors, with the intent to harm Plaintiffs' business and professional standing.

119. The statements were false. Uzzaman is a legitimate venture capitalist and performed the investment work at IBM that he has described. Pegasus's funds are diversified and its investment process is professional and disciplined. ¶¶ 51, 68–69, 92. The statements directly disparaged the quality and commercial reputation of Pegasus and the Startup World Cup event, leading third parties to question the legitimacy and reliability of Plaintiffs' business.

120. The statements were unprivileged. Yamamoto owed no duty to the recipients, shared no protected common interest with them, and spoke to advance his own competitive position.

121. Yamamoto knew the statements were false or acted in reckless disregard of their truth or falsity, and he intended that they be taken seriously and acted upon by the recipients.

122. Yamamoto knew, or reasonably should have recognized, that the statements would induce identified counterparties not to deal with Plaintiffs.

123. As a direct and proximate result, Plaintiffs suffered the pecuniary losses itemized in Part IV.I, including the personal compensation losses alleged in ¶ 112, subject to proof at trial. Those losses are the special damages claimed on this count.

124. Yamamoto acted with oppression, fraud, and malice within the meaning of California Civil Code § 3294, entitling Plaintiffs to punitive damages.

## SECOND CLAIM FOR RELIEF
### Intentional Interference With Prospective Economic Advantage
### (Both Plaintiffs against Yamamoto)

125. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

126. Plaintiffs had existing economic relationships, each with the probability of future economic benefit, with the following third parties: (a) Idemitsu Kosan Co., Ltd., with whom Pegasus was in continuous negotiation from January 2024 through late 2024 regarding a corporate venture capital fund, (b) DIC Corporation, with whom Pegasus was in continuous negotiation from February 2025 through September 2025 regarding a corporate venture capital fund, (c) Kyoto University and its Graduate School of Management, with whom Plaintiffs had an ongoing partnership comprising Uzzaman's appointment, guest lectures, and co-hosted Startup World Cup regional events, (d) the sponsors and confirmed speakers of the 2024 Startup World Cup regional events identified in Part IV.D.5, and (e) the corporate investors described in ¶ 110.

127. Each of these was an actual, existing relationship, not a mere hope of a future relationship. In each, the parties had met, exchanged information, and progressed toward a defined transaction.

128. Yamamoto knew of each relationship. He knew of the Kyoto University partnership because he held an appointment at the same school and communicated with its faculty about Plaintiffs. He knew of the Startup World Cup Kyoto Regional Event because he attempted to dissuade its academic co-host from participating and reported on its featured speaker's withdrawal. Plaintiffs are informed and believe that Yamamoto knew of the Idemitsu and DIC negotiations, which were conducted within the same community of Japanese corporate venture capital in which Yamamoto operates.

129. Yamamoto engaged in intentional acts designed to disrupt each relationship, namely the publication of the false and disparaging statements alleged above, influencing speakers' withdrawals, and attempting to sabotage specific business deals.

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

130. Those acts were independently wrongful. Trade libel is proscribed by determinable legal standards and is independently wrongful within the meaning of California law, apart from the interference itself.

131. Yamamoto acted with the desire to interfere with Plaintiffs' relationships, or with knowledge that interference was certain or substantially certain to result.

132. Each relationship was actually disrupted. Idemitsu and DIC declined to proceed. The featured speaker and other participants withdrew from the 2024 regional events, and sponsorship commitments were lost. Capital commitments were withdrawn.

133. As a direct and proximate result, Plaintiffs suffered the economic harm itemized in Part IV.I, in an amount to be proven at trial.

134. Yamamoto acted with oppression, fraud, and malice within the meaning of California Civil Code § 3294, entitling Plaintiffs to punitive damages.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

## THIRD CLAIM FOR RELIEF
**Unfair Competition – Cal. Bus. & Prof. Code § 17200 *et seq*.**
**(Both Plaintiffs against Yamamoto)**

135. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

136. Yamamoto's conduct constitutes an unlawful, unfair, and fraudulent business act or practice within the meaning of California Business and Professions Code § 17200. The conduct is unlawful because it constitutes trade libel and intentional interference with prospective economic advantage, each of which is proscribed by determinable legal standards under California law. The conduct is unfair and oppressive because it seeks to damage Plaintiffs' reputation and business opportunities through false statements and sabotage. The conduct is fraudulent because it involves false and misleading statements about Plaintiffs and their business that are likely to deceive third parties.

137. Yamamoto engaged in the conduct in the course of business, as a venture fund principal, adviser, and commentator competing for the same corporate capital and the same institutional relationships as Plaintiffs.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

138. Plaintiffs have suffered injury in fact and have lost money and property as a result. Pegasus relies on its own economic losses itemized in Part IV.I, and Uzzaman relies on the personal compensation losses alleged in ¶ 112.

139. Plaintiffs seek permanent injunctive relief under § 17203 restraining Yamamoto from repeating to third persons the specific statements alleged in this pleading that are determined at trial to be false and actionable. Legal remedies are inadequate to redress that prospective harm. Damages can compensate Plaintiffs for transactions already lost, but they cannot prevent the recurrence of the conduct, cannot restore Plaintiffs' standing with counterparties who have not yet been approached, and cannot be measured for relationships whose formation is prevented before Plaintiffs learn of them. Yamamoto has continued the conduct over a period of years, and has given no indication that he will stop.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For special damages according to proof.

2. For general damages according to proof.

3. For punitive and exemplary damages under California Civil Code § 3294 in an amount sufficient to punish and deter.

4. For a permanent injunction under California Business and Professions Code § 17203 restraining Defendant from repeating to third persons the specific statements determined at trial to be false and actionable.

5. For pre-judgment and post-judgment interest at the legal rate.

6. For costs of suit, restitution as permitted by applicable law, and, to the extent permitted by law, attorneys' fees.

7. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 20, 2026

Respectfully submitted,

/s/ *Jeremiah A. Armstrong*
Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: 415-296-7070
Facsimile: 415-449-6301

James Wagstaffe (SBN 95535)
wagstaffe@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, California 93403
Telephone: 805-543-0990
Facsimile: 805-543-0980

*Attorneys for Plaintiffs Md Anis Uzzaman and Pegasus Tech Ventures, Inc.*

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

# Exhibit A

Craig S. Miller (SBN 139682)
cmiller@craigsmillerlaw.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@craigsmillerlaw.com
**LAW OFFICES OF CRAIG S. MILLER, P.C.**
42 Miller Avenue
Mill Valley, California 94941
Telephone: 415-296-7070
Facsimile: 415-449-6301

James Wagstaffe (SBN 95535)
wagstaffe@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, California 93403
Telephone: 805-543-0990
Facsimile: 805-543-0980

Attorneys for Plaintiffs
Md Anis Uzzaman and
Pegasus Tech Ventures, Inc.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MD ANIS UZZAMAN and PEGASUS TECH VENTURES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>YASUMASA YAMAMOTO, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:26-cv-00945-NC<br><br>**CORRECTED DECLARATION OF JIN-ICHIRO YAMADA** |

I, Jin-ichiro Yamada, declare as follows:

1. I have firsthand personal knowledge of all facts stated in this declaration, and if called as a witness, I could and would testify competently to them under oath.

2. I am a professor at the Graduate School of Management at Kyoto University, located at 36-1 Yoshida, Sakyo-ku, Kyoto 606-8501, Japan. My areas of specialization are entrepreneurship, strategy, business development, and organization theory. I earned a Ph.D. from Hokkaido University and have conducted research at Hokkaido University and Cranfield School of Management (UK). My professorial experience includes Osaka City University, and I have served as a Visiting Professor at Kyushu University, Bordeaux Management School (France), and Griffith Business School (Australia). My detailed profile is here: https://www.gsm.kyoto-u.ac.jp/en/faculty/52564/.

3. I have known Dr. Md Anis Uzzaman ("Uzzaman") since 2022. He is the founder of Pegasus Tech Ventures, Inc. ("Pegasus"), a global venture capital firm headquartered in San Jose, California, which has invested in over 270 startups worldwide. Uzzaman is also the founder of the Startup World Cup, recognized as the largest startup competition globally.

4. Key milestones in my relationship with Uzzaman and Pegasus are as follows:

a. Guest Lecturer: As a professor at Kyoto University, I invited Uzzaman to deliver a guest lecture on August 22, 2022, entitled "Top Technology Trends" as part of the Graduate School of Management's Philosophical Entrepreneur Studies Program. This was my first interaction with Uzzaman and Pegasus.

b. Panel Participation and Adjunct Professorship: On December 3, 2022, Uzzaman participated as a panelist in the "From Kyoto to the World: Building Centuries-Lasting Startups" seminar, organized by Kyoto University's Philosophical Entrepreneur Studies Program. This successful event, attended by 500 people and featuring prominent Japanese CEOs (including the CEO of Horiba, Ltd.), led to our invitation for Uzzaman to

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

become an adjunct professor in the program, a position he has held since April 2023.

c. Startup World Cup 2023: As founder of the Startup World Cup, Uzzaman oversees more than 100 regional events globally. Inspired by this, Kyoto University hosted the Kyoto Regional Event at Clock Tower Centennial Hall on July 6, 2023, which proved to be a significant success.

d. Startup World Cup 2024: Building on the previous year's success, Kyoto University co-organized and hosted the 2024 Startup World Cup Kyoto Regional Event held on May 21, 2024.

e. I first met Mr. Yasumasa Yamamoto on March 23, 2023. Since then, we have had limited contact, mostly initiated by him, including messages or occasional meeting requests. Yamamoto is associated with Kyoto Angel Fund (https://kyotoangel.com/), located at 4-14-24 Nishi-Azabu, Minato-ku, Tokyo 106-0031, Japan. Additionally, Yamamoto was an adjunct professor at Kyoto University until the end of March 2025 (https://web.archive.org/web/20250216084122/https://www.gsm.kyoto-u.ac.jp/en/faculty/101864/).

5. Yamamoto has launched a negative campaign against Uzzaman and Pegasus, as evidenced by the following examples:

a. After learning of Uzzaman's August 2022 lecture, Yamamoto contacted me requesting a meeting in Osaka on March 23, 2023. During this meeting, Yamamoto spoke negatively about Uzzaman and Pegasus, attempting to dissuade me from collaborating with them.

b. Yamamoto made repeated attempts to dissuade me from co-organizing the 2024 Startup World Cup Kyoto Regional Event, actively working to tarnish Uzzaman's reputation and discourage Kyoto University's involvement.

c. On April 25, 2024, I received LINE messages from Yamamoto alleging improprieties in the presentation of the then-scheduled keynote speaker, Mr.

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

Yasuyuki Higuchi of Panasonic Connect Co., Ltd., on the Startup World Cup website. He claimed this could damage Kyoto University's reputation and urged us to withdraw support. The following is a screenshot of those messages:




d. In further LINE messages I received from Yamamoto on or about April 25, 2024, Yamamoto claimed Uzzaman was not a legitimate venture capitalist and attempted to undermine his credibility. In LINE messages I received from Yamamoto on May 9, 2024, Yamamoto referenced Mr. Higuchi's withdrawal as a speaker, which Yamamoto may have influenced. The following is a screenshot of those messages:

Law Offices of
Craig S. Miller, P.C.
42 Miller Avenue • Mill Valley • CA 94941
Phone 415-296-7070 • Fax 415-449-6301




6. In my prior declaration executed on May 21, 2025, that was previously submitted in this litigation, I inadvertently indicated that the foregoing messages were sent on June 9, 2024. However, June 9, 2024 is the date on which I took the screenshots. The messages themselves were received on the dates shown by the date markers that the LINE application displays above each day's messages in the screenshots: "4.25(木)" (Thursday, April 25, 2024), "4.26(金)" (Friday, April 26, 2024), "4.30(火)" (Tuesday, April 30, 2024), and "5.9(木)" (Thursday, May 9, 2024). In addition, my prior declaration stated that I first met Mr. Yamamoto in Osaka on March 24, 2023. Having checked my calendar, that meeting took place on March 23, 2023, and paragraphs 4(e) and 5(a) above reflect this correction. Apart from these date corrections, the statements in my prior declaration remain true and correct.

7. I do not know Mr. Yamamoto's motivations. However, he attempted to damage Dr. Uzzaman's reputation, sought to have him removed from his adjunct position, and worked to undermine the 2024 Startup World Cup Kyoto event. Yamamoto likely played a role in convincing the keynote speaker, Mr. Higuchi, to withdraw and dissuaded other participants from attending, thereby attempting to sabotage the event.

LAW OFFICES OF CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

LAW OFFICES OF
CRAIG S. MILLER, P.C.
42 MILLER AVENUE • MILL VALLEY • CA 94941
PHONE 415-296-7070 • FAX 415-449-6301

//

//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 18 / Nov / 2026

山田仁一郎
Jin-ichiro Yamada

Place: Kyoto, Kyoto, Japan
City, State/Province/Prefecture, Country